UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

In re BHP BILLITON LIMITED
SECURITIES LITIGATION

----------------------------------------------------------

This Document Relates To:

    ALL ACTIONS.

---------------------------------------------------------- x

:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:16-cv-01445-NRB

CLASS ACTION

MEMORANDUM OF LAW IN SUPPORT
OF LEAD PLAINTIFFS' MOTION TO
EXCLUDE THE REPORT AND OPINIONS
OF RENÉ M. STULZ

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................1

II.    BACKGROUND ............................................................................................3

III.   ARGUMENT ...............................................................................................4

      A.     Courts Must Discharge Their Gatekeeping Function to Ensure that Only Reliable and Relevant Evidence Is Admitted ..........................................................4

      B.     Dr. Stulz's Report and Opinions Are Unreliable, Usurp the Court's Role, and Are Unhelpful and Irrelevant ..........................................................................5

            1.     Dr. Stulz Issued an Unqualified and Inadmissible Legal Opinion By Instructing the Court to Solely Focus on *Cammer* Factor Five.............5

            2.     Dr. Stulz's Report and Opinions Are the Product of Biases that Vitiate His Independence and Infect All of His Views in this Case ...........8

            3.     Dr. Stulz's Attempt to Discredit Dr. Feinstein Undermines the Reliability of His Own Opinions, Which Are Speculative .......................10

            4.     Dr. Stulz Again Advances an Erroneous and Inadmissible Legal Opinion on the Existence of a Common Damages Methodology.............13

IV.   CONCLUSION.............................................................................................14

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amorgianos v. Amtrak*,
   303 F.3d 256 (2d Cir. 2002)....................................................................................4

*Angley v. UTI Worldwide Inc.*,
   2018 U.S. Dist. LEXIS 70506 (C.D. Cal. Apr. 19, 2018) ........................................6

*Arista Records LLC v. Usenet.com, Inc.*,
   608 F. Supp. 2d 409 (S.D.N.Y. 2009)...................................................................10

*Burkhart v. Wa. Metro. Area Transit Auth.*,
   112 F.3d 1207 (D.C. Cir. 1997) ........................................................................8, 14

*Cacciola v. Selco Balers, Inc.*,
   127 F. Supp. 2d 175 (E.D.N.Y. 2004) ....................................................................9

*Cammer v. Bloom*,
   711 F. Supp. 1264 (D.N.J. 1989) .................................................................. *passim*

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent BioSolutions, Inc.*,
   2018 U.S. Dist. LEXIS 97338 (D. Md. June 8, 2018).....................................2, 6, 9

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*,
   2015 U.S. Dist. LEXIS 115287 (D.N.J. Aug. 31, 2015).........................................13

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)..............................................................................................2, 13

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)..............................................................................................1, 4

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011)................................................................................................14

*Estate of Puppolo v. Welch*,
   2017 U.S. Dist. LEXIS 147312 (D. Vt. Sept. 12, 2017).........................................12

*Första AP-Fonden v. St. Jude Med., Inc.*,
   312 F.R.D. 511 (D. Minn. 2015)..............................................................................6

*Gariety v. Grant Thornton, LLP*,
   368 F.3d 356 (4th Cir. 2004) ...................................................................................6

*Highland Capital Mgmt., L.P. v. Schneider*,
   379 F. Supp. 2d 461 (S.D.N.Y. 2005)......................................................................7

**Page**

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
    2015 U.S. Dist. LEXIS 128856 (S.D.N.Y. Sept. 24, 2015) .....................................................13

*In re Initial Pub. Offering Sec. Litig.*,
    174 F. Supp. 2d 61 (S.D.N.Y. 2001) .........................................................................................8

*In re JPMorgan Chase & Co. Secs. Litig.*,
    2015 U.S. Dist. LEXIS 132181 (S.D.N.Y. Sept. 29, 2015) ...................................................13

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
    2018 U.S. Dist. LEXIS 33640 (S.D.N.Y. Feb. 28, 2018) ...........................................4, 7, 8, 11

*In re Petrobras Sec. Litig.*,
    862 F.3d 250 (2d Cir. 2017) .....................................................................................1, 5, 6, 7

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) .......................................................................................9

*In re Sadia, S.A. Sec. Litig.*,
    269 F.R.D. 298 (S.D.N.Y. 2010) ............................................................................................12

*In re Silver Wheaton Corp. Sec. Litig.*,
    2017 U.S. Dist. LEXIS 72787 (C.D. Cal. May 11, 2017) .......................................................13

*In re Unisys Sav. Plan Litig.*,
    173 F.3d 145 (3d Cir. 1999) .....................................................................................................9

*Jupiter v. United States*,
    2012 U.S. Dist. LEXIS 180379 (E.D.N.Y. Dec. 20, 2012) ......................................................9

*Krogman v. Sterritt*,
    202 F.R.D. 467 (N.D. Tex. 2001) .................................................................................. *passim*

*LinkCo, Inc. v. Fujitsu Ltd.*,
    2002 U.S. Dist. LEXIS 12975 (S.D.N.Y. July 15, 2002) ....................................................7, 10

*Lippe v. Bairnco Corp.*,
    288 B.R. 678 (S.D.N.Y. 2003) ........................................................................................9, 10, 11

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
    762 F.3d 1248 (11th Cir. 2014) ...............................................................................................6

*Luna v. Marvell Tech. Grp., Ltd.*,
    2017 U.S. Dist. LEXIS 178674 (N.D. Cal. Oct. 27, 2017) ...............................................13, 14

**Page**

*Marx & Co. v. Diners' Club, Inc.*,
    550 F.2d 505 (2d Cir. 1977)....................................................................................14

*McIntire v. China MediaExpress Holdings, Inc.*,
    38 F. Supp. 3d 415 (S.D.N.Y. 2014)........................................................................13

*Medisim Ltd. v. BestMed LLC*,
    861 F. Supp. 2d 158 (S.D.N.Y. 2012)......................................................................12

*Meineker v. Hoyts Cinemas Corp.*,
    154 F. Supp. 2d 376 (N.D.N.Y. 2001)........................................................................8

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)..............................................................................2, 13

*Robinson v. Sanctuary Record Groups, Ltd.*,
    542 F. Supp. 2d 284 (S.D.N.Y. 2008)......................................................................11

*Rubinstein v. Marsh*,
    1987 U.S. Dist. LEXIS 16882 (E.D.N.Y. Dec. 10, 1987) ..................................9, 11

*Scott v. Chipotle Mexican Grill, Inc.*,
    315 F.R.D. 33 (S.D.N.Y. 2016) ..............................................................................10

*SEC v. Tourre*,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013).......................................................................11

*Strougo v. Barclays PLC*,
    312 F.R.D. 307 (S.D.N.Y. 2016) ......................................................................5, 6, 13

*Sykes v. Mel S. Harris & Assocs.*,
    780 F.3d 70 (2d Cir. 2015)........................................................................................13

*Thomsen v. Kefalas*,
    2018 U.S. Dist. LEXIS 49798 (S.D.N.Y. Mar. 26, 2018) .........................................8

*Torres v. County of Oakland*,
    758 F.2d 147 (6th Cir. 1985) .....................................................................................8

*Unger v. Amedisys Inc.*,
    401 F.3d 316 (5th Cir. 2005) .....................................................................................6

*United States v. Scop*,
    846 F.2d 135 (2d Cir. 1988)........................................................................................8

**Page**

*United States v. Williams*,
    506 F.3d 151 (2d Cir. 2007)......................................................................................4

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017).............................................................................. *passim*

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Evidence
    702..................................................................................................................1, 4

Lead Plaintiffs City of Birmingham Retirement and Relief System and City of Birmingham Firemen's and Policemen's Supplemental Pension System (together, "Lead Plaintiffs") respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Evid. 702 ("Rule 702"), for an Order excluding the May 18, 2018 report ("Report") and opinions of René M. Stulz, Ph.D., an expert hired by defendants BHP Billiton Limited and BHP Billiton Plc (together, "BHP") to "review and comment" on the March 14, 2018 report and opinions of Lead Plaintiffs' expert, Stephen P. Feinstein, Ph.D., CFA.  *See* Ex. 1 (Stulz Report), ¶5.[1]

## I.    INTRODUCTION

The opinions expressed in the Stulz Report fail to satisfy even the most basic requirements for admissibility embodied in Rule 702 and recognized in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and its progeny.

Under the guise of "assessing" Dr. Feinstein's opinion that the market for BHP's American Depositary Receipts ("ADRs") – the New York Stock Exchange ("NYSE") – was efficient, Dr. Stulz disregards established Second Circuit law and urges the Court to do so as well.  Indeed, he rejects the "holistic analysis" of market efficiency required at class certification, *In re Petrobras Sec. Litig.*, 862 F.3d 250, 277 (2d Cir. 2017), and *eschews all other evidence* exclusively in favor of a showing that the Second Circuit has confirmed is not even required: a demonstration of the cause-and-effect relationship between news and movement in a security's trading price, known as the fifth *Cammer* factor.  *See Waggoner v. Barclays PLC*, 875 F.3d 79, 97-98 (2d Cir. 2017) (discussing *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989)).  In so doing, Dr. Stulz improperly usurps the Court's role by deciding an alternate legal standard applies to market efficiency, and advocates an unqualified legal interpretation that flatly contradicts binding Second Circuit authority.

---

[1]   All exhibits referenced herein are cited as "Ex.__" and are attached to the June 29, 2018 Declaration of Joseph Russello, submitted in support of this motion.  The Stulz Report, annexed as Ex. 1, replaced an earlier report, served on May 11, 2018, that Dr. Stulz amended to correct calculation errors.

Nevertheless, Dr. Feinstein *conducted* analyses that demonstrate this causal relationship – yet Dr. Stulz is still not satisfied, quibbling with granular aspects of those analyses. This is nothing new. In fact, only several weeks ago, a court rejected similar criticisms by Dr. Stulz in opposing market efficiency for a security publicly trading on the NYSE – just like the ADRs. *See City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent BioSolutions, Inc.*, 2018 U.S. Dist. LEXIS 97338, at *23 (D. Md. June 8, 2018). Indeed, over his lengthy career, Dr. Stulz has *never* concluded that a market is efficient. His apparent bias infects his opinions and Report, rendering them unreliable.

Further undermining the reliability of Dr. Stulz's opinions and Report is his evident mandate to discredit Dr. Feinstein by acting as a mouthpiece for the defense. Instead of providing unbiased and independent guidance to the Court on market efficiency, Dr. Stulz dedicates a large part of his Report to discussing Dr. Feinstein's testimony in other cases, involving other plaintiffs, securities, and circumstances – a tactic not even BHP's lawyers used when questioning Dr. Feinstein. Dr. Stulz also bases much of his Report on speculation and innuendo, substituting conclusions based on *ipse dixit* for analysis. At a minimum, those portions of the Report based on conjecture require exclusion – calling into question the reliability of the rest of the Report and Dr. Stulz's fitness to serve as an expert in this case.

Finally, Dr. Stulz opines on whether Dr. Feinstein has proposed a methodology designed to measure only damages attributable to the theories of liability alleged, predictably (and incorrectly) concluding that Dr. Feinstein failed to do so. In reaching that conclusion, however, Dr. Stulz again advocates a standard that contradicts binding authority from the Second Circuit – and in this instance the Supreme Court – which merely requires a plaintiff to link damages to the defendant's conduct, not ensure "that damages are capable of measurement on a classwide basis." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 402 (2d Cir. 2015) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)). Dr. Stulz's Report and opinions are unreliable, and require exclusion, on this basis also.

## II.   BACKGROUND

On March 14, 2018, Lead Plaintiffs served Dr. Feinstein's report,[2] in which he examines the factors set forth in *Cammer*, 711 F. Supp. at 1286-87 and *Krogman v. Sterritt*, 202 F.R.D. 467, 474 (N.D. Tex. 2001), which courts universally consider when evaluating whether a security trades in an efficient market.[3]  *See Barclays*, 875 F.3d at 94-95.  Based on the evidence, Dr. Feinstein finds each factor satisfied for the proposed class period of September 25, 2014 to November 30, 2015.  He also opines that damages are subject to calculation on a class-wide basis using a common methodology.

On May 18, 2018, BHP served Dr. Stulz's Report.  Ex. 1.  In the Report, Dr. Stulz criticizes Dr. Feinstein's analysis of the *Cammer* and *Krogman* factors (Ex. 1, ¶¶57-65), opining that "only *Cammer* Factor 5 (testing for a cause-and-effect relationship between new information and price response) is a direct, empirical test of market efficiency from the perspective of financial economics" and, "quite simply, the only suitable way to directly test market efficiency . . . ."  *Id.*, ¶¶15(d), 20.  From this, he concludes: "It is . . . not sufficient to presume market efficiency, or to infer market efficiency from the typical characteristics of securities that trade on major exchanges."  *Id.*, ¶32.

In addition, Dr. Stulz disputes that damages are subject to calculation on a class-wide basis, arguing that the damages model must "disaggregate economic losses attributable to" exposure of the truth and non-fraud losses.  *Id.*, ¶100.  Based on this assessment, Dr. Stulz demands an exceedingly detailed damages model, failing to explain how it is necessary for class certification.  *Id.*, ¶¶100-34.

---

[2]      Dr. Feinstein's March 14, 2018 report is annexed as Exhibit B to the June 29, 2018 Declaration of Joseph Russello in support of class certification.  Lead Plaintiffs served the report in accordance with the class certification schedule set forth in the approved portions of the parties' Fed. R. Civ. P. 26(f) Joint Report. *See* ECF No. 82, §G.

[3]      The *Cammer* factors are: "(1) the average weekly trading volume of the [stock], (2) the number of securities analysts following and reporting on [it], (3) the extent to which market makers traded in the [stock], (4) the issuer's eligibility to file an SEC registration Form S-3, and (5) the demonstration of a cause and effect relationship between unexpected, material disclosures and changes in the [stock's] price[]."  *Barclays*, 875 F.3d at 94 (citing factors from *Cammer*, 711 F. Supp. at 1286-87).  The *Krogman* factors are: "(1) the capitalization of the company; (2) the bid-ask spread of the stock; and (3) the percentage of stock not held by insiders ('the float')."  *Barclays*, 875 F.3d at 94-95 (citing factors from *Krogman*, 202 F.R.D. at 474).

III.    **ARGUMENT**[4]

    A.    **Courts Must Discharge Their Gatekeeping Function to Ensure that Only Reliable and Relevant Evidence Is Admitted**

Expert evidence is admissible only if it is reliable and relevant. *Amorgianos v. Amtrak*, 303 F.3d 256, 259 (2d Cir. 2002) (noting a court must "ensure that [expert] testimony rests on a reliable foundation and is relevant to the case"). Even so, the expert must be qualified to opine on any issue for which such evidence is offered. *In re Libor-Based Fin. Instruments Antitrust Litig.*, 2018 U.S. Dist. LEXIS 33640, at *97 (S.D.N.Y. Feb. 28, 2018) (Buchwald, J.).

"'[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied.'" *Id.* at *95 (quoting *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007)). And courts possess a "'gatekeeping function under Rule 702'" to ensure expert evidence "'rests on a reliable foundation and is relevant to the task at hand.'" *Libor*, 2018 U.S. Dist. LEXIS 33640, at *95 (quoting *Amorgianos*, 303 F.3d at 265, which, in turn, quoted *Daubert*, 509 U.S. at 597).

Here, Dr. Stulz's Report and opinions suffer from four fatal flaws: *first*, he renders a legal opinion he is not qualified to offer – and which is inadmissible – when he urges the Court to consider *only* the fifth *Cammer* factor, and disregard all others, in evaluating market efficiency; *second*, he is biased, never having found indicia of market efficiency for a publicly-traded security; *third*, his apparent mandate to advance the defense narrative renders his opinions unreliable; and *fourth*, his opinion that damages are not calculable on a class-wide basis is also tantamount to an inadmissible legal opinion that contradicts binding authority and is so infected by his biases that it is unreliable.

Accordingly, Dr. Stulz's Report and opinions are inadmissible and therefore appropriately excluded here under Rule 702 and *Daubert* and its progeny.

---

[4]    All citations and internal quotation marks are omitted unless otherwise indicated. Citations to the transcript of the June 21, 2018 deposition of Dr. Stulz (Ex. 2) conform to the following format: [page]:[line]-[page]:[line].

**B.      Dr. Stulz's Report and Opinions Are Unreliable, Usurp the Court's Role, and Are Unhelpful and Irrelevant**

**1.      Dr. Stulz Issued an Unqualified and Inadmissible Legal Opinion By Instructing the Court to Solely Focus on *Cammer* Factor Five**

Dr. Stulz opines that the fifth *Cammer* factor – "a cause-and-effect relationship between new information and price response" – is determinative of market efficiency "from the perspective of financial economics."  Ex. 1, ¶¶14, 18, 20.  Indeed, noting "only *Cammer* Factor 5 . . . is a direct, empirical test of market efficiency" (*id.*, ¶20), he goes so far as to argue that "the first four *Cammer* factors and the *Krogman* factors *cannot provide evidence of market efficiency* as . . . they are merely typical characteristics of securities that trade on major exchanges, not empirical tests of market efficiency."  *Id.*, ¶19 (emphasis added); *see also id.*, ¶65 ("[T]he first four *Cammer* factors and the three *Krogman* factors have no basis in financial economics as tests that determine whether or not a stock trades in an efficient market."); Ex. 2, 147:22-150:16, 152:10-14 (testifying similarly).

Regardless of Dr. Stulz's transparent attempts to evade exclusion by claiming his opinions relate to principles of "financial economics" only,[5] his opinions impermissibly invade the province of the Court and implicate legal matters.  Although the Second Circuit has "repeatedly – and recently – declined to adopt a particular test for market efficiency," it has recognized that "courts in this and other Circuits regularly consider" all of the *Cammer* and *Krogman* factors.  *Barclays*, 875 F.3d at 94 (citing *Petrobras*, 862 F.3d at 276).  Indeed, the Second Circuit has repeatedly endorsed a "'holistic analysis based on the totality of the evidence presented'" in determining whether market efficiency is established, by a preponderance of the evidence, at the class certification stage.   *Barclays*, 875 F.3d at 87 (quoting *Petrobras*, 862 F.3d at 277); *see also Strougo v. Barclays PLC*, 312 F.R.D. 307, 320 (S.D.N.Y. 2016) (noting evidentiary standard applicable).

---

[5]      Dr. Stulz repeatedly prefaces his points on *Cammer* factor five with the talismanic phrase "financial economics" as though it is capable of warding off exclusion of his opinions (Ex. 1, ¶¶2 n.1, 14, 15(c)-(d), 18-20, 59, 65; Ex. 2, 164:9-12, 168:20-169:9), despite that his opinions clearly trespass on issues of law on which he is unqualified to opine.

Critically, however, the Second Circuit has *twice rejected* undue emphasis on *Cammer* factor five, reasoning that it "may be more critical . . . in a situation in which the other four *Cammer* factors (and/or the *Krogman* factors) are less compelling in showing an efficient market." *Barclays*, 875 F.3d at 98; *accord Petrobras*, 862 F.3d at 277-78 (recognizing "the potential probative value of indirect evidence of market efficiency"). In fact, the Second Circuit has held that satisfying the fifth *Cammer* factor is unnecessary if other indicia of market efficiency exist. *Barclays*, 875 F.3d at 98.

In *Barclays*, the Second Circuit considered "whether evidence of price impact under *Cammer* 5 was required . . . in determining whether the market for Barclays' ADS was efficient during the class period." *Barclays*, 875 F.3d at 98. The Second Circuit concluded that it was *not*, reasoning:

> [T]he district court's decision not to rely on direct evidence of price impact under *Cammer* 5 in this case fell comfortably within the range of permissible decisions. All seven of the indirect factors considered by the district court (the first four *Cammer* factors and the three *Krogman* factors) weighed so clearly in favor of concluding that the market for Barclays' ADS was efficient that the Defendants did not even challenge them.

*Id*. (discussing *Strougo*, 312 F.R.D. at 319-23). Not surprisingly, other courts have held similarly, including one that rejected Dr. Stulz's opinion in another case several weeks ago.[6] *See Emergent*, 2018 U.S. Dist. LEXIS 97338, at *28 ("Even if the Court were to find [plaintiffs' expert's] opinion regarding the fifth, empirical *Cammer* factor inadmissible, the Court would still find that Emergent's stock was traded in an efficient market."). In that case, Dr. Stulz also contended that only *Cammer* factor five is sufficient to demonstrate market efficiency. *See* Ex. 3, ¶68 n.98.

---

[6]   *See, e.g.*, *Barclays*, 875 F.3d at 99 n.30 (noting "several of our sister Circuits have concluded that *Cammer* 5 is not necessary but nevertheless often helpful," citing *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp*., 762 F.3d 1248, 1256 (11th Cir. 2014), *Unger v. Amedisys Inc*., 401 F.3d 316, 325 (5th Cir. 2005), and *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 368 (4th Cir. 2004)); *Regions*, 762 F.3d at 1256 (rejecting "that a finding of market efficiency always requires proof that the alleged misrepresentations had an immediate effect on the stock price"); *Emergent*, 2018 U.S. Dist. LEXIS 97338, at *28 ("Courts have routinely found a market efficient based on a showing that the first four *Cammer* factors only are met."); *Angley v. UTI Worldwide Inc*., 2018 U.S. Dist. LEXIS 70506, at *8 (C.D. Cal. Apr. 19, 2018) ("Because there is no evidence disputing the first four *Cammer* factors and the *Krogman* factors weigh in favor of market efficiency, the Court finds Plaintiff has met its burden of showing market efficiency."); *Första AP-Fonden v. St. Jude Med., Inc*., 312 F.R.D. 511, 520 (D. Minn. 2015) ("A plaintiff's shortfall on the fifth *Cammer* factor alone does not outweigh, as here, showings on many other relevant factors.").

By opining that satisfying the fifth *Cammer* factor is the *only* way to show market efficiency, Dr. Stulz has implicitly (if not explicitly) issued a *legal* opinion – which he is not qualified to make – on the nature of the evidence required to establish market efficiency.  And this impermissible legal opinion contradicts binding Second Circuit authority – authority with which he should be familiar, given his role as a defense expert in *Petrobras* and his review of the decision itself.  Ex. 1, Appx. B at 3 (listing *In re Petrobras Sec. Litig*., No. 14-cv-9662 (S.D.N.Y.)); Ex. 2, 157:3-22, 163:14-164:4.

Nevertheless, Dr. Stulz does not mention the Second Circuit's recent pronouncements on market efficiency or the fifth *Cammer* factor.  *See* Ex. 1 (omitting reference to the Second Circuit's decision in *Barclays* or *Petrobras*).  Instead, he proceeds as though the Second Circuit never spoke on these issues at all, urging this Court to require empirical proof of the cause-and-effect relationship between news and stock price movement despite that such a showing is unnecessary in cases where, as here, other indicia of market efficiency exist.

Just "because a witness qualifies as an expert with respect to certain matters or areas of knowledge" does not mean "that he or she is qualified to express expert opinions as to other fields." *Libor*, 2018 U.S. Dist. LEXIS 33640, at \*97.  Even if Dr. Stulz qualifies as an expert in economics, he is not a legal expert.  And yet he renders thinly-veiled opinions on the law (as he wishes it were), and urges this Court to disregard unambiguous and binding legal authority on market efficiency.  Ex. 2, 163:14-165:6, 168:11-15, 171:24-172:3 (confirming knowledge of, but not reliance on, decisions).

Nor may Dr. Stulz provide a legal opinion under the guise of expert testimony by rendering a *legal* interpretation that the standard for market efficiency in the Second Circuit does not apply.  *See Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 472 (S.D.N.Y. 2005) (rejecting testimony from an expert who "state[d] his opinion concerning the law governing securities fraud"); *LinkCo, Inc. v. Fujitsu Ltd*., 2002 U.S. Dist. LEXIS 12975, at \*10 (S.D.N.Y. July 15, 2002) (barring "impermissible opinions on issues of law").

- 7 -

"Expert opinion as to the legal standard to apply is inadmissible, as it usurps the role of the judge and is outside the expert's area of expertise." *Meineker v. Hoyts Cinemas Corp.*, 154 F. Supp. 2d 376, 379 (N.D.N.Y. 2001); *see also In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("[E]xperts may not invade the court's province by testifying on issues of law."). "The rule prohibiting [such opinion] . . . is so well-established that it is often deemed a basic premise or assumption of evidence law . . . ." *Initial Pub. Offering*, 174 F. Supp. 2d at 64 (collecting cases).

Dr. Stulz's opinion on the market efficiency standard is also unhelpful; indeed, it is *wrong*. Flawed expert evidence requires exclusion.[7] *See, e.g.*, *Libor*, 2018 U.S. Dist. LEXIS 33640, at *208 (excluding expert opinions that were "not only speculative, but also concededly incorrect"); *see also Burkhart v. Wa. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Spurlock's testimony as to the applicable legal standard was plainly erroneous, thus demonstrating the danger in allowing experts to testify as to their understanding of the law.").

### 2.  Dr. Stulz's Report and Opinions Are the Product of Biases that Vitiate His Independence and Infect All of His Views in this Case

By his admission, Dr. Stulz has *never* found indicia of market efficiency, even for a security publicly trading on a national exchange, such as the NYSE – the largest equities-based exchange in the world (as he acknowledges and BHP admits).  *See* Ex. 2, 50:2-19, 53:5-15, 223:15-25; Ex. 4, No. 73.  Instead, he invokes his position as a rebuttal expert in openly admitting his role is to challenge plaintiffs' expert's analyses (Ex. 2, 50:14-16, Ex. 5, 49:7-13), albeit under the guise of "help[ing] the Court."  Ex. 2, 76:19-21.

---

[7]    "The problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury." *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) (finding that because "testimony was couched as a legal conclusion, it was not helpful to the jury").  Here, Dr. Stulz's incorrect legal interpretation of the market efficiency standard is openly expressed in, and permeates the entirety of, his Report. *See Thomsen v. Kefalas*, 2018 U.S. Dist. LEXIS 49798, at *48 (S.D.N.Y. Mar. 26, 2018) (disregarding expert declaration whose "operative provisions . . . consist[ed] entirely of prohibited legal opinion and legal conclusions").  And because improper legal opinions are, by their nature, unhelpful, they are inadmissible.  *See United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988) (ruling that inadmissible legal opinions "could not have been helpful").

Even in *Emergent*, where he conceded that plaintiffs' expert satisfied the first four *Cammer* factors and all *Krogman* factors, he refused to admit they constituted evidence of market efficiency. *See* Ex. 5, 61:4-62:9, 68:12-18.  Since then, the *Emergent* court has rejected Dr. Stulz's opinion that *Cammer* factor five is exclusively determinative of market efficiency.  *See* 2018 U.S. Dist. LEXIS 97338, at *22, 27-28 (finding market efficiency).

Nonetheless, Dr. Stulz continues to advance his erroneous interpretation of the legal standard for market efficiency in *this* case, despite the Second Circuit's unambiguous holding that the fifth *Cammer* factor does not dictate market efficiency – a principal holding in *Barclays* that predates the Report in this case by six months.  Thus, Dr. Stulz's refusal to consider *other* factors – which courts have accepted as evidence of market efficiency for decades – reflects his deep-seated biases and interest in advancing his personal view of market efficiency, which infects his opinions in this case.

Although "the lack of bias is not required for expert testimony to be admissible," *Lippe v. Bairnco Corp.*, 288 B.R. 678, 688 (S.D.N.Y. 2003), an expert whose independence is compromised is unreliable.  *Cacciola v. Selco Balers, Inc.*, 127 F. Supp. 2d 175, 184 (E.D.N.Y. 2004); *cf. Jupiter v. United States*, 2012 U.S. Dist. LEXIS 180379, at *33 (E.D.N.Y. Dec. 20, 2012) (observing that "'[w]hen expert witnesses become partisans, objectivity is sacrificed to the need to win,'" quoting *Rubinstein v. Marsh*, 1987 U.S. Dist. LEXIS 16882, at *21 (E.D.N.Y. Dec. 10, 1987)).

Here, it was a foregone conclusion that Dr. Stulz would *not* find indicia of market efficiency based on his long-held belief that none of the factors – other than the fifth *Cammer* factor – applies.  Because he was predisposed to reach this conclusion, his personal opinion is unhelpful and requires exclusion.  *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 560 (S.D.N.Y. 2004) (excluding expert's "personal opinion about what standards [he] believes should apply to pharmaceutical company conduct"); *see also In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 157-58 (3d Cir. 1999) (upholding exclusion of expert who lacked credibility).

### 3.   Dr. Stulz's Attempt to Discredit Dr. Feinstein Undermines the Reliability of His Own Opinions, Which Are Speculative

Throughout the Report, Dr. Stulz references, discusses and quotes Dr. Feinstein's testimony and reports from other cases.[8]  In fact, as reflected in a list of "Case Materials and Legal Documents" appended to his Report, Dr. Stulz (and/or his staff) reviewed many more court filings and discovery materials for *other* cases than this one, poring over excerpts of Dr. Feinstein's reports and testimony dating back to 2015.  Ex. 1, Appx. C at 16-17.  In his Report, Dr. Stulz also extensively references and discusses Dr. Feinstein's testimony in *this* case – citing it at least 19 times – despite the fact that the market efficiency factors and analyses are detailed in Dr. Feinstein's report, not his testimony.[9]

In this respect, Dr. Stulz has assumed the role of a defense advocate, reciting testimony and reports from Dr. Feinstein the same way a lawyer would craft an argument.  In fact, defense counsel *did not question Dr. Feinstein* at his deposition about any of the extraneous case materials Dr. Stulz incorporates into his Report.  It is improper for Dr. Stulz to serve as a mouthpiece for the defense. Indeed, by advancing BHP's narrative and arguments, he is impermissibly trading on his credentials to claim that Dr. Feinstein lacks *credibility*.  "[T]hese are arguments to be made by counsel."  *See Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 49 (S.D.N.Y. 2016).

"An expert's role is to assist the trier of fact by providing information and explanations," not to advocate for a party, *Lippe*, 288 B.R. at 687, or "opine on the credibility of evidence."  *LinkCo*, 2002 U.S. Dist. LEXIS 12975, at *7 (noting whether testimony is contradictory "is not a topic for expert testimony"); *cf. Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 424 (S.D.N.Y. 2009) ("[a]n expert who simply regurgitates what a party has told him provides no assistance").

---

[8]      *See* Ex. 1, ¶¶29 n.49, 30 n.52, 49 n.87, 65 n.111, 86 n.149, 103 n.184-85, 123 n.224 (citing/discussing *In Re Eletrobras Sec. Litig.*, No. 15-cv-05754 (S.D.N.Y.); ¶¶54 n.94, 82 n.145 (citing/discussing *In re Petrobras Sec. Litig.*, No. 14-09662 (S.D.N.Y.); ¶¶90 n.160, 98 n.178 (citing/discussing *In re JPMorgan Chase & Co. Sec. Litig.*, No. 12-03852 (S.D.N.Y.)); ¶103 n.185 (multiple); *see also* Ex. 1, Appx. C at 16-17 ("Case Materials and Legal Documents").

[9]      *See* Ex. 1, ¶¶18 n.22, 19 n.23, 24 n.31, 23 & 34, 25 n.36, 25 n.39, 39 n.70, 47 n.84, 48 n.85, 50 n.89, 52 n.91, 59 n.98, 73 n.124, 74 n.126, 82 n.144, 90 n.159, 95 n.169, 97 n.176 (citing and/or discussing Dr. Feinstein's testimony).

Nor may an expert act as "a conduit for a factual narrative." *SEC v. Tourre*, 950 F. Supp. 2d 666, 681 (S.D.N.Y. 2013). "'Acting simply as a narrator . . . does not convey opinions based on an expert's knowledge and expertise.'" *Libor*, 2018 U.S. Dist. LEXIS 33640, at *155 (quoting *Tourre*, 950 F. Supp. 2d at 675); *cf. Robinson v. Sanctuary Record Groups, Ltd*., 542 F. Supp. 2d 284, 292 (S.D.N.Y. 2008) (rejecting expert analysis "founded on hearsay supplied by Plaintiffs' counsel – hardly a source of first-hand, independent expert knowledge"). But that is what Dr. Stulz does here.

Dr. Stulz's focus on advocating for BHP and his own agenda infects his Report and opinions, compromising their objectivity and reliability and requiring their exclusion. *See Lippe*, 288 B.R. at 701(excluding experts who rendered "unfair and one-sided interpretations of the available data"); *cf. Rubinstein*, 1987 U.S. Dist. LEXIS 16882, at *21 (finding unpersuasive experts who testified "not as detached scholars . . . motivated by the sole purpose of assisting the fact-finder with an objective evaluation of the relevant data but as partisans").

Finally, Dr. Stulz's opinions are unhelpful because they are based on speculation and *ipse dixit*. Thus, for example, he concedes that the first four *Cammer* factors and *Krogman* factors are satisfied, but disputes they provide indicia of market efficiency based solely on generalizations and "academic literature" that studied *other* companies. Ex. 1, ¶¶60-64.[10] And he stops short of opining that any factors reflect market *inefficiency*, or that the markets for the ADRs were, in fact, *inefficient*. *Id.*; Ex. 2:181:21-182:2. Instead, he urges the Court to infer inefficiency based on nothing more than his say-so. Ex. 2, 179:6-182:9 (claiming markets for dual-listed stocks are inherently inefficient).

---

[10]    *See, e.g.*, Ex. 1, ¶60 ("merely showing trading volume above a certain threshold *is not demonstrative* of market efficiency, and *need not even necessarily* be correlated with efficiency"), 61 ("analyst and news coverage or institutional ownership *are neither necessary nor sufficient* to ensure efficient trading"), 62 ("the presence of market makers again does not demonstrate market efficiency, because stocks with multiple market makers . . . *can trade* inefficiently"), 63 ("Form S-3 or F-3 eligibility does not demonstrate market efficiency, because stocks meeting that criterion . . . *can trade* inefficiently"), 64 ("there is evidence in the academic literature that even stocks with large market capitalization *can trade* in a manner inconsistent with efficiency"; "narrow spreads *do not provide affirmative evidence* that the security in question actually trades in an efficient market") (emphases added); *see also id.*, ¶¶60-64 (referencing articles and "academic literature discussed in sub-sections A through C" of the Report, but neglecting to tie any of them to BHP).

This is not the first time Dr. Stulz has tried to pass off conjecture for objective opinion or advocated unreasonable inferences.  In *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298 (S.D.N.Y. 2010), a company ("Sadia") attempted to rebut the fraud-on-the-market presumption of reliance by proving that its "statements and omissions had *no price impact*."  *Id*. at 314.  To do so, Dr. Stulz contended that disclosure of hedging contracts "when Sadia would have received a net profit" from them would not have caused its ADRs to decline in value.  *Id*.  From this, he opined that the "misstatements . . . could not have artificially inflated the price of Sadia's ADRs . . . and, thus, had no price impact."  *Id*.

Finding that unwinding the contracts "would have resulted in a net profit," Judge Scheindlin nevertheless concluded that this "argument fails for lack of evidentiary support."  *Id*. at 314-15.  As Judge Scheindlin reasoned, "Sadia has not presented evidence supporting the next step in its logic – that . . . the price of [its] ADRs would not have declined" after disclosure.  *Id*. at 315.  Even worse:

> Stulz's opinion is based almost entirely on a single academic study that evaluates income-increasing *accounting* restatements.  But even Stulz recognized this article does not "directly address[] the situation that developed at Sadia . . . ."  Neither he nor Sadia submited [sic] evidence specific to this case or conducted an independent study that would lend credence to their position.

*Id*.  Not surprisingly, Judge Scheindlin readily rejected "[Dr.] Stulz's unsubstantiated hypothesis," also refusing his "invit[ation] . . . to engage in rampant speculation . . . ."  *Id*.

As shown above, Dr. Stulz's opinions in this case are equally as unsubstantiated and invite the Court to make precisely the same types of unfounded inferential leaps.  But he cannot substitute conjecture and *ipse dixit* for objective analysis.  His Report and opinions are thus inadmissible.[11]

---

[11]     Additionally, by opining that "market efficiency must be (i) empirically tested (ii) for individual securities (iii) during specific periods of time and (iv) as to particular types of information" and stating this is "the only suitable way to directly test market efficiency" (Ex. 1, ¶18), Dr. Stulz impermissibly dictates the conclusion the Court should reach as to the import of *Cammer* factor five and again attempts to undermine Dr. Feinstein's credibility.  *See Estate of Puppolo v. Welch*, 2017 U.S. Dist. LEXIS 147312, at *51 (D. Vt. Sept. 12, 2017) (finding expert opinion "inadmissible because it purports to instruct the jury as to the relevant law and the conclusions it must reach regarding the credibility of witnesses and the persuasiveness of their testimony").  Moreover, given controlling Second Circuit law as discussed above, Dr. Stulz's opinion "lacks a reliable foundation and must be stricken."  *See Medisim Ltd. v. BestMed LLC*, 861 F. Supp. 2d 158, 171 (S.D.N.Y. 2012) (excluding opinion in patent case where expert failed to apply a court's claim construction).

### 4. Dr. Stulz Again Advances an Erroneous and Inadmissible Legal Opinion on the Existence of a Common Damages Methodology

In his Report, Dr. Stulz expounds at length on the various damages issues he believes exist, ultimately opining (again predictably) that Dr. Feinstein's proposed damages model fails to account for all of them.  Ex. 1, ¶16(a)-(e).  In so doing, however, Dr. Stulz once again departs from binding Second Circuit case law – and in this instance, Supreme Court precedent – by demanding a level of detail that is manifestly unnecessary *now*.

The Second Circuit has recognized that the Supreme Court's decision in "*Comcast* does not mandate . . . that damages are capable of measurement on a classwide basis." *Roach*, 778 F.3d at 402.  "Instead, *Comcast* merely requires that 'plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.'" *In re JPMorgan Chase & Co. Secs. Litig.*, 2015 U.S. Dist. LEXIS 132181, at *23-24 (S.D.N.Y. Sept. 29, 2015) (quoting *Sykes v. Mel S. Harris & Assocs.*, 780 F.3d 70, 82 (2d Cir. 2015)).

Again, despite such unambiguous and binding authority, Dr. Stulz urges the Court to forge its own path and find that the model here fails to: (i) "disentangle price movements" or "consequential effects"; (ii) address how the "ADRs reacted on alleged corrective disclosure days"; (iii) handle surviving misstatements (and omissions); and (iv) "determine when inflation entered the price . . . ." Ex. 1, ¶16(a)-(e).  Dr. Stulz also criticizes Dr. Feinstein prior use of similar models.  *Id.*, ¶103 n.185.

The degree of specificity that Dr. Stulz requires is not necessary, as many courts have held – including those that have accepted Dr. Feinstein's proposed damages models at class certification.[12]

---

[12]   *See Strougo*, 312 F.R.D. at 327 (rejecting a requirement to show how "confounding information can be . . . disaggregated in order to determine . . . price inflation"); *In re Goldman Sachs Grp., Inc. Sec. Litig.*, 2015 U.S. Dist. LEXIS 128856, at *24 (S.D.N.Y. Sept. 24, 2015) (same); *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 436 (S.D.N.Y. 2014) (discussing apportioning liability); *see also JPMorgan*, 2015 U.S. Dist. LEXIS 132181, at *24 (accepting Dr. Feinstein's model); *Luna v. Marvell Tech. Grp., Ltd.*, 2017 U.S. Dist. LEXIS 178674, at *16-18 (N.D. Cal. Oct. 27, 2017) (same); *In re Silver Wheaton Corp. Sec. Litig.*, 2017 U.S. Dist. LEXIS 72787, at *40-44 (C.D. Cal. May 11, 2017) (same); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2015 U.S. Dist. LEXIS 115287, at *20 (D.N.J. Aug. 31, 2015) (same).

Thus, the requirements that Dr. Stulz urges this Court to impose are not requirements at all, and Dr. Stulz's belief that they *are* flatly contradicts binding legal authority that states otherwise.[13] Accordingly, the showing that Dr. Stulz would require now is inconsistent with, and precluded by, the law, which renders his Report and opinions unreliable and subject to exclusion.

## IV.   CONCLUSION

"Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct . . . on the relevant legal standards." *Burkhart*, 112 F.3d at 1213 (citing *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977)).  As shown, Dr. Stulz's flawed and *per se* inadmissible legal opinions, coupled with his biased and speculative conclusions, require the exclusion of his Report and opinions.  As such, Lead Plaintiffs respectfully request that the Court grant this motion in its entirety and exclude such putative expert evidence.

DATED:  June 29, 2018

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
JOSEPH RUSSELLO
ALAN I. ELLMAN
MICHAEL G. CAPECI

*/s/ Joseph Russello*
JOSEPH RUSSELLO

58 South Service Road, Suite 200
Melville, NY 11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
jrussello@rgrdlaw.com
aellman@rgrdlaw.com
mcapeci@rgrdlaw.com

---

[13]      For example, the "argument that Professor Feinstein has not shown how he will disaggregate price inflation attributable to confounding events is not, as [Dr. Stulz] would have it [Ex. 1, ¶100], an attack on his damages model, but is rather an inquiry into loss causation." *See Luna*, 2017 U.S. Dist. LEXIS 178674, at *17.  "Loss causation, however, need not be analyzed at the class certification stage." *Id.* (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 807 (2011)).  Therefore, contrary to Dr. Stulz's contentions, such a showing is *not* necessary to demonstrate that damages stemming from the alleged misconduct are calculable – which is all that is required.

*Lead Counsel and Proposed Class Counsel*

POMERANTZ LLP
JEREMY A. LIEBERMAN
BRENDA SZYDLO
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone:  212/661-1100
212/661-8665 (fax)
jalieberman@pomlaw.com
bszydlo@pomlaw.com

*Additional Counsel for Plaintiffs*

- 15 -

**CERTIFICATE OF SERVICE**

I, Joseph Russello, hereby certify that on June 29, 2018, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.  I further certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 29, 2018 at Melville, New York.

*/s/ Joseph Russello*
JOSEPH RUSSELLO
