UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ———————————————— x | | |
| In re BHP BILLITON LIMITED SECURITIES LITIGATION | : | Civil Action No. 1:16-cv-01445-NRB |
| ———————————————— | : | |
| | : | CLASS ACTION |
| | : | |
| This Document Relates To: | : | LEAD PLAINTIFFS' MEMORANDUM OF |
| | : | LAW IN SUPPORT OF UNOPPOSED |
| ALL ACTIONS. | : | MOTION FOR PRELIMINARY APPROVAL |
| | : | OF SETTLEMENT |
| ———————————————— x | | |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...........................................................................................1

II.     SUMMARY OF THE LITIGATION ...........................................................2

III.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ..................3

        A.      Terms of the Settlement ........................................................................3

        B.      The Standards for Reviewing a Proposed Settlement for Preliminary
                Approval ..................................................................................................6

        C.      Preliminary Approval of the Settlement Should Be Granted...................7

                1.      The Complexity, Expense, and Likely Duration of the Litigation
                        Supports Approval of the Settlement...........................................7

                2.      The Reaction of the Class to the Settlement ................................8

                3.      The Stage of the Proceedings......................................................9

                4.      The Risk of Establishing Liability and Damages .....................10

                5.      The Risks of Maintaining the Class Action Through Trial........11

                6.      The Ability of Defendants to Withstand a Greater Judgment....11

                7.      The Reasonableness of the Settlement in Light of the Best Possible
                        Recovery and the Attendant Risks of Litigation........................12

IV.     THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE
        FORM OF THE PROOF OF CLAIM ARE APPROPRIATE...........................................13

        A.      The Scope of the Notice Program Is Adequate......................................13

        B.      The Proposed Form of Notice Comports with the Requirements of Due
                Process, the PSLRA, and Rule 23 and Is the Same or Similar to the
                Form(s) of Notice Routinely Approved by Courts in This Jurisdiction ...............14

V.      CERTIFICATION OF THE CLASS IS APPROPRIATE .................................16

VI.     PROPOSED SCHEDULE ..........................................................................18

VII.    CONCLUSION..........................................................................................19

- i -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allen v. Dairy Farmers of Am., Inc.*,
  No. 5:09-cv-230, 2011 U.S. Dist. LEXIS 48479
  (D. Vt. May 4, 2011).........................................................................................................6, 7

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
  310 F.R.D. 69 (S.D.N.Y. 2015) ............................................................................................17

*Chatelain v. Prudential-Bache Sec.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) .........................................................................................7

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995).....................................................................................................17

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001).....................................................................................................12

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)...........................................................................................5, 7, 10

*Dietrich v. Bauer*,
  192 F.R.D. 119 (S.D.N.Y. 2000) ...........................................................................................17

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)..........................................................................................11

*Hicks v. Morgan Stanley & Co.*,
  No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
  (S.D.N.Y. Oct. 24, 2005) .........................................................................................................7

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984),
  *aff'd*, 818 F.2d 145 (2d Cir. 1987)........................................................................................12

*In re Alloy, Inc. Sec. Litig.*,
  No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129
  (S.D.N.Y. Dec. 2, 2004)......................................................................................................8, 10

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  MDL No. 1500, 2006 U.S. Dist. LEXIS 17588
  (S.D.N.Y. Apr. 6, 2006)..............................................................................................8, 10, 13

*In re BHP Billiton Ltd. Sec. Litig.*,
  276 F. Supp. 3d 65 (S.D.N.Y. 2017)....................................................................................2, 9

**Page**

*In re Currency Conversion Fee Antitrust Litig.*,
   MDL No. 1409, 2006 U.S. Dist. LEXIS 81440
   (S.D.N.Y. Nov. 8, 2006) ...................................................................................6

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062
   (E.D.N.Y. Apr. 19, 2007)...............................................................................13

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................9, 12

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090
   (S.D.N.Y. Sept. 29, 2003) ..............................................................................12

*In re Intercept Pharm., Inc. Sec. Litig.*,
   No. 1:14-cv-01123-NRB, slip op.,
   (S.D.N.Y. May 23, 2016)..........................................................................16, 18

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018).............................................................17

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11 MD 2262 (NRB), 2018 U.S. Dist. LEXIS 129860
   (S.D.N.Y. Aug. 1, 2018) ............................................................................11, 12

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11 MDL 2262 (NRB), 2014 U.S. Dist. LEXIS 172487
   (S.D.N.Y. Dec. 2, 2014)................................................................................5, 6

*In re Luxottica Grp. S.p.A., Sec. Litig.*,
   No. CV 01-3285 (JBW)(MDG), 2005 U.S. Dist. LEXIS 27765
   (E.D.N.Y. Nov. 15, 2005) ...............................................................................13

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450
   (S.D.N.Y. Feb. 1, 2007) ..................................................................................13

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) .........................................................................7

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) .........................................................................6

- iii -

Page

*In re Platinum & Palladium Commodities Litig.*,
   No. 10cv3617, 2014 U.S. Dist. LEXIS 96457
   (S.D.N.Y. July 15, 2014) .................................................................................6

*In re Prudential Sec. Ltd. P'ships Litig.*,
   164 F.R.D. 362 (S.D.N.Y. 1996),
   *aff'd sub nom. Toland v. Prudential Sec. P'ship Litig.*,
   107 F.3d 3 (2d Cir. 1996) ................................................................................14

*In re Stock Exchs. Options Trading Antitrust Litig.*,
   No. 99 Civ. 0962 (RCC), 2006 U.S. Dist. LEXIS 87825
   (S.D.N.Y. Dec. 4, 2006) ..................................................................................15

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 99840
   (S.D.N.Y. Nov. 20, 2008) ..................................................................................5

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ............................................................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................6

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) ..............................................................................15

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §78u-4(a)(7) ..........................................................................................8, 15, 16
   §78u-4(a)(7)(A)-(F) ...........................................................................................16

28 U.S.C.
   §1715 ..................................................................................................................14

Federal Rules of Civil Procedure
   Rule 23 .........................................................................................................13, 15
   Rule 23(a) ...........................................................................................................17
   Rule 23(b)(3) .................................................................................................17, 18

## SECONDARY AUTHORITIES

*Manual for Complex Litigation* (3d ed. 1995)
   §30.41 ....................................................................................................................6

- iv -

## I.     INTRODUCTION

Lead Plaintiffs City of Birmingham Retirement and Relief System and City of Birmingham Firemen's and Policemen's Supplemental Pension System (together, "Lead Plaintiffs") respectfully submit this memorandum in support of their unopposed motion for preliminary approval of the settlement reached in this Litigation (the "Settlement").[1]  The proposed Settlement provides a recovery of $50 million in cash to resolve this securities class action against defendants BHP Billiton Limited and BHP Billiton plc (together, "BHP" or "Defendants").  The Settlement is memorialized in a Stipulation of Settlement entered into by all parties dated as of September 14, 2018 (the "Stipulation"), filed concurrently herewith.

As explained further herein, the Settlement is the result of a comprehensive assessment of the strengths and weaknesses of the claims asserted in the Litigation, the costs and risk of proceeding with the Litigation, and the cash consideration payable to purchasers of Defendants' American Depositary Receipts (the "ADRs," as defined in the Stipulation) from September 25, 2014 to November 30, 2015, inclusive ("Class Period"), and represents a good recovery based on estimated recoverable damages, as explained below.  Moreover, the Settlement was reached with the assistance of experienced mediator and former federal judge Layn R. Phillips, whose efforts enabled the parties to reach a resolution of this Litigation shortly after they participated in an all-day mediation session on August 1, 2018.  This Settlement will eliminate the risk and uncertainty of continued proceedings, as well as the difficulties associated with securing additional evidence required to prove the claims asserted in the Litigation, including the testimony of witnesses, from locales as far reaching as Australia and Brazil.

---

[1]     Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation.

By this motion, Lead Plaintiffs seek entry of an order: (1) certifying the Class for settlement purposes; (2) granting preliminary approval of the proposed Settlement; (3) approving the form and manner of giving notice of the proposed Settlement to the Class; and (4) setting a hearing date for final approval of the Settlement, the Plan of Allocation of the Net Settlement Fund, Lead Counsel's application for attorneys' fees and expenses, and Lead Plaintiffs' application for an award reflecting their time and expenses (the "Settlement Hearing") and a schedule for various deadlines relevant thereto ("Notice Order").

As shown below, the proposed Settlement is a good result for the Class, is fair, reasonable, and adequate under the governing standards in this Circuit, and warrants the approval of this Court.

## II.    SUMMARY OF THE LITIGATION

The Litigation arises from the November 5, 2015 failure of the Fundão tailings dam in Minas Gerais, Brazil, which resulted in the release of mining waste (called tailings), property damage and the loss of life.  The Litigation was commenced on February 24, 2016.  A second action was filed on March 15, 2016.  On June 14, 2016, the Court consolidated the actions and appointed Lead Plaintiffs to lead the prosecution of this Litigation in accordance with the Private Securities Litigation Reform Act of 1995 ("PSLRA").  On August 15, 2016, Lead Plaintiffs – together with plaintiff James Crumpley, who purchased BHP Billiton plc ADRs – filed the operative Consolidated Amended Complaint for Violations of the Federal Securities Laws ("CAC").

On August 28, 2017, following briefing and oral argument, the Court dismissed the claims against the individuals named as defendants but held that the CAC "sufficiently alleged that BHP made actionable misstatements regarding its commitment to safety and its risk management controls, and omissions of facts needed to make these statements not misleading."  *In re BHP Billiton Ltd.*

*Sec. Litig.*, 276 F. Supp. 3d 65, 94 (S.D.N.Y. 2017) (Buchwald, J.).  Fact and class certification discovery commenced in October 2017.

On June 29, 2018, following the completion of class certification discovery – which included depositions of two of Lead Plaintiffs' representatives and the parties' two experts, as well as the exchange of expert reports – Lead Plaintiffs filed motions for class certification and the exclusion of BHP's expert.  Simultaneously, BHP and various non-parties continued to produce electronically stored documents and other information responsive to Lead Plaintiffs' requests for production, and Lead Plaintiffs' team of reviewing attorneys continued to review, analyze and code the productions as they were received.  As those efforts progressed, the parties agreed to attempt to resolve this case through mediation.

Following the exchange of mediation statements and a conference involving the parties' loss causation/damages consultants, the parties attended an all-day mediation session on August 1, 2018 before Layn R. Phillips, a former federal judge and nationally recognized mediator of complex cases and class actions.  The parties were unable to resolve this matter at that time.  The following week, however, the parties reached an agreement-in-principle to resolve this case, the initial terms of which – including the settlement amount of $50 million ("Settlement Amount") – they memorialized in a term sheet dated August 6, 2018.  Thereafter, the parties negotiated and executed the Stipulation, filed with the Court on September 19, 2018.

## III.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.     Terms of the Settlement

The Settlement set forth in the Stipulation resolves the Class's claims against BHP.  The Stipulation provides that BHP will pay or cause to be paid the Settlement Amount of $50 million in cash, inclusive of attorneys' fees and expenses.  Within fifteen (15) business days of the entry of the

- 3 -

Notice Order, the entire $50 million Settlement Amount will be paid to the Escrow Agent and the funds will be invested in U.S. Agency or Treasury Securities, or other instruments backed by the full faith and credit of the U.S. Government or an agency thereof, or fully insured by the U.S. Government or an agency thereof.  Stipulation at ¶3.3.  Interest on the Settlement Amount will accrue for the benefit of the Class.

The recovery to individual Class Members will depend on variables, including the number of ADRs the Class Member purchased or acquired and when and at what price such purchases or acquisitions were made.  If 100% of the eligible ADRs purchased or acquired by Class Members participate in the Settlement, the estimated average distribution per BHP Billiton Limited ADR and BHP Billiton plc ADR will be approximately $0.37 and $0.38, respectively, before deducting any Court-approved fees and expenses.  Historically, actual claim rates are lower than 100%, resulting in greater distributions for class members.

The Notice of Pendency of Class Action and Proposed Settlement ("Notice") explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proof of Claim and Release forms ("Proof of Claim") pursuant to the proposed Plan of Allocation included in the Notice and subject to this Court's approval; there will be no reversion to BHP or its insurers.  The Notice also informs Class Members of, among other information, Lead Counsel's application for attorneys' fees and expenses, and the proposed Plan of Allocation for distributing the Net Settlement Fund.  The Notice further details: (1) the procedures for objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses; and (2) the date, time, and location of the Settlement Hearing.

If the Court grants preliminary approval, the Claims Administrator will mail the Notice and Proof of Claim (*see* Exhibits A-1 and A-2 to the Stipulation) to Class Members who can be

identified with reasonable effort.  Additionally, the Claims Administrator will cause the Summary Notice (*see* Exhibit A-3 to the Stipulation) to be published once in *The Wall Street Journal* and once over a national newswire service.

The proposed Settlement is a good result for the Class.  It provides a significant recovery in a case where BHP allegedly misrepresented or failed to disclose information regarding its commitment to safety and risk management based on problems facing the Fundão tailings dam – one of two such dams owned and operated by Samarco Mineração, S.A. ("Samarco") – an iron-ore mining company based in Brazil in which BHP Billiton Brasil Ltda. and Vale S.A. ("Vale") each are 50% shareholders.  The Settlement Amount also represents a reasonable percentage of estimated recoverable damages.

Thus, the $50 million recovery is certainly within, if not well-above, the range of what would be determined to be fair, reasonable, and adequate.  Accordingly, Lead Plaintiffs respectfully submit that an analysis of the *Grinnell* factors (*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)), set forth below, which apply to a court's determination of final approval of a settlement, also supports preliminary approval of this Settlement.  *See also In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 99840, at *4 (S.D.N.Y. Nov. 20, 2008) ("Although a complete analysis of [the *Grinnell*] factors is required for final approval, at the preliminary approval stage, 'the Court need only find that the proposed settlement fits "within the range of possible approval"' to proceed.")[2]; *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2014 U.S. Dist. LEXIS 172487, at *12 (S.D.N.Y. Dec. 2, 2014) (Buchwald, J.) ("Preliminary approval is 'not tantamount to a finding that [a proposed] settlement is fair and reasonable.'").

---

[2]      All citations and footnotes are omitted unless otherwise noted.

**B.     The Standards for Reviewing a Proposed Settlement for Preliminary Approval**

Once a proposed settlement is reached, "a court must determine whether the terms of the proposed settlement warrant preliminary approval" by making "'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2006 U.S. Dist. LEXIS 81440, at *13 (S.D.N.Y. Nov. 8, 2006); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *LIBOR*, 2014 U.S. Dist. LEXIS 172487, at *12 ("at this stage, we need only decide whether the terms of the Proposed Settlement are 'at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard'"). "In determining whether to grant preliminary approval, the court starts with the proposition that 'there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.'" *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2011 U.S. Dist. LEXIS 48479, at *9 (D. Vt. May 4, 2011).

Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and falls within the range of approval, preliminary approval is generally granted. *See In re Platinum & Palladium Commodities Litig.*, No. 10cv3617, 2014 U.S. Dist. LEXIS 96457, at *36 (S.D.N.Y. July 15, 2014); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citing *Manual for Complex Litigation* §30.41 (3d ed. 1995)). "Preliminary approval . . . 'is at most a determination that there is what might be termed probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *Platinum*, 2014 U.S. Dist. LEXIS 96457, at *36. "Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *NASDAQ*, 176 F.R.D. at 102.

- 6 -

Thus, "[p]reliminary approval is merely the first step in a multi-step process in which the . . . [s]ettlement will be scrutinized by both the court and class members." *Allen*, 2011 U.S. Dist. LEXIS 48479, at *10. "It deprives no party or non-party of any procedural or substantive rights, and provides a mechanism through which class members who object to the . . . [s]ettlement can voice those objections." *Id*. A strong initial presumption of fairness attaches to the proposed settlement if, as here, it is reached by experienced counsel most closely acquainted with the facts of the underlying litigation after arm's-length negotiations. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992).

## C.      Preliminary Approval of the Settlement Should Be Granted

The Second Circuit has identified nine factors courts should consider in deciding whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. For the following reasons, each of the applicable *Grinnell* factors supports preliminary approval of the Settlement.

### 1.      The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement

Courts have consistently recognized that the complexity, expense, and likely duration of the litigation are critical factors in evaluating the reasonableness of a settlement, especially where the settlement under evaluation involves a securities class action. *See, e.g., Hicks v. Morgan Stanley &*

- 7 -

*Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *6 (S.D.N.Y. Oct. 24, 2005); *In re*

*Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129, at *6 (S.D.N.Y.

Dec. 2, 2004) (approving settlement, noting action involved complex securities fraud issues "that

were likely to be litigated aggressively, at substantial expense to all parties").

Securities fraud class actions brought under the PSLRA are notoriously complex and

expensive to prosecute, and this case was no exception.  *See, e.g.*, *In re AOL Time Warner, Inc. Sec.*

*& ERISA Litig.*, MDL No. 1500, 2006 U.S. Dist. LEXIS 17588, at *31 (S.D.N.Y. Apr. 6, 2006)

(securities class actions are notoriously complex).  Indeed, this case involved witnesses and

information located in Australia and Brazil, outside of the Court's subpoena power and jurisdiction –

posing myriad complications for discovery and the development of admissible evidence.

Additionally, the issues at summary judgment and trial would have ranged from whether

investors understood that BHP's safety-related and risk statements encompassed Samarco's

operations (as opposed to BHP's operations only) to whether those statements were mere puffery or

otherwise non-actionable as a result of various cautionary statements in BHP's SEC filings and

elsewhere.  Assuming that Lead Plaintiffs would have prevailed at summary judgment (and the

Court would have certified the proposed Class), a trial would likely have lasted at least two weeks,

involved complicated facts regarding BHP's and Samarco's reporting and operational structure, and

been expensive.  No doubt an appeal would have followed, likely taking years to complete,

regardless of the outcome.  Accordingly, this factor weighs strongly in favor of preliminary approval

of the proposed Settlement.

### 2.    The Reaction of the Class to the Settlement

Lead Plaintiffs have participated throughout the prosecution of the case and were actively

involved in the decision to enter into settlement negotiations and the Settlement.  Notice regarding

the Settlement has not yet been mailed or otherwise distributed to potential Class Members.  If any objections are received after notice is disseminated, they will be addressed by Lead Counsel in connection with the forthcoming motion for final approval of the Settlement.

### 3.    The Stage of the Proceedings

The volume and substance of Lead Plaintiffs' and their counsel's knowledge of the merits and potential weaknesses of the claims alleged are also adequate to support the Settlement.  As the Court acknowledged in partially denying the motion to dismiss, the CAC was "detailed and well-sourced."  *BHP*, 276 F. Supp. 3d at 81.  Yet BHP – and the executives then named as defendants, who ultimately secured dismissal – raised serious challenges to the claims in seeking dismissal. Thus, from the outset, Lead Plaintiffs and Lead Counsel understood the strengths and weaknesses of this case – particularly after receiving the Court's decision.

Lead Plaintiffs and Lead Counsel secured a deeper understanding of these strengths and weaknesses after conducting extensive document discovery, with Lead Counsel having received, reviewed and analyzed documents from BHP, Vale, Samarco and others.  Lead Counsel also consulted mining, loss causation, and damages experts and consultants.  The accumulation of information resulting from discovery and consultation with experts permitted Lead Plaintiffs and their counsel to be well informed about the strengths and weaknesses of the case and to engage in effective settlement discussions (as the Settlement Amount reflects).  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("the question is whether the parties had adequate information about their claims").  This factor additionally supports preliminary approval of the Settlement.

4.      **The Risk of Establishing Liability and Damages**

In assessing the Settlement, the Court should balance the benefits afforded to the Class –
including the immediacy and certainty of a recovery – against the risk of trial.  *See Grinnell*, 495
F.2d at 463.   Securities class actions present hurdles to proving liability that are difficult for
plaintiffs to meet.  *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39 (noting that "[t]he
difficulty of establishing liability is a common risk of securities litigation"); *Alloy*, 2004 U.S. Dist.
LEXIS 24129, at *5-*6 (same).

While Lead Plaintiffs believe that their claims would be borne out by the evidence presented
at trial, they also recognize that they faced hurdles to proving liability or even proceeding to trial.
BHP has articulated defenses to the claims that the Court may have accepted at summary judgment
or a jury may have accepted at trial.  Among other things, BHP has strenuously contended in this
Litigation that Lead Plaintiffs would be unable to prove that BHP made any false statements with
scienter, under a theory of corporate scienter or otherwise.  Indeed, BHP maintains that it accurately
disclosed all material information about its commitment to safety and its risk management and
monitoring protocols.  BHP also maintains that it lacks scienter because its senior executives did not
receive undisclosed information contradictory to the alleged misstatements and had no obligation to
disclose any information concerning Samarco's operations even if they had.  If BHP prevailed on
any one of these grounds, the entire case would be lost.

In addition, although Lead Plaintiffs were confident they would have been able to support
their claims with qualified and persuasive expert testimony, jury reactions to competing experts are
inherently difficult to predict, and BHP would have presented highly experienced experts to support
its various defenses to liability.  Moreover, Lead Plaintiffs faced the possibility that the Court would

- 10 -

limit or exclude their experts' testimony, at class certification or otherwise.  This risk, if realized, would have further complicated Lead Plaintiffs' chance of success in further proceedings.

Finally, Lead Plaintiffs also faced risks in establishing loss causation and damages at trial. Indeed, as reflected in its expert's report, BHP would have argued that Lead Plaintiffs' damages methodology is inherently unreliable and fails to connect the decline in the prices of the ADRs to the exposure of news regarding the alleged fraud.  BHP further would have argued that damages, if any, are zero or, at best, significantly less than Lead Plaintiffs had estimated.  As with contested liability issues, issues relating to loss causation and damages would have likely come down to an unpredictable and hotly disputed "battle of the experts."

Accordingly, in the absence of a settlement, there was a very real risk that the Class would have recovered an amount significantly less than the total Settlement Amount – or even nothing at all.  Thus, the $50 million recovery now, particularly when viewed in the context of the risks and the uncertainties of further proceedings, weighs in favor of preliminary approval of the Settlement.

### 5.        The Risks of Maintaining the Class Action Through Trial

Here, briefing on class certification was underway at the time of settlement.  Thus, the Class had not been certified, which presented another risk to Lead Plaintiffs and the proposed Class.  In fact, even assuming class certification was achieved, the Court could have revisited certification at any time – presenting a continuous risk that this case, or particular claims, might not be maintained on a class-wide basis through trial.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("the risk that the case might be not certified is not illusory").

### 6.        The Ability of Defendants to Withstand a Greater Judgment

A court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement, although it is not generally a determinative factor.  *See In re LIBOR-Based*

*Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB), 2018 U.S. Dist. LEXIS 129860, at *22 (S.D.N.Y. Aug. 1, 2018) (Buchwald, J.) (explaining rationale of factor).  Here, if Plaintiffs were able to secure a judgment (a far from certain outcome, as discussed above), BHP presumably could withstand a judgment that exceeds the Settlement Amount.  But placing undue emphasis on this factor would place at risk the significant recovery earmarked for Class Members.  This factor alone cannot undermine the others that together militate in favor of preliminary approval.  *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (upholding district court's decision that "this factor, standing alone, does not suggest that the settlement is unfair"); *LIBOR*, 2018 U.S. Dist. LEXIS 129860 (viewing the factor similarly).

**7.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *12-*13 (S.D.N.Y. Sept. 29, 2003) (noting few trials result in full amount of damages claimed).

In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment years

- 12 -

down the road.  *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *44 (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").  Nevertheless, the Settlement here represents a good result under the circumstances – approximately 20% of Plaintiffs' estimated recoverable damages of approximately $255 million.

Given both the risks at trial and the recognition that not all Class Members will seek recovery, the size of the recovery strongly supports preliminary approval.

## IV.   THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE FORM OF THE PROOF OF CLAIM ARE APPROPRIATE

### A.   The Scope of the Notice Program Is Adequate

There are no "rigid rules" that apply when determining the adequacy of notice for a class action settlement.  Rather, when measuring the adequacy of a notice under either the Due Process Clause or the Federal Rules, the court should look to its reasonableness.  *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *26 (S.D.N.Y. Feb. 1, 2007).  Accordingly, "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Id*. at *27.

In fact, notice programs such as the one proposed by Lead Counsel have been approved as adequate under the Due Process Clause and Rule 23 in a multitude of class action settlements.  *See, e.g.*, *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062, at *41-*42 (E.D.N.Y. Apr. 19, 2007) (approving proposed notice program where notice mailed to shareholders of record listed on transfer records and to "more than 2500 of the largest banks, brokerages, and other nominees"); *In re Luxottica Grp. S.p.A., Sec. Litig.*, No. CV 01-3285

- 13 -

(JBW)(MDG), 2005 U.S. Dist. LEXIS 27765, at *5 (E.D.N.Y. Nov. 15, 2005) (approving notice program, consisting of broker mailing and summary notice publication in *The Wall Street Journal* and *The New York Times*); *In re Prudential Sec. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (approving proposed notice and noting mailing of notice to each identifiable class member's last known address is "a procedure that has been given wide-spread approval in other class actions"), *aff'd sub nom. Toland v. Prudential Sec. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996).

Here, the parties propose disseminating notice by mail and through publication.  By virtue of completing the process for disseminating the Notice and consulting with counsel for BHP and its stock transfer agent, Lead Counsel will ensure that all reasonable avenues for obtaining the identity of Class Members are being utilized to disseminate the Notice by mail.  Additionally, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1715 *et seq.*, BHP will provide notice of the Settlement to the appropriate state and federal officials.  Therefore, it is reasonable to conclude that the Notice will reach the vast majority of Class Members, is adequate, and should be approved by the Court.

> ### B.   The Proposed Form of Notice Comports with the Requirements of Due Process, the PSLRA, and Rule 23 and Is the Same or Similar to the Form(s) of Notice Routinely Approved by Courts in This Jurisdiction

As outlined in the proposed Notice Order (Exhibit A to the Stipulation), the Claims Administrator will notify Class Members of the Settlement by mailing the Notice and Proof of Claim to all Class Members who can be identified with reasonable effort.  The Notice will advise Class Members of the essential terms of this Settlement and the Plan of Allocation and provide information regarding Lead Counsel's motion for attorneys' fees and expenses.  The Notice also will provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for

- 14 -

objecting to the Settlement, the proposed Plan of Allocation, or the motion for attorneys' fees and expenses.

In addition to mailing the Notice and Proof of Claim, the Claims Administrator will provide for the publication of a Summary Notice in *The Wall Street Journal* and once over a national newswire service.  The Notice and related Settlement papers will also be posted on a dedicated website, www.bhpsecuritieslitigation.com.

Similar to other notice programs, the form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. §78u-4(a)(7).  The content of a notice is generally found to be reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962 (RCC), 2006 U.S. Dist. LEXIS 87825, at *22 (S.D.N.Y. Dec. 4, 2006); *see also Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (the notice must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings'").

With respect to cases filed under the PSLRA, the settlement notice must include: (1) the amount of the settlement proposed for distribution, determined in the aggregate and on an average per share basis; (2) if the parties do not agree on the average amount of damages per share recoverable in the event plaintiff prevailed, a statement from each party concerning the issue(s) on which the parties disagree; (3) a statement indicating which parties or counsel intend to apply for an award of fees and costs (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought; (4) the name, telephone number, and address of one or more representatives of counsel for the class who will be reasonably available to answer questions concerning any matter contained in the notice of settlement; (5) a brief

- 15 -

statement explaining the reasons why the parties are proposing the settlement; and (6) such other information as may be required by the court. *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed Notice contains all of the information required by the PSLRA. *See* Notice (Exhibit A-1 to the Stipulation). The information is also provided in a format that is accessible to the reader. In addition, the Notice advises recipients that they have the right to object to any aspect of the Settlement, the Plan of Allocation, or the fee and expense application. Furthermore, the Notice provides recipients with the contact information for the Claims Administrator, Gilardi & Co. LLC, and Lead Counsel. Finally, the proposed format is the same or similar to formats that have been approved by this and many other courts in this jurisdiction, which also supports its approval. *See, e.g.*, *In re Intercept Pharm., Inc. Sec. Litig.*, No. 1:14-cv-01123-NRB, slip op. at 2-3, Order Preliminarily Approving Settlement and Providing for Notice (S.D.N.Y. May 23, 2016).

## V.    CERTIFICATION OF THE CLASS IS APPROPRIATE

Under the terms of the Stipulation, the Settling Parties have agreed, for the purposes of the Settlement only, to the certification of the Class, defined as follows:

> All persons and entities who purchased or otherwise acquired an interest in the ADRs between September 25, 2014 and November 30, 2015, inclusive, on any exchange or otherwise. Excluded from the Class are (i) Defendants, (ii) Related Parties, (iii) Immediate Family Members of any natural persons in (ii), (iv) any person, firm, trust, corporation, officer, director, or other individual or entity in which any Defendant had a controlling interest during the Class Period, and (v) the legal representatives, heirs, successors-in-interest or assigns of any such excluded party. Also excluded from the Class are any persons and entities who are found by the Court to have timely and validly requested exclusion.

Since the Class here is virtually identical to that which Lead Plaintiffs moved to certify on June 29, 2018, *see* Memorandum of Law in Support of Lead Plaintiffs' Motion for Class Certification (ECF No. 92) and the Report on Market Efficiency of Professor Steven P. Feinstein, Ph.D., CFA (ECF No. 91-2) and Declaration of Joseph Russello (ECF No. 91) in support thereof, for

- 16 -

reasons cited therein and set forth further below, the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) have been satisfied and the Class should be certified for settlement purposes only. In addition, Lead Plaintiffs should be appointed as Class representatives, and Lead Counsel should be appointed as Class counsel.

First, given the number of ADRs trading during the Class Period, the Class easily consists of more than 40 members and numerosity is satisfied.  *See* ECF No. 92 at 9 (citing evidence); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members"); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 460 (S.D.N.Y. 2018) (Buchwald, J.) (finding numerosity).

Second, because the Class's claims arise from the same alleged misstatements and omissions and rely on the same theories of liability, questions of law and fact are common to the Class.  *See* ECF No. 92 at 10.  Indeed, "[t]he existence of a single common question . . . establish[es] commonality," *LIBOR*, 299 F. Supp. 3d at 462, and "minor variations in the class members' positions will not . . . defeat certification." *Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000).

Third, Lead Plaintiffs' claims are typical of the Class's because they share the same factual and legal underpinnings.  *See* ECF No. 92 at 11; *see also LIBOR*, 299 F. Supp. 3d at 460 (noting typicality exists if "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability'").

Fourth, Lead Plaintiffs will adequately represent the Class because they are institutional investors, which are the type of investors that Congress intended to lead cases of this nature; their representatives exhibited commendable knowledge of this case and a commitment to the Class; and Lead Counsel, Robbins Geller, is experienced in securities litigation and has ably represented the Class.  *See* ECF No. 92 at 12-14; *see also Carpenters Pension Tr. Fund of St. Louis v. Barclays*

- 17 -

*PLC*, 310 F.R.D. 69, 100 (S.D.N.Y. 2015) (appointing plaintiffs who "actively supervised and monitored the progress of this litigation, and will continue to actively participate in its prosecution").

Additionally, the requirements of Rule 23(b)(3) are satisfied as common questions of law and fact predominate over individual ones and class treatment is superior to individual adjudications. Issues of materiality, loss causation and reliance all present common questions.

Accordingly, class certification is appropriate here for Settlement purposes.

## VI.    PROPOSED SCHEDULE

If the Court grants preliminary approval of the proposed Settlement, the parties respectfully submit the following procedural schedule for the Court's review:[3]

| Event | Time for Compliance |
|---|---|
| Deadline for commencing the mailing of the Notice and Proof of Claim to Class Members (the "Notice Date") | 10 business days after entry of the Notice Order |
| Deadline for publishing the Summary Notice in *The Wall Street Journal* and over a national newswire service | 14 calendar days after the Notice Date |
| Filing of memoranda in support of approval of the Settlement and Plan of Allocation, and in support of Lead Counsel's application for an award of attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for submitting objections or exclusion requests | 21 calendar days prior to the Settlement Hearing |
| Filing of reply memoranda in further support of the Settlement and Plan of Allocation, and in support of Lead Counsel's application for an award of attorneys' fees and expenses | 7 calendar days prior to the Settlement Hearing |

---

[3]    This schedule is very similar to the schedule approved by this Court in *In re Intercept Pharm., Inc. Sec. Litig.*, No. 1:14-cv-01123-NRB, a securities class action Robbins Geller prosecuted that resulted in the recovery of $55 million for investors.

- 18 -

| Event | Time for Compliance |
|---|---|
| Settlement Hearing | Approximately 90 calendar days after entry of the Notice Order, at the Court's convenience |
| Deadline for submitting Proofs of Claim | 90 calendar days after the Notice Date |

## VII.    CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request that the Court enter the Notice

Order in connection with this Settlement, which will provide: (1) preliminary certification of a Class

for settlement purposes; (2) preliminary approval of the Settlement; (3) approval of the form and

manner of giving notice of the Settlement to the Class; and (4) a hearing date and time to consider

final approval of the Settlement and related matters.

DATED:  September 19, 2018                  Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            SAMUEL H. RUDMAN
                                            JOSEPH RUSSELLO
                                            MICHAEL G. CAPECI


                                                    s/ Samuel H. Rudman
                                            _____
                                                SAMUEL H. RUDMAN

                                            58 South Service Road, Suite 200
                                            Melville, NY  11747
                                            Telephone:  631/367-7100
                                            631/367-1173 (fax)
                                            srudman@rgrdlaw.com
                                            jrussello@rgrdlaw.com
                                            mcapeci@rgrdlaw.com

                                            Lead Counsel for Plaintiffs

                                            POMERANTZ LLP
                                            JEREMY A. LIEBERMAN
                                            BRENDA SZYDLO
                                            600 Third Avenue
                                            New York, NY  10016
                                            Telephone:  212/661-1100
                                            212/661-8665 (fax)

                                            Additional Counsel for Plaintiffs

- 19 -

1473993_4

**CERTIFICATE OF SERVICE**

I, Samuel H. Rudman, hereby certify that on September 19, 2018, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.  I further certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 19, 2018, at Melville, New York.

_s/ Samuel H. Rudman_
SAMUEL H. RUDMAN

1473993_4