UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re BHP BILLITON LIMITED SECURITIES LITIGATION | Civil Action No. 1:16-cv-01445-NRB |
| | CLASS ACTION |
| This Document Relates To: | STIPULATION OF SETTLEMENT |
| ALL ACTIONS. | |

This Stipulation of Settlement, dated as of September 14, 2018 (the "Stipulation"), is made and entered into by and among: (i) Lead Plaintiffs City of Birmingham Retirement and Relief System and City of Birmingham Firemen's and Policemen's Supplemental Pension System (together, "Funds" or "Plaintiffs"), on behalf of themselves and each of the Class Members, by and through their counsel of record in the Litigation (as defined herein); and (ii) Defendants BHP Billiton Limited and BHP Billiton plc (together, "Defendants" or "BHP," and with Plaintiffs, the "Settling Parties"), by and through their counsel of record in the Litigation. The Stipulation is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein), subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

The Settling Parties agree that certification of the Class, for settlement purposes only, is appropriate in the Litigation. For purposes of this settlement only, the Class comprises all Class Members, as defined in ¶1.7 below. The Settling Parties intend that the provisions herein concerning certification of the Class shall have no effect in the event the settlement does not become Final, as defined in ¶1.15 below.

## I. THE LITIGATION

An indirect subsidiary of BHP, BHP Billiton Brasil Ltda. ("BHP Brasil"), and Vale S.A. ("Vale") each are 50% shareholders of Samarco Mineração, S.A. ("Samarco"), an iron-ore mining company located in Brazil. On November 5, 2015, the Fundão tailings dam, which is part of Samarco's Germano iron ore mining complex in Minas Gerais, Brazil, failed, releasing mining waste (called tailings) that caused property damage and resulted in the loss of life.

On February 24, 2016, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") filed a Complaint for Violations of the Federal Securities Laws on behalf of plaintiff Jackson County Employees' Retirement System and a putative class of all purchasers of Defendants' ADRs (as

defined below) between September 25, 2014 and November 30, 2015, inclusive, alleging claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 against: (i) BHP; (ii) Jac Nasser ("Nasser"), Chair of BHP's Board of Directors; (iii) Andrew Mackenzie ("Mackenzie"), BHP's Chief Executive Officer; (iv) Peter Beaven ("Beaven"), BHP's Chief Financial Officer ("CFO"); and (v) Graham Kerr ("Kerr"), BHP's CFO from November 2011 until October 1, 2014, arising out of allegedly false and misleading statements and omissions pertaining to BHP's focus on safety and its risk management and monitoring protocols.

Subsequently, on March 15, 2016, Pomerantz LLP ("Pomerantz") filed a Complaint for Violations of the Federal Securities Laws on behalf of plaintiff Gary Katz, alleging similar claims against the defendants named in the February 24, 2016 complaint. On April 25, 2016, the Funds and others separately moved to consolidate the pending cases and for the appointment of lead plaintiffs and lead counsel under the Private Securities Litigation Reform Act of 1995, and, thereafter, all but one of the competing lead plaintiff movants withdrew their applications and/or filed non-oppositions to the Funds' motion. On June 14, 2016, the Court entered an Order granting the Funds' motion and appointing them as Lead Plaintiffs and their counsel, Robbins Geller, as Lead Counsel.

On August 15, 2016, the Funds, together with plaintiff James A. Crumpley, a purchaser of the ADRs of BHP Billiton plc represented by Pomerantz, filed the Consolidated Amended Complaint for Violations of the Federal Securities Laws ("CAC"), comprised of 105 pages and 355 numbered paragraphs. The CAC alleged that BHP and its executives misrepresented and/or omitted material information concerning: (i) BHP's commitment to health and safety; (ii) the adequacy of BHP's safety, risk management, and monitoring protocols; (iii) BHP's compliance with local laws and regulations; (iv) Samarco's production capacity and projected performance;

(v) the toxicity of tailings-based mudflows resulting from the failure of the Fundão dam; (vi) BHP's progressive dividend policy; (vii) uncertainties and risks relating to Samarco; and (viii) the completeness of BHP's Forms 20-F for fiscal years 2014 and 2015.

On October 14, 2016, the named defendants jointly filed a motion to dismiss the CAC pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, variously asserting that: (i) the CAC alleged non-actionable claims for mismanagement, not fraud; (ii) the CAC did not plead any actionable misstatements or omissions; (iii) the CAC did not plead scienter; and (iv) the Section 20(a) claim failed in the absence of a violation of Section 10(b). On July 26, 2017, after the parties had completed briefing the motion to dismiss, the Court heard oral argument on the motion.

On April 5, 2017, Plaintiffs submitted a letter to the Court concerning Judge Woods' decision to sustain certain claims in a putative class action against Vale, entitled *In re Vale S.A. Securities Litigation*, No. 1:15-cv-09539-GHW (S.D.N.Y.) ("Vale Litigation"), to which BHP responded on April 21, 2017. On August 1, 2017, the Court requested the parties' views on statements alleged in the Consolidated Amended Class Action Complaint filed on April 29, 2016 in the Vale Litigation, in which Vale allegedly referenced an analysis commissioned by Samarco that confirmed the tailings were not toxic or threatening to the environment. On August 9, 2017, the parties each submitted a letter to the Court expressing their views on the issue.

On August 28, 2017, the Court issued a Memorandum and Order, filed August 29, 2017, granting in part and denying in part the named defendants' motion to dismiss the CAC, holding that the CAC adequately alleged corporate scienter and determining that the CAC "sufficiently alleged that BHP made [ten] actionable misstatements regarding its commitment to safety and its risk management controls, and omissions of facts needed to make these statements not

misleading." The Court further held that the CAC had failed to allege scienter as to defendants Nasser, Mackenzie, Beaven and Kerr, and dismissed 32 of the CAC's alleged misstatements.

Lead Counsel thereafter continued its investigative efforts, which included, among other things: engaging and liaising with counsel in Australia and Brazil to obtain documents, contact potential witnesses, observe hearings (where appropriate), and evaluate the substantive and/or procedural law applicable to obtaining discovery in those forums; gathering, translating, reviewing and analyzing voluminous materials obtained from criminal and regulatory proceedings in Brazil; reviewing public information, including press releases, articles and analyst reports, regarding BHP and the failure of the Fundão dam; submitting to, and negotiating with, the U.S. Securities and Exchange Commission a request, pursuant to the Freedom of Information Act, for certain U.S. regulatory filings concerning BHP and Vale; and identifying and contacting potential witnesses, located in the U.S. and abroad, to discuss aspects of the claims, Samarco's operations, and BHP's involvement (if any) in those operations. Lead Counsel also engaged mining experts and damages consultants.

On October 12, 2017, BHP and the Plaintiffs submitted for the Court's consideration the Joint Rule 26(f) Report, in which they each set forth their respective views, after discussions and negotiations, on the scope of discovery, including the discovery available from non-parties. On October 16, 2017, the Court issued an order approving the non-disputed portions of the Joint Rule 26(f) Report and resolving the parties' disputes as to the scope of discovery.

On October 13, 2017, BHP filed its Answer to the CAC, which consisted of 355 numbered paragraphs, asserted 29 affirmative defenses, and spanned 65 pages. On October 17, 2017, Plaintiffs served their First Set of Requests for the Production of Documents, comprised of 55 individual requests, to which BHP responded and objected in writing on November 29, 2017.

On October 25, 2017, BHP served its First Request for Production of Documents, comprised of 29 individual requests, to which Plaintiffs responded and objected in writing on December 4, 2017.

The parties exchanged Rule 26(a) Initial Disclosure Statements on October 20, 2017. They also negotiated a Stipulation and [Proposed] Order of Confidentiality, which the Court so ordered on October 30, 2017, and negotiated and executed a Form of Production Agreement concerning the form of production of hard copy and electronically-stored information for discovery purposes.

Plaintiffs thereafter served subpoenas for documents and testimony on Marcus Philip Randolph ("Randolph") (BHP's Chief Executive of Ferrous & Coal, a member of BHP's Group Management Committee ("GMC"), and Chairman of Samarco's Board of Directors before the Class Period) and Timothy Cutt ("Cutt") (BHP's President of Petroleum and a GMC member during the Class Period), and reviewed their and BHP's written responses and objections, served on November 14, 16, 22 and 30, 2017. Plaintiffs also engaged in discussions with counsel for Randolph and Cutt regarding the subpoenas, ultimately securing acceptable representations from Cutt concerning his lack of involvement in Samarco.

On March 8, 2018, Plaintiffs filed a motion in New Mexico federal district court, where Randolph resides, to compel the production of documents in contemplation of a deposition (to be scheduled at a later date), and thereafter engaged in further negotiations with his counsel on the scope of his production obligations. Randolph ultimately produced certain documents responsive to the subpoena.

Additionally, on March 16, 2018, BHP and the Plaintiffs reached an agreement concerning the scope of discovery, including the identities of document custodians, the relevant

time period for discovery, and production from non-party Samarco. These issues were the subject of negotiations from November 2017 until March 2018. These negotiations and the negotiations with Randolph were complicated by the fact that Randolph and other then-current and former Samarco board members had been criminally charged in Brazil, which gave rise to concerns associated with the privilege against self-incrimination under Brazilian and/or U.S. law. BHP produced information from Samarco alongside its own materials in connection with its rolling productions.

In April 2018, Plaintiffs served a subpoena for documents and testimony on Nasser, to which he responded and objected in writing on May 4, 2018 and thereafter engaged in negotiations, through counsel, concerning the scope of the subpoena in contemplation of a deposition, to be scheduled at a later date. In April 2018, Plaintiffs also served a document subpoena on Gibson Dunn & Crutcher LLP, Vale's counsel, seeking materials related to the Vale Litigation, and later secured information from Vale.

For their part, Plaintiffs engaged in negotiations with defense counsel concerning the scope of Plaintiffs' production obligations and ultimately produced tens of thousands of pages of responsive material concerning the allegations of the CAC, facts relating to BHP and Samarco, and Plaintiffs' transactions in BHP securities. Additionally, in May 2018, Plaintiffs each produced a member of their respective Boards of Managers to testify in connection with class certification proceedings: (i) Catina Williams for City of Birmingham Retirement and Relief System; and (ii) Dexter Cunningham for City of Birmingham Firemen's and Policemen's Supplemental Pension System.

Additionally, Plaintiffs engaged Dr. Steven P. Feinstein as their market efficiency expert. In connection with class certification discovery: (i) Plaintiffs served Dr. Feinstein's opening

report on March 14, 2018; (ii) Lead Counsel represented Dr. Feinstein at his April 24, 2018 deposition; (iii) Lead Counsel analyzed the competing expert reports of Dr. Rene M. Stulz (May 11, 2018 and amended on May 18, 2018); (iv) Lead Counsel conducted Dr. Stulz's deposition on June 21, 2018; and (v) Plaintiffs served Dr. Feinstein's rebuttal expert report on July 5, 2018. On June 29, 2018, Plaintiffs filed motions for class certification and to exclude the report and opinions of Dr. Stulz. By that time, Plaintiffs had assembled a team of ten English and/or Portuguese-language attorneys to review, code and analyze the documents obtained in discovery and from other sources.

In June 2018, the parties agreed to engage in mediation and retained the services of the Honorable Layn R. Phillips, a retired judge of the U.S. District of Oklahoma and a nationally-recognized mediator of complex cases and class actions. Following the exchange of mediation statements in July 2018 and a conference between the parties and their loss causation and damages consultants, the parties attended a full-day mediation on August 1, 2018 in New York City. The parties were unable to successfully resolve this matter at that time.

Subsequently, the parties and the mediator engaged in further discussions, and on August 6, 2018, the parties reached an agreement-in-principle to resolve the Litigation, which agreement they memorialized in a term sheet the same day (subject to the negotiation and further memorialization of mutually acceptable terms in this Stipulation). Also on August 6, 2018, the parties advised the Court of their agreement-in-principle to resolve this Litigation. Thereafter, the parties negotiated the terms of this Stipulation.

## II. DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

This Stipulation constitutes a compromise of matters that are in dispute between the Settling Parties. Defendants are entering into this Stipulation solely to eliminate the cost, disruption and uncertainty of further litigation. Each Defendant denies any wrongdoing, and this

Stipulation shall not be construed or deemed to be evidence of or an admission or concession on the part of any of the Defendants or their Related Parties (as defined herein) with respect to any claim or allegation of any fault, liability, wrongdoing, or damage whatsoever, or any infirmity in the defenses that Defendants or Related Parties have, or could have, asserted. Defendants expressly deny that Plaintiffs have asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, liability, wrongdoing, or damages whatsoever.

## III. PLAINTIFFS' CLAIMS AND THE BENEFITS OF SETTLEMENT

Plaintiffs believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims. Plaintiffs and their counsel recognize, however, the expense and length of continued proceedings necessary to prosecute the Litigation through trial and appeals. Plaintiffs and their counsel also have taken into account the uncertain outcome and risk of litigation, especially in complex actions such as the Litigation, as well as the difficulties and delays inherent in such litigation. Plaintiffs and their counsel also are mindful of the inherent problems of proof under, and possible defenses to, the securities law violations asserted in the Litigation. Plaintiffs and their counsel believe that the settlement set forth in the Stipulation confers substantial benefits upon the Class. Based on their evaluation, Plaintiffs and their counsel have determined that the settlement set forth in the Stipulation is in the best interests of Plaintiffs and the Class.

## IV. TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

Based on the foregoing and subject to the approval of the Court, Plaintiffs (for themselves and the Class Members) and Defendants, by and through their respective counsel of record, stipulate and agree that the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all

Settling and Related Parties, upon and subject to the terms and conditions of the Stipulation, as follows.

**1. Definitions**

As used in the Stipulation the following terms have the meanings specified below:

1.1 "ADR" means a BHP ADR or a BBL ADR.

1.2 "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.3 "BBL ADR" means an American Depositary Receipt that evidences an ownership interest in a specified number of American Depositary Shares, which in turn, represent an interest in a specified number of ordinary shares of BHP Billiton plc.

1.4 "BHP" means BHP Billiton Limited and BHP Billiton plc.

1.5 "BHP ADR" means an American Depositary Receipt that evidences an ownership interest in a specified number of American Depositary Shares, which in turn, represent an interest in a specified number of ordinary shares of BHP Billiton Limited.

1.6 "Claims Administrator" means the firm of Gilardi & Co. LLC.

1.7 "Class" means all persons and entities who purchased or otherwise acquired an interest in the ADRs between September 25, 2014 and November 30, 2015, inclusive, on any exchange or otherwise. Excluded from the Class are (i) Defendants, (ii) Related Parties (as defined in ¶1.24), (iii) Immediate Family Members of any natural persons in (ii), (iv) any person, firm, trust, corporation, officer, director, or other individual or entity in which any Defendant had a controlling interest during the Class Period, and (v) the legal representatives, heirs, successors-in-interest or assigns of any such excluded party. Also excluded from the Class are any persons and entities who are found by the Court to have timely and validly requested exclusion.

1.8 "Class Member" means a Person who falls within the definition of the Class as set forth in ¶1.7 above.

1.9 "Class Period" means the period from September 25, 2014 through November 30, 2015, inclusive.

1.10 "Court" means the United States District Court for the Southern District of New York.

1.11 "Defendants" means BHP Billiton Limited and BHP Billiton plc.

1.12 "Defendants' Counsel" means Sullivan & Cromwell LLP.

1.13 "Effective Date," or the date upon which this settlement becomes "effective," means one (1) business day after the date by which all of the events and conditions specified in ¶8.1 of the Stipulation have been met and have occurred or have been waived.

1.14 "Escrow Agent" means the law firm of Robbins Geller Rudman & Dowd LLP or its successor.

1.15 "Final" means when the last of the following with respect to the Judgment approving the Stipulation, substantially in the form of Exhibit B attached hereto, shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed; (ii) the time in which to appeal the Judgment has passed without any appeal having been taken; and (iii) if a motion to alter or amend is filed or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise in such a manner as to permit the consummation of the settlement substantially in accordance with the terms and conditions of this Stipulation. For purposes of

this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this settlement, but shall not include any appeal which concerns only the issue of (i) Plaintiffs' counsel's attorneys' fees and expenses, (ii) payments to Plaintiffs for their time and expenses, (iii) the Plan of Allocation of the Settlement Fund, as hereinafter defined, or (iv) the procedures for determining Authorized Claimants' recognized claims. Any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to one or more of (i)–(iv) shall not in any way delay or preclude a judgment from becoming Final.

1.16 "Immediate Family Members" means children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law. As used in this definition, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

1.17 "Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be rendered by the Court, substantially in the form attached hereto as Exhibit B.

1.18 "Lead Counsel" means Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego, CA 92101.

1.19 "Litigation" means the action captioned *In re BHP Billiton Limited Securities Litigation*, No. 1:16-cv-01445-NRB.

1.20 "Net Settlement Fund" means the Settlement Fund less any attorneys' fees, expenses, and interest and any award to Plaintiffs provided for herein or approved by the Court and less Notice and Administration Expenses, Taxes and Tax Expenses, and other Court-approved deductions.

1.21 "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.22 "Plaintiffs" means City of Birmingham Retirement and Relief System and City of Birmingham Firemen's and Policemen's Supplemental Pension System.

1.23 "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants. Any Plan of Allocation is not part of the Stipulation and neither Defendants nor their Related Parties shall have any responsibility or liability with respect thereto.

1.24 "Related Parties" means each of a Defendant's respective present and former parents, subsidiaries, joint ventures (including, for the avoidance of doubt, Samarco), divisions and affiliates and the respective present and former employees, members, partners, principals, officers, directors, attorneys, advisors, accountants, auditors, and insurers of each of them; and the predecessors, successors, estates, heirs, executors, trusts, trustees, administrators, agents, representatives, and assigns of each of them, in their capacity as such.

1.25 "Released Claims" means any and all claims, debts, demands, rights or causes of action or liabilities of every nature and description (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether known claims or Unknown Claims, whether arising under federal, state, local, foreign, statutory or common law, or any other law, rule or regulation, whether asserted or unasserted, fixed or contingent, accrued or un-accrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, against BHP or the Related

Parties, arising out of or relating to both: (i) the allegations, circumstances, events, transactions, facts, matters, occurrences, representations or omissions involved in, set forth, or referred to in the Litigation, and (ii) the purchase or acquisition of ADRs during the Class Period. For the avoidance of doubt, Released Claims does not include, nor is it intended to include, the claims asserted or that may be asserted in: (a) *Banco Safra S.A. – Cayman Islands Branch v. Samarco Mineração S.A.*, No. 1:16-cv-8800-RMB (S.D.N.Y.), (b) *Impiombato v. BHP Billiton Limited*, VID649/2018 (Vict. Registry – Fed. Ct. of Austl.), or (c) any other cases, consolidated into any of the foregoing actions or otherwise, to the extent that the claims asserted in the matters set forth in (a)–(c) do not arise out of or relate to the purchase or acquisition of ADRs or an interest therein during the Class Period. Released Claims does not include any claims relating to the enforcement of the settlement or any claims against any person or entity who or which submits a request for exclusion from the settlement class that is accepted by the Court.

1.26 “Released Persons” means each and all of the Defendants and their Related Parties.

1.27 “Settlement Amount” means Fifty Million Dollars ($50,000,000.00) in cash to be paid by wire transfer to the Escrow Agent pursuant to ¶3.1 of this Stipulation.

1.28 “Settlement Fund” means the Settlement Amount plus all interest and accretions thereto and which may be reduced by payments or deductions as provided herein or by Court order.

1.29 “Settling Parties” means, collectively, Defendants, Plaintiffs, and the Class.

1.30 “Tax” or “Taxes” mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

1.31 "Unknown Claims" means any Released Claims which Plaintiffs or Class Members do not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this settlement or seek exclusion from the Class. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Plaintiffs shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code §1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Plaintiffs shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the U.S., or principle of common law, which is similar, comparable or equivalent to California Civil Code §1542. Plaintiffs and Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Plaintiffs shall expressly settle and release and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without

malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiffs acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

1.32 The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

**2. Stipulation of Class Certification**

2.1 The Settling Parties stipulate to: (i) certification, for settlement purposes only, of the Class (as defined above), pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; (ii) appointment of Plaintiffs as the class representatives; and (iii) appointment of Lead Counsel as class counsel. Certification of the Class shall be binding only with respect to the settlement of the Litigation and only if the Judgment contemplated by this Stipulation becomes Final and the Effective Date occurs.

**3. The Settlement**

**a. The Settlement Amount**

3.1 In consideration of the settlement of the Released Claims against the Released Persons, BHP shall pay or cause to be paid the Settlement Amount by wire transfer in accordance with instructions to be provided by the Escrow Agent within fifteen (15) business days of the entry of an order granting preliminary settlement approval. Alternatively, if the entire Settlement Amount is not timely paid to the Escrow Agent, Lead Counsel may terminate the settlement but only if: (i) Lead Counsel has notified Defendants' Counsel in writing of Lead Counsel's intention to terminate the settlement, and (ii) the entire Settlement Amount is not transferred to the Escrow Agent within five (5) business days after Lead Counsel has provided such written notice. The Escrow Agent shall deposit the Settlement Amount plus any accrued

interest in a segregated escrow account (the "Escrow Account") maintained by the Escrow Agent.

3.2 BHP's sole monetary obligation under this Stipulation shall be for BHP to pay or cause to be paid the Settlement Amount and BHP shall not be liable for any other amounts, provided however, that BHP shall bear the costs of disseminating notice under the Class Action Fairness Act of 2005, as provided under ¶4.2 below.

**b. The Escrow Agent**

3.3 The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶3.1 hereof in U.S. Agency or Treasury Securities or other instruments backed by the Full Faith & Credit of the U.S. Government or an Agency thereof, or fully insured by the U.S. Government or an Agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund and the Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

3.4 The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation, by an order of the Court, or with the written agreement of Defendants' Counsel.

3.5 Subject to further order(s) and/or directions as may be made by the Court, or as provided in the Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation. The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

3.6 All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

3.7 Prior to the Effective Date and without further order of the Court, up to $400,000 of the Settlement Fund may be used by Lead Counsel to pay reasonable costs and expenses actually incurred in connection with providing notice to the Class, locating Class Members, soliciting claims, assisting with the submission of claims, processing Proof of Claim and Release forms, administering and distributing the Net Settlement Fund to Authorized Claimants, and paying escrow fees and costs, if any ("Notice and Administration Expenses"). After the Effective Date, Lead Counsel may pay all further reasonable Notice and Administration Expenses, regardless of amount, without further order of the Court.

3.8 It shall be Lead Counsel's sole responsibility to disseminate the Notice and Summary Notice (as defined below) to the Class in accordance with this Stipulation and as ordered by the Court. Class Members shall have no recourse as to the Released Persons with respect to any claims they may have that arise from any failure of the notice process.

**c. Taxes**

3.9 (a) The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶3.9, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the

necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b) For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the election described in ¶3.9(a) hereof) shall be consistent with this ¶3.9 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶3.9(c) hereof.

(c) All (a) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Persons or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (b) expenses and costs incurred in connection with the operation and implementation of this ¶3.9 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶3.9) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Persons and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Persons and their counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as,

and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); neither the Released Persons nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses. The parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶3.9.

**d. Termination of Settlement**

3.10 In the event that the Stipulation is not approved or the Stipulation is terminated, canceled, or fails to become effective for any reason, the Settlement Fund less Notice and Administration Expenses or Taxes or Tax Expenses paid, incurred, or due and owing in connection with the settlement provided for herein, shall be refunded (together with any tax refunds when obtained) pursuant to written instructions from Defendants' Counsel in accordance with ¶8.4 herein.

**4. Preliminary Approval Order and Settlement Hearing**

4.1 Promptly after execution of the Stipulation, Lead Counsel shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the settlement set forth in the Stipulation, and approval for the mailing of a settlement notice (the "Notice") and publication of a summary notice (the "Summary Notice"), substantially in the forms of Exhibits A-1 and A-3 attached hereto. The Notice shall include the general terms of the settlement set forth in the Stipulation, the proposed

Plan of Allocation, the general terms of the Fee and Expense Application, as defined in ¶7.1 hereof, and the date of the Settlement Hearing as defined below.

4.2 Lead Counsel shall request that after notice is given, the Court hold a hearing on a date not less than ninety (90) calendar days from the date Defendants' Counsel serves notice to the appropriate state and federal officials under the Class Action Fairness Act of 2005, 28 U.S.C. §1715(d) (the "Settlement Hearing") and approve the settlement of the Litigation as set forth herein. At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application and Plaintiffs' request for payment of time and expenses, if any.

**5. Releases**

5.1 Upon the Effective Date, as defined in ¶1.13 hereof, Plaintiffs shall, and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons, whether or not such Class Member executes and delivers the Proof of Claim and Release or shares in the Settlement Fund. Claims to enforce the terms of this Stipulation are not released.

5.2 The Proof of Claim and Release to be executed by Class Members shall release all Released Claims against the Released Persons and shall be substantially in the form contained in Exhibit A-2 attached hereto.

5.3 Upon the Effective Date, as defined in ¶1.13 hereof, all Class Members and anyone claiming through or on behalf of any of them, will be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any U.S. or non-U.S. court of law or equity, arbitration tribunal, or administrative forum, asserting the Released Claims against any of the Released Persons.

5.4 Upon the Effective Date, as defined in ¶1.13 hereof, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, each and all of the Class Members, and Plaintiffs' counsel from all claims and causes of action of every nature and description (including Unknown Claims) whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants, except for claims relating to the enforcement of the Settlement.

**6. Administration and Calculation of Claims, Final Awards and Supervision and Distribution of the Settlement Fund**

6.1 The Claims Administrator, subject to such supervision and direction of the Court as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

6.2 The Settlement Fund shall be applied as follows:

(a) to pay all the Notice and Administration Expenses;

(b) to pay the Taxes and Tax Expenses described in ¶3.9 hereof;

(c) to pay attorneys' fees and expenses of counsel for the Plaintiffs (the "Fee and Expense Award"), and to pay Plaintiffs for their time and expenses, if and to the extent allowed by the Court; and

(d) after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

6.3 After the Effective Date, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be

necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following.

6.4 Within ninety (90) days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit A-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release.

6.5 Except as otherwise ordered by the Court, all Class Members who fail to timely submit a valid Proof of Claim and Release within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Stipulation and the settlement set forth herein, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not an obligation) to accept late-submitted claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby.

6.6 The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court. If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, reallocate (which reallocation may occur on multiple occasions) such balance among Authorized Claimants who cashed their prior distribution check in an equitable and economic fashion and whose distribution amount is at least $10. Thereafter, any *de minimis* balance which

still remains in the Net Settlement Fund shall be distributed to the following charitable organization: the Investor Protection Trust.

6.7 The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith. No Person shall have any claim of any kind against the Released Persons with respect to the matters set forth in ¶¶6.1-6.9 hereof; and the Class Members, Plaintiffs, and Lead Counsel release the Released Persons from any and all liability and claims arising from or with respect to the administration, investment or distribution of the Settlement Fund.

6.8 No Person shall have any claim against Plaintiffs, Plaintiffs' counsel or the Claims Administrator, or any other Person designated by Lead Counsel based on determinations or distributions made substantially in accordance with the Stipulation and the settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

6.9 It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Judgment approving the Stipulation and the settlement set forth therein.

**7. Plaintiffs' Counsel's Attorneys' Fees and Expenses**

7.1 Lead Counsel may submit an application or applications (the "Fee and Expense Application") for: (a) an award of attorneys' fees; plus (b) expenses or charges in connection with prosecuting the Litigation; plus (c) any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court. Lead Counsel reserves the right to make additional applications for fees and expenses incurred.

7.2 The fees and expenses, as awarded by the Court, shall be paid to Lead Counsel, as ordered, immediately after the Court executes the Judgment and an order awarding such fees and expenses. Lead Counsel may thereafter allocate the attorneys' fees among other Plaintiffs' counsel, in a manner in which it in good faith believes reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Litigation.

7.3 In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or the Stipulation is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes final and not subject to review, and in the event that the Fee and Expense Award has been paid to any extent, then (a) Lead Counsel with respect to the entire Fee and Expense Award, and (b) such of Plaintiffs' counsel who have received any portion of the Fee and Expense Award shall, within ten (10) business days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund such fees and expenses previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal or modification. Each such Plaintiffs' counsel and their respective law firms receiving fees and expenses, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and

its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

7.4 Plaintiffs may submit an application for an award for their time and expenses in connection with the prosecution of the Litigation. In the event, however, that the Effective Date does not occur, or the judgment or the order approving Plaintiffs' application for an award for their time and expenses is reversed or modified, or the Stipulation is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes final and not subject to review, then Plaintiffs shall within ten (10) business days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund such amounts for time and expenses previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal or modification.

7.5 The procedure for and the allowance or disallowance by the Court of any applications by any Plaintiffs' counsel for attorneys' fees and expenses, or the expenses of the Plaintiffs, to be paid out of the Settlement Fund, are not part of the settlement set forth in the Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement set forth in the Stipulation, and any order or proceeding relating to the Fee and Expense Application, or Plaintiffs' expense application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the settlement of the Litigation set forth therein.

7.6 Any fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund. The Released Persons shall have no responsibility for any payment of attorneys' fees and/or expenses to Plaintiffs' counsel or Plaintiffs.

7.7 The Released Persons shall have no responsibility for the allocation among Plaintiffs' counsel, and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation.

**8. Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

8.1 The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a) the Settlement Amount has been deposited into the Escrow Account;

(b) the Court has entered the Preliminary Approval Order, as required by ¶4.1 hereof;

(c) the Court has entered the Judgment, or a judgment substantially in the form of Exhibit B attached hereto;

(d) Defendants have not exercised their option to terminate the Stipulation pursuant to ¶8.3 hereof; and

(e) the Judgment has become Final, as defined in ¶1.15 hereof.

8.2 Upon the Effective Date, any and all remaining interest or right of the Defendants or the Defendants' insurers in or to the Settlement Fund, if any, shall be absolutely and forever extinguished. If the conditions specified in ¶8.1 hereof are not met, then the Stipulation shall be canceled and terminated subject to ¶8.4 hereof unless, within fourteen (14) calendar days of such cancellation or termination, Lead Counsel and Defendants' Counsel mutually agree in writing to proceed with the Stipulation and/or any mutually agreed-to amendment thereof.

8.3 If Persons who would otherwise be Class Members have timely requested exclusion from the Class, Defendants shall have the option to terminate the settlement in the event that Class Members purchasing more than a certain percentage of ADRs during the Class Period exclude themselves from the Class, as set forth in a separate agreement (the "Supplemental Agreement") executed between Plaintiffs and Defendants, by and through their counsel. If the Court requires that the Supplemental Agreement be filed, the parties shall request that it be filed under seal.

8.4 Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, within ten (10) business days after written notification of such event is sent by Defendants' Counsel or Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest), less expenses which have either been disbursed pursuant to ¶¶3.7 and 3.9 hereof, or are chargeable to the Settlement Fund pursuant to ¶¶3.7 and 3.9 hereof, shall be refunded to Defendants by the Escrow Agent pursuant to written instructions from Defendants' Counsel. The Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Amount and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, pursuant to written instructions from Defendants' Counsel.

8.5 In the event that the Stipulation is not approved by the Court or the settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation as of August 5, 2018. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶1.1-1.31, 3.7-3.10, 7.3-7.4, 8.4-8.7, and 9.8 hereof, shall have no further force and effect with respect to the Settling Parties and the Related Parties; shall not be used in this Litigation; shall be null

and void and inadmissible in any other proceeding for any purpose, under the law of any jurisdiction, including the United States, Australia, United Kingdom, South Africa and Brazil; and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to any of Plaintiffs' counsel or expenses to the Plaintiffs shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination of the Stipulation.

8.6 If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither Plaintiffs nor any of their counsel shall have any obligation to repay any amounts disbursed pursuant to ¶¶3.7 or 3.9 hereof. In addition, any expenses already incurred pursuant to ¶¶3.7 or 3.9 hereof at the time of such termination or cancellation but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶¶3.10 and 8.4 hereof.

8.7 Each Defendant warrants and represents as to itself only, that it is not "insolvent" within the meaning of 11 U.S.C. §101(32) as of the time the Stipulation is executed and as of the time the payments of the Settlement Amount are actually transferred or made as reflected in the Stipulation. In the event of a final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Settlement Amount, or any portion thereof, by or on behalf of any Defendant to be a preference, voidable transfer, fraudulent transfer or similar transaction under Title 11 of the U.S. Code (Bankruptcy) or applicable state law and any portion thereof is required to be refunded and such amount is not promptly deposited in the Escrow Account by or on behalf of any other Defendant, then, at the election of Lead Counsel, as

to the Defendant as to whom such order applies, the settlement may be terminated and the releases given and the judgment entered in favor of such Defendant pursuant to the settlement shall be null and void. In such instance, the releases given and the judgments entered in favor of other Defendants shall remain in full force and effect. Alternatively, Lead Counsel may elect to terminate the entire settlement as to all Defendants and all of the releases given and the judgments entered in favor of the Defendants pursuant to the settlement shall be null and void and Plaintiffs may proceed as if the settlement were never entered into.

**9. Miscellaneous Provisions**

9.1 The Settling Parties: (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

9.2 The Settling Parties intend this settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Plaintiffs and any Class Members against the Released Persons with respect to the Released Claims. Accordingly, Plaintiffs and their counsel and Defendants and their counsel agree not to assert in any forum that this Litigation was brought by Plaintiffs or defended by Defendants in bad faith or without a reasonable basis. The settlement compromises claims which are contested and shall not be deemed an admission by any Settling Party or Related Party as to the merits of any claim or defense. The Final Judgment will contain a finding that, during the course of the Litigation, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11. The Settling Parties agree that the Settlement Amount and the other terms of the settlement were negotiated at arm's length and in good faith by the Settling Parties, including through a mediation process supervised and conducted by Judge Phillips, and reflect a settlement that was

reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum regarding the Litigation.

9.3 Neither this Stipulation nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Defendants or their respective Related Parties, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants or their respective Related Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal, under the law of any jurisdiction, including the United States, Australia, United Kingdom, South Africa and Brazil. The Defendants and/or their respective Related Parties may file this Stipulation and/or the Judgment from this action in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.4 Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs, the parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed, and proceedings in connection with the Stipulation confidential.

9.5 All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

9.6 All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.7 The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.8 The Stipulation and the Exhibits attached hereto and the Supplemental Agreement constitute the entire agreement among the parties hereto and no representations, warranties or inducements have been made to any party concerning the Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. Except as otherwise provided herein, each party shall bear its own costs.

9.9 Lead Counsel, on behalf of the Class, is expressly authorized by the Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to the Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Class which it deems appropriate.

9.10 Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

9.11 The Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court. Signatures sent by facsimile or on pdf via e-mail shall be deemed originals.

9.12 The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

9.13 The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the

purpose of entering orders providing for awards of attorneys' fees and litigation expenses to Lead Counsel and enforcing the terms of this Stipulation, including the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the Net Settlement Fund to Class Members.

9.14 Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in the Court.

9.15 The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

9.16 No opinion or advice concerning the tax consequences of the proposed settlement to individual Class Members is being given or will be given by the parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation. Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

9.17 Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the settlement, as embodied in this Stipulation, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the settlement.

9.18 If any party is required to give notice to another party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or email transmission, with confirmation of receipt. Notice shall be provided to any

such party at the email address or physical address of their respective counsel as set forth on the signature pages of this Stipulation.

9.19 Pending approval of the Court of the Stipulation and its Exhibits, all proceedings in this Litigation shall be stayed and all Class Members shall be barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any of the Released Claims against any of the Released Persons.

9.20 This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice-of-law principles, except to the extent that federal law requires that federal law govern.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated September 14, 2018.

ROBBINS GELLER RUDMAN
& DOWD LLP
SAMUEL H. RUDMAN
JOSEPH RUSSELLO
MICHAEL G. CAPECI

SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
jrussello@rgrdlaw.com
mcapeci@rgrdlaw.com

Lead Counsel for Plaintiffs

SULLIVAN & CROMWELL LLP
BRENDAN P. CULLEN (Admitted *pro hac vice*)

BRENDAN P. CULLEN

1870 Embarcadero Road
Palo Alto, CA 94303
Telephone: 650/461-5600
650/461-5700 (fax)
cullenb@sullcrom.com

THOMAS W. WALSH
KATE L. DONIGER
LOIS T. SALDANA
125 Broad Street
New York, NY 10004
Telephone: 212/558-4000
212/558-3588 (fax)
walsht@sullcrom.com
donigerk@sullcrom.com
saldanal@sullcrom.com

Counsel for Defendants BHP Billiton Ltd. and
BHP Billiton plc

## CERTIFICATE OF SERVICE

I, Samuel H. Rudman, hereby certify that on September 19, 2018, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice. I further certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 19, 2018, at Melville, New York.

s/ *Samuel H. Rudman*
SAMUEL H. RUDMAN