# EXHIBIT A-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re BHP BILLITON LIMITED SECURITIES LITIGATION | : : : | Civil Action No. 1:16-cv-01445-NRB |
| | : | CLASS ACTION |
| This Document Relates To: | : : : | NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT |
| ALL ACTIONS. | : : | |
| | x | EXHIBIT A-1 |

**TO: ALL PERSONS AND ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED AMERICAN DEPOSITORY RECEIPTS ("ADRs") OF BHP BILLITON LIMITED AND/OR BHP BILLITON PLC (TOGETHER, "BHP" OR "DEFENDANTS") DURING THE PERIOD FROM SEPTEMBER 25, 2014 THROUGH NOVEMBER 30, 2015, INCLUSIVE (THE "CLASS")**

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS MAY BE AFFECTED BY PROCEEDINGS IN THIS LITIGATION WHETHER OR NOT YOU ACT. PLEASE NOTE THAT IF YOU ARE A CLASS MEMBER, YOU MAY BE ENTITLED TO SHARE IN THE PROCEEDS OF THE SETTLEMENT DESCRIBED IN THIS NOTICE. TO CLAIM YOUR SHARE OF THIS FUND, YOU MUST SUBMIT A VALID PROOF OF CLAIM AND RELEASE FORM ("PROOF OF CLAIM") **POSTMARKED OR SUBMITTED ONLINE ON OR BEFORE _____.** IF YOU HAVE QUESTIONS ABOUT THIS NOTICE, THE PROPOSED SETTLEMENT, OR YOUR ELIGIBILITY TO PARTICIPATE IN THE SETTLEMENT, PLEASE DO NOT CONTACT BHP OR ITS COUNSEL. ALL QUESTIONS SHOULD BE DIRECTED TO LEAD COUNSEL (*SEE* SECTION V BELOW).

This Notice of Pendency of Class Action and Proposed Settlement ("Notice") has been sent to you pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York (the "Court"). The purpose of this Notice is to inform you of the pendency and proposed settlement of the case entitled *In re BHP Billiton Limited Securities Litigation*, Civil Action No. 1:16-cv-01445-NRB (the "Litigation") and of the hearing (the "Settlement Hearing") to be held by the Court to consider the fairness, reasonableness, and adequacy of the settlement as set forth in the Stipulation of

Settlement between Plaintiffs and Defendants, dated as of September 14, 2018 (the "Stipulation"), on file with the Court.[1]

This Notice is not intended to be, and should not be construed as, an expression of any opinion by the Court with respect to (i) the truth of the allegations in this Litigation or any other litigation as to any of the Defendants or their Related Parties; (ii) the merits of the claims or defenses asserted by or against Defendants or their Related Parties; or (iii) that the consideration to be given under the settlement represents the amount which could be or would have been recovered after trial.  This Notice is solely to advise you of the pendency and proposed settlement of the Litigation and of your rights in connection therewith.

## I.      STATEMENT OF PLAINTIFFS' RECOVERY

The proposed settlement will create a cash fund in the principal amount of Fifty Million Dollars ($50,000,000.00) (the "Settlement Amount"), plus any interest that may accrue thereon less certain deductions (the "Settlement Fund").

This is a securities class action brought against BHP alleging that BHP made materially false and misleading statements to investors during the period from September 25, 2014 through November 30, 2015, inclusive (the "Class Period"), in violation of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder. An indirect subsidiary of BHP, BHP Billiton Brasil Ltda. ("BHP Brasil"), and Vale S.A. ("Vale") each are 50% shareholders of Samarco Mineração, S.A. ("Samarco"), an iron-ore mining company located in Brazil.  On November 5, 2015, the Fundão tailings dam, which is part of Samarco's Germano iron ore mining complex in Minas Gerais, Brazil, failed, releasing

---

[1]      All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation, which is available at www.bhpsecuritieslitigation.com.

mining waste (called tailings) that caused property damage and resulted in the loss of life. Plaintiffs allege that during the Class Period, Defendants made false and misleading statements regarding BHP's focus on safety and its risk management and monitoring.   BHP denies Plaintiffs' allegations.   At the time of the proposed settlement, Plaintiffs had completed substantial fact discovery, had completed class certification discovery and filed their motion for class certification, had engaged mining and other experts, and were preparing the case for trial. Defendants at all times denied that they had made any false statements or omissions, and continue to maintain that their statements complied with all applicable laws and regulations in the United States and elsewhere.

The Settlement Fund, subject to deduction for, among other things, costs of class notice and administration and certain taxes and tax-related expenses, and for attorneys' fees and expenses as approved by the Court and for certain expenses of the Plaintiffs, will be available for distribution to Class Members.   Your recovery from this fund will depend on a number of variables, including the number of shares of ADRs you purchased or acquired during the Class Period, the timing of your purchases and any sales, and how many other Class Members make claims.   While the recovery for any Class Member is dependent on numerous factors, including the timing and price of a Class Member's transactions in ADRs, if all eligible Class Members make claims, it is estimated that the average distribution per eligible ADR of BHP Billiton Limited will be approximately $0.37, and per eligible ADR of BHP Billiton plc will be approximately $0.38, before deduction of Court-approved fees and expenses.   Historically, actual claims are less than 100%, resulting in higher per-ADR distributions on average.

## II.   STATEMENT OF POTENTIAL OUTCOME

In addition to disagreeing on whether or not Defendants made any false or misleading statements, Plaintiffs and Defendants do not agree on the average amount of damages per ADR,

if any, that would have been recoverable if Plaintiffs were to have prevailed on each claim alleged.

At trial, Plaintiffs would have presented expert testimony that certain disclosures regarding the failure of the Fundão iron-ore tailings dam in Brazil, which allegedly corrected the alleged false and misleading statements regarding BHP's focus on safety and risk management and monitoring, caused the trading price of the ADRs to decline on November 6 and 25, 2015. In sum, if Plaintiffs won and the jury accepted all of their expert's testimony, Class Members could have recovered between $0 and $255 million.

At trial, Defendants would have taken the position, also supported by their expert testimony, that none of the declines in the trading price of the ADRs could be attributed to any corrective disclosure related to the alleged fraud, and that, therefore, Class Members had suffered no damages at all.  Defendants would have pointed to disclosures during the Class Period that revealed the inherent risks associated with tailings dams (such as Samarco's Fundão dam that failed during the Class Period) and specified that the allegedly false and misleading statements and omissions did not, in fact, pertain to Samarco's Fundão dam or operations, because BHP did not operate Samarco.  Defendants would also have asserted that there was no evidence that any of the alleged false and misleading statements were false, and that the statements were in fact true statements. Defendants would have argued that adverse news regarding the impacts of the Fundão dam failure, none of which revealed any indicia of fraud, was the substantial cause of the decline in the price of the ADRs – none of which would give rise to a claim for damages.

In short, the parties disagree on the merits of this case, including whether or not: (a) false and misleading statements or omissions were made; and (b) damages were suffered and are recoverable.  Thus, although Plaintiffs continue to maintain that they brought meritorious claims,

- 4 -

Defendants deny that they are liable in any respect or that Plaintiffs or the Class suffered any injury.  Accordingly, recovery of any amount at trial was far from certain.

## III.    REASONS FOR SETTLEMENT

Plaintiffs believe that the proposed settlement is a very good recovery and is in the best interests of the Class.  Because of the risks associated with continuing to litigate and proceeding to trial, there was a danger that the Class would not have prevailed or, if they had, how much, if any, damages could be recoverable.  The proposed settlement provides a certain benefit to Class Members and will avoid the years of delay that would likely occur in the event of a contested trial and appeals.

In light of these risks, the amount of the settlement and the immediacy of recovery to the Class, Plaintiffs and Lead Counsel believe that the proposed settlement is fair, reasonable, and adequate, and in the best interests of the Class.  Plaintiffs and Lead Counsel believe that the settlement provides a substantial benefit to the Class, namely $50,000,000 in cash (less the deductions described in this Notice), as compared to the risk that the claims in the Litigation would produce a smaller, or no, recovery after a class certification motion, summary judgment motions, trial, and appeals, possibly years in the future.

Defendants have denied all claims asserted against them in the Litigation and deny having engaged in any wrongdoing or violation of law of any kind whatsoever.  Defendants have agreed to the settlement solely to eliminate the burden and expense of continued litigation. Accordingly, the settlement may not be construed as an admission of any wrongdoing by Defendants or their Related Parties (as defined herein).

## IV.    STATEMENT OF ATTORNEYS' FEES AND EXPENSES SOUGHT

Lead Counsel has not received any payment for its services in conducting this Litigation on behalf of the Plaintiffs and the Class Members, nor has it been paid for its litigation expenses.

If the settlement is approved by the Court, Lead Counsel will apply to the Court for an award of attorneys' fees and expenses. Lead Counsel has advised that its application for attorneys' fees will not exceed 30% of the Settlement Amount and its application for expenses will not exceed $500,000, plus interest thereon, to be paid from the Settlement Fund. If the amounts requested are approved by the Court, the average cost per ADR, based on a 100% claim rate, will be $0.11 for the BHP Billiton Limited ADRs and $0.12 for the BHP Billiton plc ADRs. In addition, the Plaintiffs may each seek the Court's approval for up to $25,000 in time and expenses incurred in representing the Class.

## V.     IDENTIFICATION OF ATTORNEYS' REPRESENTATIVES

For further information regarding this settlement, you may contact a representative of Lead Counsel: Joseph Russello, Robbins Geller Rudman & Dowd LLP, 58 South Service Road, Suite 200, Melville, NY 11747, Telephone: 631/367-7100. Additional information, including copies of pleadings and documents filed in the case, is also available on the settlement website at www.bhpsecuritieslitigation.com.

## VI.    NOTICE OF HEARING ON PROPOSED SETTLEMENT

A hearing (the "Settlement Hearing") will be held on _____, at _____.m., before the Honorable Naomi Reice Buchwald, United States District Judge, at the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Courtroom 21A, New York, NY 10007-1312. The purpose of the Settlement Hearing will be to determine: (1) whether the proposed settlement, as set forth in the Stipulation, consisting of Fifty Million Dollars ($50,000,000.00) in cash, should be approved as fair, reasonable, and adequate to the Class Members; (2) whether a Final Judgment and Order of Dismissal with Prejudice should be entered by the Court dismissing the Litigation with prejudice against Defendants, and whether the Releases specified and described in the Stipulation (and in

this Notice) should be granted; (3) whether the proposed plan to distribute the settlement proceeds (the "Plan of Allocation") is fair, reasonable, and adequate; and (4) whether the application by Lead Counsel for an award of attorneys' fees and expenses and the expenses of Plaintiffs should be approved, and, if so, in what amounts.

The Court may adjourn the Settlement Hearing from time to time and without further notice to the Class.  The Court may also approve the settlement, with such modifications as may be agreed to by the Settling Parties, if appropriate, without further notice to the Class.

## VII.   DEFINITIONS USED IN THIS NOTICE

As used in this Notice, the following terms have the meanings specified below.  Any capitalized terms not specifically defined in this Notice shall have the meanings set forth in the Stipulation.   In the event of any inconsistency between any definition set forth below or elsewhere in this Notice and any definition set forth in the Stipulation, the definition set forth in the Stipulation shall control.

1.      "ADR" means a BHP ADR or a BBL ADR.

2.      "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

3.      "BBL ADR" means an American Depositary Receipt that evidences an ownership interest in a specified number of American Depositary Shares, which in turn, represent an interest in a specified number of ordinary shares of BHP Billiton plc.

4.      "BHP" means BHP Billiton Limited and BHP Billiton plc.

5.      "BHP ADR" means an American Depositary Receipt that evidences an ownership interest in a specified number of American Depositary Shares, which in turn, represent an interest in a specified number of ordinary shares of BHP Billiton Limited.

6.      "Claims Administrator" means the firm of Gilardi & Co. LLC.

- 7 -

7.      "Class" means all persons and entities who purchased or otherwise acquired an interest in the ADRs between September 25, 2014 and November 30, 2015, inclusive, on any exchange or otherwise.   Excluded from the Class are (i) Defendants, (ii) Related Parties (as defined in ¶23 below), (iii) Immediate Family Members of any natural persons in (ii), (iv) any person, firm, trust, corporation, officer, director, or other individual or entity in which any Defendant had a controlling interest during the Class Period, and (v) the legal representatives, heirs, successors-in-interest or assigns of any such excluded party.   Also excluded from the Class are any persons and entities who are found by the Court to have timely and validly requested exclusion.

8.      "Class Member" means a Person who falls within the definition of the Class as set forth in ¶7 above.

9.      "Class Period" means the period from September 25, 2014 through November 30, 2015, inclusive.

10.      "Court" means the United States District Court for the Southern District of New York.

11.      "Defendants" means BHP Billiton Limited and BHP Billiton plc.

12.      "Defendants' Counsel" means Sullivan & Cromwell LLP.

13.      "Effective Date," or the date upon which this settlement becomes "effective," means one (1) business day after the date by which all of the events and conditions specified in ¶8.1 of the Stipulation have been met and have occurred or have been waived.

14.      "Escrow Agent" means the law firm of Robbins Geller Rudman & Dowd LLP or its successor.

15.    "Final" means when the last of the following with respect to the Judgment approving the Stipulation, substantially in the form of Exhibit B attached to the Stipulation, shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed; (ii) the time in which to appeal the Judgment has passed without any appeal having been taken; and (iii) if a motion to alter or amend is filed or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise in such a manner as to permit the consummation of the settlement substantially in accordance with the terms and conditions of the Stipulation.  For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this settlement, but shall not include any appeal which concerns only the issue of (i) Lead Counsel's attorneys' fees and expenses, (ii) payments to Plaintiffs for their time and expenses, (iii) the Plan of Allocation of the Settlement Fund, as hereinafter defined, or (iv) the procedures for determining Authorized Claimants' recognized claims.  Any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to one or more of (i)–(iv) shall not in any way delay or preclude a judgment from becoming Final.

16.    "Immediate Family Members" means children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law.  As used in this definition, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

17.     "Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be rendered by the Court, substantially in the form attached as Exhibit B to the Stipulation.

18.     "Lead Counsel" means Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego, CA 92101.

19.     "Net Settlement Fund" means the Settlement Fund less any attorneys' fees, expenses, and interest and any award to Plaintiffs provided for herein or approved by the Court and less Notice and Administration Expenses, Taxes and Tax Expenses, and other Court-approved deductions.

20.     "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

21.     "Plaintiffs" means City of Birmingham Retirement and Relief System and City of Birmingham Firemen's and Policemen's Supplemental Pension System.

22.     "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.  Any Plan of Allocation is not part of the Stipulation and neither Defendants nor their Related Parties shall have any responsibility or liability with respect thereto.

23.     "Related Parties" means each of a Defendant's respective present and former parents, subsidiaries, joint ventures (including, for the avoidance of doubt, Samarco), divisions and affiliates and the respective present and former employees, members, partners, principals, officers, directors, attorneys, advisors, accountants, auditors, and insurers of each of them; and

the predecessors, successors, estates, heirs, executors, trusts, trustees, administrators, agents, representatives, and assigns of each of them, in their capacity as such.

24.     "Released Claims" means any and all claims, debts, demands, rights or causes of action or liabilities of every nature and description (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether known claims or Unknown Claims, whether arising under federal, state, local, foreign, statutory or common law, or any other law, rule or regulation, whether asserted or unasserted, fixed or contingent, accrued or un-accrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, against BHP or the Related Parties, arising out of or relating to both: (i) the allegations, circumstances, events, transactions, facts, matters, occurrences, representations or omissions involved in, set forth, or referred to in the Litigation, and (ii) the purchase or acquisition of ADRs during the Class Period. For the avoidance of doubt, Released Claims does not include, nor is it intended to include, the claims asserted or that may be asserted in: (a) *Banco Safra S.A. – Cayman Islands Branch v. Samarco Mineração S.A.*, No. 1:16-cv-8800-RMB (S.D.N.Y.), (b) *Impiombato v. BHP Billiton Limited*, VID649/2018 (Vict. Registry – Fed. Ct. of Austl.), or (c) any other cases, consolidated into any of the foregoing actions or otherwise, to the extent that the claims asserted in the matters set forth in (a)–(c) do not arise out of or relate to the purchase or acquisition of ADRs or an interest therein during the Class Period. Released Claims does not include any claims relating to the enforcement of the settlement or any claims against any person or entity who or which submits a request for exclusion from the settlement class that is accepted by the Court.

25.     "Released Persons" means each and all of the Defendants and their Related Parties.

- 11 -

26.     "Settling Parties" means, collectively, Defendants, Plaintiffs, and the Class.

27.     "Tax" or "Taxes" means any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

28.     "Unknown Claims" means any Released Claims which Plaintiffs or Class Members do not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this settlement or seek exclusion from the Class.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Plaintiffs shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code §1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Plaintiffs shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the U.S., or principle of common law, which is similar, comparable or equivalent to California Civil Code §1542.  Plaintiffs and Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Plaintiffs shall expressly settle and release and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever

settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  Plaintiffs acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

## VIII.   THE LITIGATION

On February 24, 2016, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") filed a Complaint for Violations of the Federal Securities Laws on behalf of plaintiff Jackson County Employees' Retirement System and a putative class of all purchasers of Defendants' ADRs between September 25, 2014 and November 30, 2015, inclusive, alleging claims under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 against: (i) BHP; (ii) Jac Nasser ("Nasser"), Chair of BHP's Board of Directors; (iii) Andrew Mackenzie ("Mackenzie"), BHP's Chief Executive Officer; (iv) Peter Beaven ("Beaven"), BHP's Chief Financial Officer ("CFO"); and (v) Graham Kerr ("Kerr"), BHP's CFO from November 2011 until October 1, 2014, arising out of allegedly false and misleading statements and omissions pertaining to BHP's focus on safety and its risk management and monitoring protocols.

Subsequently, on March 15, 2016, Pomerantz LLP ("Pomerantz") filed a Complaint for Violations of the Federal Securities Laws on behalf of plaintiff Gary Katz, alleging similar claims against the defendants named in the February 24, 2016 complaint.  On April 25, 2016, the plaintiffs City of Birmingham Retirement and Relief System and City of Birmingham Firemen's and Policemen's Supplemental Pension System (the "Funds") and others separately moved to

consolidate the pending cases and for the appointment of lead plaintiffs and lead counsel under the Private Securities Litigation Reform Act of 1995, and, thereafter, all but one of the competing lead plaintiff movants withdrew their applications and/or filed non-oppositions to the Funds' motion.  On June 14, 2016, the Court entered an Order granting the Funds' motion and appointing them as Lead Plaintiffs and their counsel, Robbins Geller, as Lead Counsel.

On August 15, 2016, the Funds, together with plaintiff James A. Crumpley, a purchaser of the ADRs of BHP Billiton plc represented by Pomerantz, filed the Consolidated Amended Complaint for Violations of the Federal Securities Laws ("CAC"), comprised of 105 pages and 355 numbered paragraphs.  The CAC alleged that BHP and Messrs. Nasser, Mackenzie, Beaven and Kerr misrepresented and/or omitted material information concerning: (i) BHP's commitment to health and safety; (ii) the adequacy of BHP's safety, risk management, and monitoring protocols; (iii) BHP's compliance with local laws and regulations; (iv) Samarco's production capacity and projected performance; (v) the toxicity of tailings-based mudflows resulting from the failure of the Fundão dam; (vi) BHP's progressive dividend policy; (vii) uncertainties and risks relating to Samarco; and (viii) the completeness of BHP's Forms 20-F for fiscal years 2014 and 2015.

On October 14, 2016, the named defendants jointly filed a motion to dismiss the CAC pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, variously asserting that: (i) the CAC alleged non-actionable claims for mismanagement, not fraud; (ii) the CAC did not plead any actionable misstatements or omissions; (iii) the CAC did not plead scienter; and (iv) the Section 20(a) claim failed in the absence of a violation of Section 10(b).  On July 26, 2017, after the parties had completed briefing the motion to dismiss, the Court heard oral argument on the motion.

On April 5, 2017, Plaintiffs submitted a letter to the Court concerning Judge Woods' decision to sustain certain claims in a putative class action against Vale, entitled *In re Vale S.A. Securities Litigation*, No. 1:15-cv-09539-GHW (S.D.N.Y.) ("Vale Litigation"), to which BHP responded on April 21, 2017.  On August 1, 2017, the Court requested the parties' views on statements alleged in the Consolidated Amended Class Action Complaint filed on April 29, 2016 in the Vale Litigation, in which Vale allegedly referenced an analysis commissioned by Samarco that confirmed the tailings were not toxic or threatening to the environment.  On August 9, 2017, the parties each submitted a letter to the Court expressing their views on the issue.

On August 28, 2017, the Court issued a Memorandum and Order, filed August 29, 2017, granting in part and denying in part the named defendants' motion to dismiss the CAC, holding that the CAC adequately alleged corporate scienter and determining that the CAC "sufficiently alleged that BHP made [ten] actionable misstatements regarding its commitment to safety and its risk management controls, and omissions of facts needed to make these statements not misleading."  The Court further held that the CAC had failed to allege scienter as to defendants Nasser, Mackenzie, Beaven and Kerr, and dismissed 32 of the CAC's alleged misstatements.

On October 12, 2017, BHP and the Plaintiffs submitted for the Court's consideration the Joint Rule 26(f) Report, in which they each set forth their respective views, after discussions and negotiations, on the scope of discovery, including the discovery available from non-parties.  On October 16, 2017, the Court issued an order approving the non-disputed portions of the Joint Rule 26(f) Report and resolving the parties' disputes as to the scope of discovery.

On October 13, 2017, BHP filed its Answer to the CAC, which consisted of 355 numbered paragraphs, asserted 29 affirmative defenses, and spanned 65 pages.  On October 17, 2017, Plaintiffs served their First Set of Requests for the Production of Documents, comprised of

55 individual requests, to which BHP responded and objected in writing on November 29, 2017. On October 25, 2017, BHP served its First Request for Production of Documents, comprised of 29 individual requests, to which Plaintiffs responded and objected in writing on December 4, 2017.

The parties exchanged Rule 26(a) Initial Disclosure Statements on October 20, 2017. They also negotiated a Stipulation and [Proposed] Order of Confidentiality, which the Court so ordered on October 30, 2017, and negotiated and executed a Form of Production Agreement concerning the form of production of hard copy and electronically stored information for discovery purposes.

Plaintiffs thereafter served subpoenas for documents and testimony on Marcus Philip Randolph ("Randolph") (BHP's Chief Executive of Ferrous & Coal, a member of BHP's Group Management Committee ("GMC"), and Chairman of Samarco's Board of Directors before the Class Period) and Timothy Cutt ("Cutt") (BHP's President of Petroleum and a GMC member during the Class Period), and reviewed their and BHP's written responses and objections, served on November 14, 16, 22 and 30, 2017.  Plaintiffs also engaged in discussions with counsel for Randolph and Cutt regarding the subpoenas, ultimately securing acceptable representations from Cutt concerning his lack of involvement in Samarco.

On March 8, 2018, Plaintiffs filed a motion in New Mexico federal district court, where Randolph resides, to compel the production of documents in contemplation of a deposition (to be scheduled at a later date), and thereafter engaged in further negotiations with his counsel on the scope of his production obligations.  Randolph ultimately produced certain documents responsive to the subpoena.

Additionally, on March 16, 2018, BHP and the Plaintiffs reached an agreement concerning the scope of discovery, including the identities of document custodians, the relevant time period for discovery, and production from non-party Samarco. These issues were the subject of negotiations from November 2017 until March 2018. Those negotiations and the negotiations with Randolph were complicated by the fact that Randolph and other then-current and former Samarco board members had been criminally charged in Brazil, which gave rise to concerns associated with the privilege against self-incrimination under Brazilian and/or U.S. law.

In April 2018, Plaintiffs served a subpoena for documents and testimony on Nasser, to which he responded and objected in writing on May 4, 2018 and thereafter engaged in negotiations, through counsel, concerning the scope of the subpoena in contemplation of a deposition, to be scheduled at a later date. In April 2018, Plaintiffs also served a document subpoena on Gibson Dunn & Crutcher LLP, Vale's counsel, seeking materials related to the Vale Litigation, and later secured information from Vale.

For their part, Plaintiffs engaged in negotiations with defense counsel concerning the scope of Plaintiffs' production obligations and ultimately produced tens of thousands of pages of responsive material concerning the allegations of the CAC, facts relating to BHP and Samarco, and Plaintiffs' transactions in BHP securities. Additionally, in May 2018, Plaintiffs each produced a member of their respective Boards of Managers to testify in connection with class certification proceedings: (i) Catina Williams for City of Birmingham Retirement and Relief System; and (ii) Dexter Cunningham for City of Birmingham Firemen's and Policemen's Supplemental Pension System.

Additionally, Plaintiffs engaged Dr. Steven P. Feinstein as their market efficiency expert. In connection with class certification discovery: (i) Plaintiffs served Dr. Feinstein's opening

report on March 14, 2018; (ii) Lead Counsel represented Dr. Feinstein at his April 24, 2018 deposition; (iii) Lead Counsel analyzed the competing expert reports of Dr. Rene M. Stulz (May 11, 2018 and amended on May 18, 2018); (iv) Lead Counsel conducted Dr. Stulz's deposition on June 21, 2018; and (v) Plaintiffs served Dr. Feinstein's rebuttal expert report on July 5, 2018.  On June 29, 2018, Plaintiffs filed motions for class certification and to exclude the report and opinions of Dr. Stulz.  By that time, Plaintiffs had assembled a team of ten English- and/or Portuguese-language attorneys to review, code and analyze the documents obtained in discovery and from other sources.

In June 2018, the parties agreed to engage in mediation and retained the services of the Honorable Layn R. Phillips, a retired judge of the U.S. District of Oklahoma and a nationally recognized mediator of complex cases and class actions.  Following the exchange of mediation statements in July 2018 and a conference between the parties and their loss-causation and damages consultants, the parties attended a full-day mediation on August 1, 2018 in New York City.  The parties were unable to successfully resolve this matter at that time.

Subsequently, the parties and the mediator engaged in further discussions, and on August 6, 2018, the parties reached an agreement-in-principle to resolve the Litigation, which agreement they memorialized in a term sheet the same day (subject to the negotiation and further memorialization of mutually acceptable terms in the Stipulation).  Also on August 6, 2018, the parties advised the Court of their agreement-in-principle to resolve this Litigation.  Thereafter, the parties negotiated the terms of a Stipulation of Settlement, which sets forth the terms and conditions of the settlement.  The Stipulation, dated September 14, 2018, can be viewed at www.bhpsecuritieslitigation.com.

On \_\_\_\_, 2018, the Court preliminarily approved the settlement, authorized this Notice to be disseminated to potential Class Members, and scheduled the Settlement Hearing to consider whether to grant final approval to the Settlement.

## IX.    TERMS OF THE PROPOSED SETTLEMENT

A settlement has been reached in the Litigation between Plaintiffs and Defendants, the terms and conditions of which are set forth in the Stipulation and the Exhibits thereto.  A portion of the settlement proceeds will be used to pay attorneys' fees and expenses to Lead Counsel and Plaintiffs' time and expenses, to pay for this Notice and the processing of claims submitted by Class Members, and to pay Taxes and Tax Expenses.  The balance of the Settlement Fund (the "Net Settlement Fund") will be distributed, in accordance with the Plan of Allocation described below, to Class Members who submit valid and timely Proofs of Claim.

The effectiveness of the settlement is subject to a number of conditions and reference to the Stipulation is made for further particulars regarding these conditions.

## X.    REQUESTING EXCLUSION FROM THE CLASS

Each Class Member will be bound by all determinations and judgments in this lawsuit, whether favorable or unfavorable, unless such person or entity mails or delivers a written request for exclusion from the Class, addressed to:

> *BHP Securities Litigation*
> EXCLUSIONS
> c/o Gilardi & Co. LLC
> 3301 Kerner Blvd.
> San Rafael, CA  94901

The request for exclusion must: (1) include your name, address, and telephone number; (2) state that you "request exclusion from the Class"; (3) state the date(s), price(s), and amount(s) of ADRs that you purchased, sold, or otherwise acquired or disposed of during the period September 25, 2014 to November 30, 2015, inclusive; and (4) be signed by you or your

representative. YOUR EXCLUSION REQUEST MUST BE POSTMARKED NO LATER THAN _____. A request for exclusion shall not be valid and effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

No further opportunity to request exclusion will be given in this Litigation. If you choose to be excluded from the Class: (a) you are not entitled to share in the proceeds of the settlement described herein; (b) you are not bound by any judgment entered in the Litigation; and (c) you are not precluded by the settlement from otherwise prosecuting an individual claim against Defendants, to the extent any such claim exists, based on the matters complained of in the Litigation.

**If you are requesting exclusion because you want to bring your own lawsuit based on the matters alleged in the Litigation, you may want to consult an attorney and discuss whether any individual claim that you may wish to pursue would be time-barred by the applicable statutes of limitations or repose.**

BHP has the right to terminate the settlement if valid requests for exclusion are received from persons and entities entitled to be Class Members in an amount that exceeds an amount agreed to by Plaintiffs and BHP.

## XI.  THE RIGHTS OF CLASS MEMBERS WHO WISH TO PARTICIPATE IN THE SETTLEMENT OR WHO TAKE NO ACTION

If you are a Class Member and have not elected to request exclusion, you have the following options:

1.      You may submit a Proof of Claim as described below. If you choose this option, you will share in the proceeds of the proposed settlement if your claim is timely, valid, and entitled to a distribution under the Plan of Allocation described below and if the proposed

settlement is finally approved by the Court; and you will be bound by the Judgment and release to be entered by the Court as described below.

2.      You may do nothing at all.  If you choose this option, you will not share in the proceeds of the settlement, but you will be bound by any judgment entered by the Court, and you will have fully released all of the Released Claims against the Released Persons.

3.      You may object to the settlement, the Plan of Allocation, and/or the application for attorneys' fees and expenses in the manner described in Section XVII below.

4.      If you are a Class Member, you may, but are not required to, enter an appearance through counsel of your own choosing and at your own expense, provided that such counsel must file an appearance on your behalf on or before _____, and must serve copies of such appearance on the attorneys listed in Section XVII below.  If you do not enter an appearance through counsel of your own choosing, you will be represented by Lead Counsel:  Robbins Geller Rudman & Dowd LLP, Joseph Russello, 58 South Service Road, Suite 200, Melville, NY 11747.

## XII.   PLAN OF ALLOCATION

The Net Settlement Fund will be distributed to Class Members who are entitled to a distribution from the Net Settlement Fund and who submit a valid and timely Proof of Claim under the Plan of Allocation described below.

In the unlikely event there are sufficient funds in the Net Settlement Fund, each Authorized Claimant will receive an amount equal to the Authorized Claimant's claim, as defined below.  If, however, and as is more likely, the amount in the Net Settlement Fund is not sufficient to permit payment of the total claim of each Authorized Claimant, then each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants.

- 21 -

The calculation of claims below is not an estimate of the amount you will receive.  It is a formula for allocating the Net Settlement Fund among all Authorized Claimants.

A claim will be calculated as follows:

1.      Based on the formulas stated below, a "Recognized Loss Amount" will be calculated for each purchase or acquisition of the ADRs during the Class Period that is listed on the Proof of Claim form and for which adequate documentation is provided.  If a Recognized Loss Amount calculates to a negative number or zero under the formula below, that Recognized Loss Amount will be zero.

2.      Sixty-four percent (64%) of the Net Settlement Fund shall be allocated to ADRs of BHP Billiton Limited purchased or otherwise acquired during any of the periods shown below in Table-1, and claims for such shares shall be calculated as follows:

(a)      Sold within the same period, the Recognized Loss Amount per ADR is zero.

(b)      Sold in a subsequent period, the Recognized Loss Amount per ADR is the lesser of: (i) the decline in inflation per ADR shown in Table-1; or (ii) the purchase price per ADR less the sales price per ADR.

(c)      Retained at the end of November 30, 2015 and sold before the close of trading on February 26, 2016, the claim per ADR shall be the lesser of: (i) the decline in inflation per ADR shown in Table-1; and (ii) the difference between the purchase price and the average closing price up to the date of sale as set forth in Table-3 below.

(d)     Held as of the close of trading on February 26, 2016, or sold thereafter, the claim per ADR shall be the lesser of: (i) the decline in inflation per ADR shown in Table-1; and (ii) the difference between the purchase price and $23.88 per ADR.[2]

3.     Thirty-six percent (36%) of the Net Settlement Fund shall be allocated to ADRs of BHP Billiton plc purchased or otherwise acquired during any of the periods shown below in Table-2, and claims for such shares shall be calculated as follows:

(a)     Sold within the same period, the Recognized Loss Amount per ADR is zero.

(b)     Sold in a subsequent period, the Recognized Loss Amount per ADR is the lesser of: (i) the decline in inflation per ADR shown in Table-2; or (ii) the purchase price per ADR less the sales price per ADR.

(c)     Retained at the end of November 30, 2015 and sold before the close of trading on February 26, 2016, the claim per ADR shall be the lesser of: (i) the decline in inflation per ADR shown in Table-2; and (ii) the difference between the purchase price and the average closing price up to the date of sale as set forth in Table-4 below.

(d)     Held as of the close of trading on February 26, 2016, or sold thereafter, the claim per ADR shall be the lesser of: (i) the decline in inflation per ADR shown in Table-2; and (ii) the difference between the purchase price and $21.34 per ADR.[3]

---

[2]     Under Section 21(D)(e)(1) of the Exchange Act, "in any private action arising under this Act in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market."  Consistent with the requirements of the statute, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of ADRs of BHP Billiton Limited during the 90-day look-back period.  The mean (average) closing price for these ADRs during this 90-day look-back period was $23.88, as shown in Table-3.

**TABLE-1**

| Purchase Date | Date of Sale | | | Retained Beyond 11/30/2015 |
|---|---|---|---|---|
| | 9/25/2014 through 11/5/2015 | 11/6/2015 through 11/24/2015 | 11/25/2015 through 11/29/2015 | |
| 9/25/2014 through 11/5/2015 | $0.00 | $1.30 | $2.53 | $2.68 |
| 11/6/2015 through 11/24/2015 | | $0.00 | $1.23 | $1.38 |
| 11/25/2015 through 11/29/2015 | | | $0.00 | $0.15 |
| Purchased on or After 11/30/2015 | | | | $0.00 |

---

[3]   As explained in footnote 2 above, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of ADRs of BHP Billiton plc during the 90-day look-back period.  The mean (average) closing price for these ADRs during this 90-day look-back period was $21.34, as shown in Table-4.

**TABLE-2**

| Purchase Date | Date of Sale | | | |
|---|---|---|---|---|
| | 9/25/2014 through 11/5/2015 | 11/6/2015 through 11/24/2015 | 11/25/2015 through 11/29/2015 | Retained Beyond 11/30/2015 |
| 9/25/2014 through 11/5/2015 | $0.00 | $1.44 | $2.53 | $2.69 |
| 11/6/2015 through 11/24/2015 | | $0.00 | $1.09 | $1.25 |
| 11/25/2015 through 11/29/2015 | | | $0.00 | $0.16 |
| Purchased on or After 11/30/2015 | | | | $0.00 |

TABLE-3

**BHP ADRs Closing Price and Average Closing Price**
**November 30, 2015 – February 26, 2016**

| Date | Closing Price | Average Closing Price | Date | Closing Price | Average Closing Price |
|---|---|---|---|---|---|
| 11/30/2015 | $26.68 | $26.68 | 1/14/2016 | $21.68 | $25.46 |
| 12/1/2015 | $27.31 | $27.00 | 1/15/2016 | $20.19 | $25.30 |
| 12/2/2015 | $26.89 | $26.96 | 1/19/2016 | $20.07 | $25.15 |
| 12/3/2015 | $26.25 | $26.78 | 1/20/2016 | $19.38 | $24.98 |
| 12/4/2015 | $26.48 | $26.72 | 1/21/2016 | $21.00 | $24.87 |
| 12/7/2015 | $25.51 | $26.52 | 1/22/2016 | $21.48 | $24.78 |
| 12/8/2015 | $24.44 | $26.22 | 1/25/2016 | $20.75 | $24.67 |
| 12/9/2015 | $24.94 | $26.06 | 1/26/2016 | $22.01 | $24.60 |
| 12/10/2015 | $25.13 | $25.96 | 1/27/2016 | $21.35 | $24.52 |
| 12/11/2015 | $23.81 | $25.74 | 1/28/2016 | $21.79 | $24.46 |
| 12/14/2015 | $23.67 | $25.56 | 1/29/2016 | $21.91 | $24.40 |
| 12/15/2015 | $23.81 | $25.41 | 2/1/2016 | $21.73 | $24.33 |
| 12/16/2015 | $24.58 | $25.35 | 2/2/2016 | $20.33 | $24.24 |
| 12/17/2015 | $23.62 | $25.22 | 2/3/2016 | $21.39 | $24.18 |
| 12/18/2015 | $23.93 | $25.14 | 2/4/2016 | $22.89 | $24.15 |
| 12/21/2015 | $24.28 | $25.08 | 2/5/2016 | $22.58 | $24.12 |
| 12/22/2015 | $24.54 | $25.05 | 2/8/2016 | $22.71 | $24.09 |
| 12/23/2015 | $25.96 | $25.10 | 2/9/2016 | $21.79 | $24.04 |
| 12/24/2015 | $26.14 | $25.16 | 2/10/2016 | $21.65 | $23.99 |
| 12/28/2015 | $25.82 | $25.19 | 2/11/2016 | $21.19 | $23.94 |
| 12/29/2015 | $26.31 | $25.24 | 2/12/2016 | $22.72 | $23.92 |
| 12/30/2015 | $26.00 | $25.28 | 2/16/2016 | $23.16 | $23.90 |
| 12/31/2015 | $25.76 | $25.30 | 2/17/2016 | $24.12 | $23.91 |
| 1/4/2016 | $25.48 | $25.31 | 2/18/2016 | $23.99 | $23.91 |
| 1/5/2016 | $25.27 | $25.30 | 2/19/2016 | $23.98 | $23.91 |
| 1/6/2016 | $23.76 | $25.25 | 2/22/2016 | $25.29 | $23.93 |
| 1/7/2016 | $22.46 | $25.14 | 2/23/2016 | $24.09 | $23.94 |
| 1/8/2016 | $21.96 | $25.03 | 2/24/2016 | $22.80 | $23.92 |
| 1/11/2016 | $21.40 | $24.90 | 2/25/2016 | $22.83 | $23.90 |
| 1/12/2016 | $20.64 | $24.76 | 2/26/2016 | $22.56 | $23.88 |
| 1/13/2016 | $20.38 | $24.62 | | | |

TABLE-4

**BBL ADRs Closing Price and Average Closing Price**
**November 30, 2015 – February 26, 2016**

| Date | Closing Price | Average Closing Price | Date | Closing Price | Average Closing Price |
|---|---|---|---|---|---|
| 11/30/2015 | $24.25 | $24.25 | 1/14/2016 | $19.31 | $22.88 |
| 12/1/2015 | $24.82 | $24.54 | 1/15/2016 | $17.87 | $22.72 |
| 12/2/2015 | $24.37 | $24.48 | 1/19/2016 | $17.74 | $22.58 |
| 12/3/2015 | $23.74 | $24.30 | 1/20/2016 | $17.07 | $22.42 |
| 12/4/2015 | $24.19 | $24.27 | 1/21/2016 | $18.55 | $22.31 |
| 12/7/2015 | $23.12 | $24.08 | 1/22/2016 | $18.71 | $22.22 |
| 12/8/2015 | $21.96 | $23.78 | 1/25/2016 | $18.32 | $22.11 |
| 12/9/2015 | $22.67 | $23.64 | 1/26/2016 | $19.37 | $22.04 |
| 12/10/2015 | $22.47 | $23.51 | 1/27/2016 | $18.99 | $21.97 |
| 12/11/2015 | $21.16 | $23.28 | 1/28/2016 | $19.63 | $21.91 |
| 12/14/2015 | $20.72 | $23.04 | 1/29/2016 | $19.65 | $21.86 |
| 12/15/2015 | $20.87 | $22.86 | 2/1/2016 | $19.67 | $21.80 |
| 12/16/2015 | $21.67 | $22.77 | 2/2/2016 | $18.27 | $21.72 |
| 12/17/2015 | $21.01 | $22.64 | 2/3/2016 | $19.42 | $21.67 |
| 12/18/2015 | $21.30 | $22.55 | 2/4/2016 | $20.88 | $21.66 |
| 12/21/2015 | $21.51 | $22.49 | 2/5/2016 | $20.49 | $21.63 |
| 12/22/2015 | $21.93 | $22.46 | 2/8/2016 | $20.49 | $21.61 |
| 12/23/2015 | $23.23 | $22.50 | 2/9/2016 | $19.43 | $21.56 |
| 12/24/2015 | $23.23 | $22.54 | 2/10/2016 | $19.03 | $21.51 |
| 12/28/2015 | $22.96 | $22.56 | 2/11/2016 | $18.62 | $21.46 |
| 12/29/2015 | $23.17 | $22.59 | 2/12/2016 | $20.27 | $21.43 |
| 12/30/2015 | $22.82 | $22.60 | 2/16/2016 | $20.31 | $21.41 |
| 12/31/2015 | $22.65 | $22.60 | 2/17/2016 | $21.34 | $21.41 |
| 1/4/2016 | $22.24 | $22.59 | 2/18/2016 | $21.33 | $21.41 |
| 1/5/2016 | $22.25 | $22.57 | 2/19/2016 | $21.22 | $21.41 |
| 1/6/2016 | $20.87 | $22.51 | 2/22/2016 | $22.55 | $21.43 |
| 1/7/2016 | $19.58 | $22.40 | 2/23/2016 | $21.14 | $21.42 |
| 1/8/2016 | $18.97 | $22.28 | 2/24/2016 | $19.89 | $21.39 |
| 1/11/2016 | $18.76 | $22.15 | 2/25/2016 | $19.83 | $21.37 |
| 1/12/2016 | $18.14 | $22.02 | 2/26/2016 | $19.80 | $21.34 |
| 1/13/2016 | $17.86 | $21.89 | | | |

For Class Members who held ADRs at the beginning of the Class Period or made multiple purchases, acquisitions, or sales during the Class Period, the First-In, First-Out ("FIFO") method will be applied to such holdings, purchases, acquisitions, and sales for purposes of calculating a claim.  Under the FIFO method, sales of ADRs during the Class Period will be matched, in chronological order, first against ADRs held at the beginning of the Class Period.  The remaining sales of ADRs during the Class Period will then be matched, in chronological order, against ADRs purchased or acquired during the Class Period.

A Class Member will be eligible to receive a distribution from the Net Settlement Fund only if a Class Member had a net overall loss, after all profits from transactions in all ADRs described above during the Class Period are subtracted from all losses.  However, the proceeds from sales of ADRs that have been matched against the ADRs held at the beginning of the Class Period will not be used in the calculation of such net loss.

No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00.

The Court has reserved jurisdiction over an appeal by any Class Member of the Claims Administrator's determinations regarding a Class Member's claim or to allow, disallow, or adjust the claim of any Class Member on equitable grounds.

Payment pursuant to the Plan of Allocation set forth above shall be conclusive against all Authorized Claimants.  Defendants, Defendants' Counsel, and all other Released Persons will have no responsibility or liability whatsoever for the investment of the Settlement Fund, the distribution of the Net Settlement Fund, the Plan of Allocation, or the payment of any claim.  No Person shall have any claim against the Plaintiffs, Lead Counsel, any claims administrator, or other Person designated by Lead Counsel, or Defendants or Defendants' Counsel, based on

distributions made substantially in accordance with the Stipulation and the settlement contained

therein, the Plan of Allocation, or further orders of the Court.

## XIII.   PARTICIPATION IN THE SETTLEMENT

TO PARTICIPATE IN THE DISTRIBUTION OF THE NET SETTLEMENT

FUND, YOU MUST TIMELY SUBMIT A PROOF OF CLAIM.   A Proof of Claim is

enclosed with this Notice or it may be downloaded at www.bhpsecuritieslitigation.com.   Read

the instructions carefully, fill out the Proof of Claim, include all the documents the form asks for,

sign it, and mail or submit it online so that it is postmarked (if mailed) or received (if filed

electronically) no later than _____.   The claim form may be submitted online at

www.bhpsecuritieslitigation.com.   Unless the Court orders otherwise, if you do not timely

submit a valid Proof of Claim, you will be barred from receiving any payments from the Net

Settlement Fund, but will in all other respects be bound by the provisions of the Stipulation and

the Judgment.

## XIV.   DISMISSAL AND RELEASES

If the proposed settlement is approved, the Court will enter the Judgment.   In addition,

upon the Effective Date, Plaintiffs and each of the Class Members, for themselves and for any

other Person claiming (now or in the future) through or on behalf of them, and regardless of

whether any such Plaintiff or Class Member ever seeks or obtains by any means, including,

without limitation, by submitting a Proof of Claim, any distribution from the Settlement Fund,

shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever

released, relinquished, and discharged all Released Claims against the Released Persons, and

shall be permanently barred and enjoined from instituting, commencing, prosecuting or

continuing to prosecute any such Released Claim against the Released Persons except to enforce

the releases and other terms and conditions contained in the Stipulation or the Judgment entered pursuant thereto.

## XV.    APPLICATION FOR FEES AND EXPENSES

At the Settlement Hearing, Lead Counsel will request the Court to award attorneys' fees not to exceed 30% of the Settlement Amount, plus expenses not to exceed $500,000, plus interest thereon.  In addition, the Plaintiffs may each seek the Court's approval for up to $25,000 in expenses (including lost income) they incurred in representing the Class.  Such sums as may be approved by the Court will be paid from the Settlement Fund.  Class Members are not personally liable for any such fees or expenses.

The fee requested by Lead Counsel will compensate counsel for its efforts in achieving the settlement for the benefit of the Class, and for its risk in undertaking this representation on a wholly contingent basis.  Lead Counsel believes that the fee requested is well within the range of fees awarded to plaintiffs' counsel under similar circumstances in other litigation of this type. The fee to be requested has been approved by the Plaintiffs.

## XVI.  CONDITIONS FOR SETTLEMENT

The settlement is conditioned upon the occurrence of certain events described in the Stipulation.  Those events include, among other things: (1) entry of the Judgment by the Court, as provided for in the Stipulation; and (2) expiration of the time to appeal from the Judgment or to move to alter or amend the Judgment, or the determination of any such appeal or motion in a manner to permit the consummation of the settlement substantially as provided for in the Stipulation. If, for any reason, any one of the conditions described in the Stipulation is not met, the Stipulation might be terminated and, if terminated, will become null and void, and the parties to the Stipulation will be restored to their respective positions as of August 5, 2018.  In that event, the settlement will not proceed and no payments will be made to Class Members.

## XVII.  THE RIGHT TO OBJECT AND BE HEARD AT THE HEARING

Any Class Member who does not request exclusion from the Class and who objects to any aspect of the settlement, the Plan of Allocation, or the application for attorneys' fees and expenses,[4] may appear and be heard at the Settlement Hearing.  However, any such Person must submit a written notice of objection, such that it is ***received*** on or before _____, by each of the following:

> ***To the Court:***
>
> CLERK OF THE COURT
> UNITED STATES DISTRICT COURT
> SOUTHERN DISTRICT OF NEW YORK
> DANIEL PATRICK MOYNIHAN UNITED STATES COURTHOUSE
> 500 Pearl Street
> New York, NY  10007-1312
>
> ***To Lead Counsel:***
>
> ROBBINS GELLER RUDMAN
>   & DOWD LLP
> JOSEPH RUSSELLO
> 58 South Service Road, Suite 200
> Melville, NY  11747
>
> ***To Defendants' Counsel:***
>
> SULLIVAN & CROMWELL LLP
> BRENDAN P. CULLEN
> 1870 Embarcadero Road
> Palo Alto, CA  94303

Any objections, filings, and other submissions by the objecting Class Member:  (a) must state the name, address, and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Class

---

[4]     Plaintiffs' submission in support of approval of this settlement, the Plan of Allocation, and the award of fees and expenses, will be filed no later than _____, 2018.

Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove membership in the Class, including the number of ADRs you purchased or otherwise acquired an interest in during the Class Period and sold or held during the Class Period. Objectors who enter an appearance and desire to present evidence at the Settlement Hearing in support of their objection must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and any exhibits they intend to introduce into evidence at the hearing.  Only Class Members who have submitted written notices of objection in this manner will be entitled to be heard at the Settlement Hearing, unless the Court orders otherwise.

## XVIII.  SPECIAL NOTICE TO NOMINEES

Nominees who purchased or acquired ADRs for the beneficial interest of other Persons during the Class Period shall, within ten (10) calendar days after receipt of this Notice: (1) provide the Claims Administrator with the names and addresses of such beneficial owners; or (2) forward a copy of this Notice and the Proof of Claim by First-Class Mail to each such beneficial owner and provide Lead Counsel with written confirmation that the Notice and Proof of Claim have been so forwarded.  Upon submission of appropriate documentation, Lead Counsel will reimburse your reasonable costs and expenses of complying with this provision. Additional copies of this Notice may be obtained from the Claims Administrator by writing to:

*BHP Securities Litigation*
Claims Administrator
c/o GILARDI & CO. LLC
P.O. Box 30217
College Station, TX  77842-3217

## XIX.  EXAMINATION OF PAPERS

This Notice contains only a summary of the terms of the proposed settlement and does not describe all of the details of the Stipulation.  For a more detailed statement of the matters involved

in the Litigation, reference is made to the pleadings, to the Stipulation, and to other papers filed in the Litigation, which may be inspected at the office of the Clerk of the Court, United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007-1312.  In addition, certain case- and settlement-related documents, including the Stipulation of Settlement, may be viewed at www.bhpsecuritieslitigation.com.

If you have any questions about the settlement of the Litigation, you may contact Lead Counsel at the address listed below or by e-mail at bhpclaims@rgrdlaw.com.

ROBBINS GELLER RUDMAN & DOWD LLP
JOSEPH RUSSELLO
58 South Service Road, Suite 200
Melville, NY  11747
Telephone: 631/367-7100

**DO NOT TELEPHONE THE COURT REGARDING THIS NOTICE.**

DATED: _____, 2018          BY ORDER OF THE COURT
                                     UNITED STATES DISTRICT COURT
                                     SOUTHERN DISTRICT OF NEW YORK

- 33 -