UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re BHP BILLITON LIMITED SECURITIES LITIGATION | Civil Action No. 1:16-cv-01445-NRB |
| | CLASS ACTION |
| This Document Relates To: ALL ACTIONS. | MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AN AWARD TO LEAD PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4) |

## TABLE OF CONTENTS

Page


I. INTRODUCTION ....1

II. PROCEDURAL AND FACTUAL BACKGROUND....4

III. THE NOTICE OF PROPOSED SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS AND IS REASONABLE ....4

IV. THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT ....6

V. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE....7

A. Settlements Are Generally Favored and Encouraged ....7

B. The Settlement Is Presumptively Fair....7

C. The Settlement Meets All Requirements for Approval ....8

1. The Settlement Satisfies the Requirements for Final Approval....9

a. The Complexity, Expense, and Duration of the Litigation Justify the Settlement....9

b. The Reaction of the Class to the Settlement ....11

c. The Stage of the Proceedings and Discovery Completed....11

d. The Risks of Establishing Liability....12

e. The Risks of Establishing Damages ....14

f. The Risks of Maintaining the Class through Trial....15

g. Defendants' Ability to Withstand a Greater Judgment....15

h. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Risks of Litigation ....15

2. The Settlement Meets the Additional Requirements of Amended Rule 23(e)(2)....16

a. The Class Representatives and Class Counsel have Adequately Represented the Class....16

**Page**


b. The Settlement Was Negotiated at Arm's Length ....................17

c. The Relief Provided for the Class Is Adequate, Taking into Account the Costs, Risks and Delays of Litigation ....................17

d. The Proposed Method of Distributing the Settlement to Class Members Is Fair and Reasonable ....................18

e. The Settlement Is Adequate, Taking into Account Lead Counsel's Request for Attorneys' Fees and Expenses ....................18

f. The Parties' Supplemental Agreement ....................18

VI. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED ....................18

VII. AWARD OF ATTORNEYS' FEES ....................19

A. Lead Counsel Is Entitled to an Award of Attorneys' Fees from the $50,000,000 Common Fund Created in the Settlement ....................19

B. The Court Should Award a Reasonable Percentage of the Common Fund, as Requested ....................20

C. The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method ....................22

D. The *Goldberger* Factors Confirm that the 30% Requested Fee Is Fair and Reasonable ....................23

1. The Time and Labor Expended by Plaintiffs' Counsel Support the Requested Fee ....................24

2. The Magnitude and Complexity of the Litigation Support the Requested Fee ....................25

3. The Risks of the Litigation Support the Requested Fee ....................26

4. The Quality of Representation Supports the Requested Fee ....................28

5. Second Circuit Precedent Supports the 30% Fee as a Reasonable Percentage of the Total Recovery ....................29

6. Public Policy Considerations Support the Requested Fee ....................29

Page


7. Plaintiffs' Approval and the Class' Reaction Support the Requested Fee ....................30

E. A Lodestar Cross-Check Strongly Confirms the Reasonableness of the Fee Request ....................30

VIII. PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT ....................32

IX. LEAD PLAINTIFFS ARE ENTITLED TO A REASONABLE AWARD UNDER 15 U.S.C. §78u-4(a)(4) ....................33

X. CONCLUSION ....................34

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Beecher v. Able*,
575 F.2d 1010 (2d Cir. 1978)....................19

*Blum v. Stenson*,
465 U.S. 886 (1984)....................21, 22

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)....................19

*Camden I Condo. Ass'n v. Dunkle*,
946 F.2d 768 (11th Cir. 1991)....................21

*Chatelain v. Prudential-Bache Sec.*,
805 F. Supp. 209 (S.D.N.Y. 1992)....................15

*Citiline Holdings, Inc. v. iStar Fin. Inc.*,
No. 1:08-cv-03612-RJS, slip op.
(S.D.N.Y. Apr. 5, 2013)....................22

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132 (CM), 2014 WL 1883494
(S.D.N.Y. May 9, 2014)....................12

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*,
No. 2:12-cv-05275-MCA-LDW, slip op.
(D.N.J. Sept. 29, 2016)....................23

*Cornwell v. Credit Suisse Grp.*,
No. 08-cv-03758 (VM), slip op.
(S.D.N.Y. July 20, 2011)....................31

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)....................8

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011)....................20, 21, 31

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).................... *passim*

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)....................13

**Page**

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)....................4

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000).................... *passim*

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) ....................21

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) ....................21

*Hayes v. Harmony Gold Mining Co.*,
509 F. App'x 21 (2d Cir. 2013) ....................20

*Hicks v. Morgan Stanley*,
No. 01 Civ. 10071 (RJH), 2005 WL 2757792
(S.D.N.Y. Oct. 24, 2005) ....................11, 20, 34

*In re Advanced Battery Techs. Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ....................9

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984),
*aff'd*, 818 F.2d 145 (2d Cir. 1987)....................15

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................19

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
No. 04 Civ. 8141 (DAB), 2010 WL 5060697
(S.D.N.Y. Dec. 2, 2010)....................33

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
No. MDL 1500, 2006 WL 903236
(S.D.N.Y. Apr. 6, 2006)....................16

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002)....................31

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006)....................21

**Page**

*In re Bear Stearns Cos.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)....................11

*In re Bisys Sec. Litig.*,
No. 04-3840 (JSR), 2007 WL 2049726
(S.D.N.Y. July 16, 2007) ....................31

*In re Buspirone Antitrust Litig.*,
MDL No. 1413 (JGK), 2003 U.S. Dist. LEXIS 26538
(S.D.N.Y. Apr. 17, 2003)....................22

*In re China Sunergy Sec. Litig.*,
No. 07 Civ. 7895 (DAB), 2011 WL 1899715
(S.D.N.Y. May 13, 2011)....................32

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354
(E.D.N.Y. June 24, 2010) .................... *passim*

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 (CM) (PED), 2010 WL 4537550
(S.D.N.Y. Nov. 8, 2010) .................... *passim*

*In re Genworth Fin., Inc. Sec. Litig.*,
No. 1:14-cv-02392-AKH, slip op.
(S.D.N.Y. Nov. 16, 2017) ....................22

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675
(E.D.N.Y. Sept. 18, 2007)....................9, 10

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-Civ-8557 (CM), 2014 WL 7323417
(S.D.N.Y. Dec. 19, 2014)....................11, 14

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ....................11, 15

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)....................22

*In re Intercept Pharm., Inc. Sec. Litig.*,
No. 1:14-cv-01123-NRB, slip op.
(S.D.N.Y. Sept. 8, 2016) ....................18, 31

**Page**

*In re Linerboard Antitrust Litig.*,
No. MDL 1261, 2004 WL 1221350
(E.D. Pa. June 2, 2004) ....................................................................................23

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11 MD 2262 (NRB), 2018 U.S. Dist. LEXIS 129860
(S.D.N.Y. Aug. 1, 2018) ....................................................................................6

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) ....................................................................................7

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................................27, 29

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 57 (S.D.N.Y. 1993) ....................................................................................15

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y.),
*aff'd*, 117 F.3d 721 (2d Cir. 1997) ....................................................................................11, 15, 19

*In re Sony SXRD Rear Projection TV Class Action Litig.*,
No. 06 Civ. 5173 (RPP), 2008 WL 1956267
(S.D.N.Y. May 1, 2008) ....................................................................................10

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ....................................................................................25

*In re Syngenta AG MIR 162 Corn Litig.*,
MDL No. 2591, slip op.
(D. Kan. Dec. 7, 2018) ....................................................................................23

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ....................................................................................20, 22, 26, 31

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995) ....................................................................................21

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989) ....................................................................................32

**Page**

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695 (CM), 2007 WL 4115809
(S.D.N.Y. Nov. 7, 2007) ........ *passim*

*In re Vitamins Antitrust Litig.*,
No. 99-197 (TFH), 2001 WL 34312839
(D.D.C. July 16, 2001) ........ 23

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985),
*aff'd*, 798 F.2d 35 (2d Cir. 1986) ........ 14

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ........ 22

*Kurzweil v. Philip Morris Cos., Inc.*,
No. 94 Civ. 2373 (MBM), 1999 WL 1076105
(S.D.N.Y. Nov. 30, 1999) ........ 23

*Landmen Partners, Inc. v. Blackstone Grp., L.P.*,
No. 08-cv-03601-HB-FM, slip op.
(S.D.N.Y. Dec. 18, 2013) ........ 22

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
No. 2:10-cv-02847-KOB, slip op.
(N.D. Ala. Sept. 14, 2015) ........ 23

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........ 12, 22, 29, 31

*Medoff v. CVS Caremark Corp.*,
No. 09-cv-554-JNL, slip op.
(D.R.I. Feb. 17, 2016) ........ 23

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ........ 22, 32

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
No. 1:08-cv-10783-LAP, 2016 WL 3369534
(S.D.N.Y. May 2, 2016) ........ 31

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ........ 15, 16

**Page**

*Parker v. Time Warner Entm't Co., L.P.*,
631 F. Supp. 2d 242 (E.D.N.Y. 2009) ....................26

*Petrovic v. AMOCO Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ....................21

*Rawlings v. Prudential-Bache Props.*,
9 F.3d 513 (6th Cir. 1993) ....................21

*Savoie v. Merchs. Bank*,
166 F.3d 456 (2d Cir. 1999)....................21

*Schuh v. HCA Holdings, Inc.*,
No. 3:11-cv-01033, slip op. (M.D. Tenn. Apr. 14, 2016)....................23

*Strougo v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003)....................10

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993) ....................21

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
No. 01-CV-11814 (MP), 2004 WL 1087261
(S.D.N.Y. May 14, 2004)....................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................20

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ....................21

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ....................21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005).................... *passim*

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
No. 14-CV-8925 (KMW), 2017 WL 3579892
(S.D.N.Y. Aug. 18, 2017) ....................31

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(a)(4) ....................1, 3, 4, 33
§78u-4(a)(6) ....................21
§78u-4(a)(7) ....................5

Federal Rules of Civil Procedure
Rule 23(a) ....................6, 7
Rule 23(b)(3) ....................6, 7
Rule 23(c)(2) ....................4, 5
Rule 23(e) ....................1, 5, 9
Rule 23(e)(2) ....................16
Rule 23(e)(2)(C)(iv) ....................18
Rule 23(e)(3) ....................9, 18

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs City of Birmingham Retirement and Relief System and City of Birmingham Firemen's and Policemen's Supplemental Pension System (together, "Plaintiffs" or "Lead Plaintiffs") respectfully submit this memorandum of law in support of their motion for approval of: (1) the $50,000,000 all-cash Settlement; (2) the proposed Plan of Allocation; (3) Lead Counsel's application for an award of attorneys' fees and expenses; and (4) Lead Plaintiffs' applications for awards in the total amount of $6,406, pursuant to 15 U.S.C. §78u-4(a)(4).[1]

## I. INTRODUCTION

In accordance with the terms of the Stipulation, on November 28, 2018, defendants BHP Billiton Limited and BHP Billiton plc (together, "BHP" or "Defendants")[2] completed payment of $50,000,000 in cash into an interest-bearing escrow account maintained on behalf of the Class. This proposed Settlement is an excellent recovery achieved in the face of significant risk. The Settlement Amount, plus interest, is large by any measure and represents nearly 20% of Lead Plaintiffs' estimated recoverable damages, and far above that if Defendants' arguments with respect to damages had been accepted by the Court or a jury. It is a credit to the Lead Plaintiffs and Lead Counsel's rigorous, persistent and creative efforts.

While securities class actions pose numerous risks, Plaintiffs here faced unique challenges as it centered around the failure of a Brazilian dam and a company headquartered in Australia. Accordingly, many of the percipient witnesses and responsive documents were located outside the United States and beyond the Court's jurisdiction. This required Lead Counsel to engage law firms in Australia and Brazil and to utilize attorneys fluent in Portuguese. Lead Counsel nevertheless was

---

[1] Unless otherwise noted, all capitalized terms used herein are defined in the September 14, 2018 Stipulation of Settlement ("Stipulation"). ECF No. 103.

[2] Defendants are now known as BHP Group Limited and BHP Group Plc, respectively.

able to secure and review, and in many cases translate, over 900,000 pages of documents and identify and speak with various potential witnesses abroad in its investigation and through formal discovery. Other risks that Plaintiffs faced, and would have faced, had the Litigation continued, include the risks that: (1) the Court would deny class certification; and (2) Defendants would prevail at summary judgment, at trial, or on appeal. In the face of these and many other obstacles, Lead Counsel was able to achieve a $50 million all-cash Settlement, all without the delays and uncertainties of continued litigation.

Further confirming the fairness, reasonableness and adequacy of the Settlement is the fact that, to date, Class Members have reacted positively. Pursuant to the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") (ECF No. 108), over 169,700 copies of the Notice were sent to potential Class Members and nominees, and notice was published once over a national newswire service and has been, or will be, published three times each in *The Wall Street Journal* (U.S., Europe, Asia), *Financial Times* (worldwide), *Bloomberg Businessweek* (worldwide), and *Investor's Business Daily* (national), in conformance with the Preliminary Approval Order and the Court's November 27, 2018 Order (ECF No. 111). *See* Ferguson Decl., ¶¶10-11.[3] To date, Plaintiffs are not aware of a single objection to the Settlement, and only one request for exclusion from the Class has been received. *Id.*, ¶14.

Lead Plaintiffs also request that the Court approve the proposed Plan of Allocation, which was set forth in the Notice sent to Class Members. The Plan of Allocation governs how claims will be calculated and how Settlement proceeds will be distributed among Authorized Claimants. It was prepared in consultation with Plaintiffs' damages expert, Dr. Steven P. Feinstein, as well as the Claims

---

[3] *See* Declaration of Mishka Ferguson Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Ferguson Decl."), dated December 17, 2018, submitted herewith.

Administrator, Gilardi & Co. LLC, and is based on the out-of-pocket measure of damages, *i.e.*, the difference between what Class Members paid for their ADRs during the Class Period and what they would have paid had the alleged misstatements not been made or the omitted information been disclosed. The Plan of Allocation calculates Class Member claims as they would have been calculated had Lead Plaintiffs prevailed at trial. It is fair, reasonable, and adequate, and should be approved.

Lead Counsel also respectfully applies for an award of attorneys' fees in the amount of 30% of the Settlement Amount and litigation expenses of $435,998.92, plus interest on both amounts. Lead Counsel's fee request, approved by Lead Plaintiffs,[4] is within the range of percentages awarded in class actions in this District and across the country. It is also reasonable when viewed against the result achieved here and the many risks Lead Counsel was able to overcome, including that certain evidence was located in Australia and Brazil, beyond the Court's subpoena power. Additional factors supporting the reasonableness of the requested fee include Lead Counsel's diligence and efficiency in prosecuting and resolving this Litigation over the course of two years, as well as Lead Counsel's acceptance of this case on a contingency basis on behalf of the Class.

In addition, Lead Plaintiffs apply for awards of $3,148.20 for plaintiff City of Birmingham Retirement and Relief System and $3,257.80 for plaintiff City of Birmingham Firemen's and Policemen's Supplemental Pension System, both pursuant to 15 U.S.C. §78u-4(a)(4), for their time incurred in prosecuting this Litigation. *See* COBRRS Decl., ¶3; COBFPS Decl., ¶3.

Finally, Lead Counsel, which has substantial experience prosecuting securities class actions, has concluded that the Settlement is fair, reasonable, and adequate and in the best interests of the

---

4 *See* Declaration of James D. Love on behalf of City of Birmingham Retirement and Relief System ("COBRRS Decl."), ¶10; Declaration of James D. Love on behalf of City of Birmingham Firemen's and Policemen's Supplemental Pension System ("COBFPS Decl."), ¶10, submitted herewith.

Class. Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement and approve the Plan of Allocation as fair and reasonable.

## II. PROCEDURAL AND FACTUAL BACKGROUND

This securities fraud class action was brought by Lead Plaintiffs under the Securities Exchange Act of 1934 ("Exchange Act") against Defendants on behalf of a class of purchasers of ADRs from September 25, 2014 to November 30, 2015, inclusive ("Class Period"). Lead Plaintiffs alleged that Defendants made untrue statements of material fact and omitted to disclose material information which Defendants were required to disclose during the Class Period.

For the sake of brevity, the Court is respectfully referred to the accompanying Declaration of Joseph Russello in Support of Lead Plaintiffs' Motion for Final Approval of Settlement and Approval of Plan of Allocation and for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Russello Decl.") for a full discussion of: (1) the factual background and procedural history of the Litigation; (2) the efforts of Lead Counsel; (3) the negotiations leading to this Settlement; (4) the reasons why the Settlement and the Plan of Allocation are fair and reasonable and should be approved; and (5) why the Court should approve Lead Counsel's application for an award of attorneys' fees and expenses and Lead Plaintiffs' application for awards pursuant to 15 U.S.C. §78u-4(a)(4).

## III. THE NOTICE OF PROPOSED SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS AND IS REASONABLE

Rule 23(c)(2) requires the "'best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (class notice designed to fulfill due process requirements).[5] The standard for measuring the adequacy of a class action settlement notice is reasonableness. *Wal-*

---

[5] Citations are omitted and emphasis is added throughout, unless otherwise indicated.

*Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id*. "Notice is 'adequate if it may be understood by the average class member.'" *Id*.

Here, in accordance with the Preliminary Approval Order, by November 14, 2018, the Claims Administrator caused the Notice and Proof of Claim to be mailed to potential Class Members and nominees. *See* Ferguson Decl., ¶¶4-10. As of December 17, 2018, over 169,700 copies of the Notice have been mailed to potential Class Members and nominees. *Id.*, ¶10. The Notice contains a description of the claims asserted, the Settlement, the Plan of Allocation, and Class Members' rights to participate in and object to the Settlement or the fees and expenses that Lead Counsel intends to request, or to exclude themselves from the Class. In addition, the Summary Notice was published once over a national newswire service and has been, or will be, published three times in *The Wall Street Journal* (U.S., Europe, Asia), *Financial Times* (worldwide), *Bloomberg Businessweek* (worldwide), and *Investor's Business Daily* (national), in conformance with the Court's November 27, 2018 Order. Ferguson Decl., ¶11. Information regarding the Settlement, including downloadable copies of the Notice and Proof of Claim, was also posted on a website devoted solely to the administration of the Settlement: www.bhpsecuritieslitigation.com. *Id.*, ¶13.

The notice program, which combined an individual, mailed Notice and Proof of Claim to all potential Class Members and nominees who could be identified with reasonable effort, and a Summary Notice published in four preeminent business publications and over the internet, contained all of the information required by §21D(a)(7) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and is adequate to meet the due process and Rules 23(c)(2) and (e) requirements for

providing notice to the Class. Indeed, the publication program associated with the Summary Notice is more comprehensive than is customarily used in securities class actions, and is, in fact, more akin to that which the Court endorsed in the sprawling and recently-settled antitrust class action, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB), 2018 U.S. Dist. LEXIS 129860, at *13 (S.D.N.Y. Aug. 1, 2018) (Buchwald, J.) ("the publication notices were placed in various publications focused on finance and investment subjects that are likely of particular interest to potential class members").

## IV. THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

In presenting the Settlement to the Court for preliminary approval, Plaintiffs requested that the Court certify the Class for settlement purposes only so that notice of the Settlement, the Settlement Hearing and the rights of Class Members to object to the Settlement, request exclusion from the Class or submit Proof of Claim and Release forms, could be issued. In the Preliminary Approval Order, the Court addressed the requirements for class certification set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and found that Plaintiffs had met the requirements for certification of the Class for purposes of settlement. By its Preliminary Approval Order, the Court preliminarily certified the following Class:

> All persons and entities who purchased or otherwise acquired an interest in the ADRs between September 25, 2014 and November 30, 2015, inclusive, on any exchange or otherwise. Excluded from the Class are (i) Defendants, (ii) Related Parties, (iii) Immediate Family Members of any natural persons in (ii), (iv) any person, firm, trust, corporation, officer, director, or other individual or entity in which any Defendant had a controlling interest during the Class Period, and (v) the legal representatives, heirs, successors-in-interest or assigns of any such excluded party. Also excluded from the Class are any persons and entities who are found by the Court to have timely and validly requested exclusion.

*See* ECF No. 108, ¶¶1-3. In addition, the Court preliminarily certified Plaintiffs as class representative and Lead Counsel as class counsel. *Id.*, ¶3.

Since entry of the Preliminary Approval Order, nothing has changed to alter the propriety of the Court's preliminary certification of the Class and, for all the reasons stated in Plaintiffs' motion for preliminary approval, incorporated herein by reference, Plaintiffs respectfully request that the Court affirm its preliminary certification and finally certify the Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) and appoint Plaintiffs as class representative and Lead Counsel as class counsel.

## V. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A. Settlements Are Generally Favored and Encouraged

The court may approve a "class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'" *Wal-Mart*, 396 F.3d at 116. The evaluation of a proposed settlement requires the court to consider "both the settlement's terms and the negotiating process leading to settlement." *Id.* While the decision to grant or deny approval lies within a court's broad discretion, a general policy favoring settlement exists, especially for class actions. *Id.* (noting "'strong judicial policy in favor of settlements, particularly in the class action context'"). Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).

### B. The Settlement Is Presumptively Fair

A "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal-Mart*, 396 F.3d at 116. Great weight is accorded to the recommendations of counsel, who are most closely acquainted with the litigation. *See In re Luxottica Grp. S.p.A. Sec.*

*Litig.*, 233 F.R.D. 306, 315 (E.D.N.Y. 2006). A court may find the negotiating process is fair where, as here, "the settlement resulted from 'arm's-length negotiations'" and plaintiffs' counsel "'possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

This initial presumption of fairness and adequacy applies in this case because the Settlement was reached by experienced, fully-informed counsel after substantial arm's-length negotiations with the assistance of the Hon. Layn R. Phillips, a former federal judge and nationally-recognized mediator of complex cases. Russello Decl., ¶¶112-116. In addition, Lead Counsel was fully informed of the merits and weaknesses by the time the Settlement was reached. Lead Counsel had conducted extensive document discovery, reviewing and analyzing hundreds of thousands of pages of documents produced by BHP, Vale, Samarco and others, from the United States, Australia and Brazil, and consulted mining, loss causation, and damages experts and consultants. *Id.*, ¶¶38-47, 61-67, 80-87. The accumulation of information resulting from discovery and consultation with these experts informed Lead Plaintiffs and their counsel about the strengths and weaknesses of the case and enabled them to engage in effective settlement discussions designed to maximize any recovery. Thus, the Settlement is entitled to the presumption of procedural fairness in this Circuit.

**C. The Settlement Meets All Requirements for Approval**

As explained below, the nine factors set forth by the Second Circuit in *Grinnell*, 495 F.2d at 463, which include the following, overwhelmingly favor final approval of the Settlement:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Additionally, as explained below, the following factors set forth in amendments to Rule 23(e), effective December 1, 2018, some of which overlap with the *Grinnell* factors, support final approval of the Settlement:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the cost, risks and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

### 1. The Settlement Satisfies the Requirements for Final Approval

#### a. The Complexity, Expense, and Duration of the Litigation Justify the Settlement

Without the Settlement, the anticipated complexity, cost, and duration of the Litigation would be considerable. *See In re Advanced Battery Techs. Inc. Sec. Litig.*, 298 F.R.D. 171, 175 (S.D.N.Y. 2014) ("the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement"); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG),

2007 WL 2743675, at *10 (E.D.N.Y. Sept. 18, 2007) (same). This case involves complex issues under the federal securities laws, including (i) whether an issuer is liable for allegedly misrepresenting the conditions of *its own safety protocols* based on conditions at a dam owned and operated by a company in which the issuer is an indirect 50% shareholder, and (ii) whether corporate scienter exists for the alleged misstatements and omissions. *See* Russello Decl., ¶¶9, 25, 28. Accordingly, discovery was extensive, and was likely to only increase in intensity and complexity. At the time the Settlement was reached, over 800,000 pages had been produced by all parties and third-parties, and Lead Counsel had retained mining and other consultants to evaluate these issues, as well as the issues of materiality, loss causation, and damages. *Id.*, ¶¶64, 80-90.

In the absence of the Settlement, Lead Plaintiffs would be required to complete depositions, retain additional experts, prepare additional expert reports, and complete expert and fact discovery, much of which would involve information and witnesses located in Australia and Brazil. *See Gilat*, 2007 WL 2743675, at *10 (noting that "costs of litigating are anticipated to be significant, since extensive discovery remains to be completed" and the company and others "are located overseas"). Summary judgment and other pretrial proceedings would also require substantial expenditures of time and resources – from the parties and the Court – and pose significant risks to recovery. All of this would add years of delay before the Class could enjoy the benefit of a verdict, if any, obtained in its favor. *In re Sony SXRD Rear Projection TV Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008) ("Not only would Plaintiffs spend substantial sums in litigating this case through trial and appeals, it could be years before class members saw any recovery, if at all."); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) (same).

Even if the Class could recover a larger judgment after a trial, the additional delay posed by the trial itself, as well as post-trial motions and appeals, could deny the Class any recovery for years.

*See Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."). More importantly, there is no guarantee that the outcome would favor the Class. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (Buchwald, J.) (noting securities class action litigation is "'notably difficult and notoriously uncertain'"). The Settlement avoids all of these risks.

**b. The Reaction of the Class to the Settlement**

The reaction of the Class to the Settlement is a significant factor in assessing its fairness and adequacy, and the lack of objections "'evidenc[es] the fairness of a settlement.'" *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Over 169,700 copies of the Notice, which describes the nature of the Litigation and the terms of the Settlement, were distributed to potential Class Members and nominees. Ferguson Decl., ¶10. To date, no objections to the Settlement have been received and one investor has opted out of the Class. The Court-ordered deadline for objections or opting out is January 15, 2019. Any objections received by that date will be addressed in Lead Plaintiffs' reply brief, due on January 29, 2019.

**c. The Stage of the Proceedings and Discovery Completed**

A court will also consider "'whether the [plaintiffs] had adequate information about their claims such that their counsel can intelligently evaluate the merits of [their] claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'" *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) (quoting *IMAX*, 283 F.R.D. at 190). "To satisfy this factor, [the] parties need not have even engaged in formal or extensive discovery." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *7 (S.D.N.Y. Dec. 19, 2014) (noting discovery cannot begin in cases brought under the

PSLRA until the motion to dismiss is denied) (citing *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 363 (S.D.N.Y. 2002)).

In this case, there is no question that Lead Plaintiffs had sufficient information to make an informed decision on the propriety of the Settlement. As detailed in the Russello Declaration, Lead Plaintiffs and Lead Counsel negotiated the Settlement after an extensive factual investigation and analysis relating to the events and transactions beginning with the initial complaint, including the review of BHP's SEC filings, news reports, and other publicly available information regarding the Fundão dam collapse, as well as testimony from witnesses in Brazil and meeting minutes of the Samarco Board of Directors. Russello Decl., ¶¶21-26. Lead Counsel's investigation continued with the drafting of the detailed amended complaint; opposing Defendants' motion to dismiss; filing Lead Plaintiffs' motion for class certification; engaging in extensive fact and class certification discovery; and participating in an in-person mediation with Defendants' counsel overseen by Judge Phillips, with follow-up communications. *See id.*, ¶¶21, 79, 112-116.

Accordingly, Lead Plaintiffs and their counsel "developed a comprehensive understanding of the key legal and factual issues in the litigation and, at the time the Settlement was reached, had 'a clear view of the strengths and weaknesses of their case' and of the range of possible outcomes at trial." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *7 (S.D.N.Y. May 9, 2014) (quoting *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004)).

**d. The Risks of Establishing Liability**

In evaluating the Settlement, the Court will balance the benefits to the Class, including the immediacy and certainty of a recovery, against the continued risks of litigation. *See Grinnell*, 495 F.2d at 463; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809,

at *8 (S.D.N.Y. Nov. 7, 2007). While Lead Plaintiffs strongly believe in their claims, they recognize that success is not assured, and further believe that this Settlement, when viewed against the risks of proving liability, is fair, adequate, and reasonable. Indeed, despite the strength of this case, Lead Plaintiffs faced numerous hurdles to establishing liability, given that they shouldered the burden to prove: (1) existence of a material misstatement or omission; (2) scienter; (3) reliance; (4) economic loss; and (5) loss causation. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

Defendants maintained throughout the Litigation that they did not make any misleading statements or omissions of material fact and did not act with scienter. For instance, while Lead Plaintiffs alleged that Defendants knew about, or recklessly disregarded, the precarious condition of the Fundão dam, Defendants argued that any reported problems with the dam had been remediated. Russello Decl., ¶101. In addition, Defendants asserted a "truth-on-the-market" defense – that before and throughout the Class Period, investors were aware of problems with the Fundão dam based on a report issued in October 2013. *Id.*, ¶99. Defendants were also prepared to argue that there was insufficient evidence of motive. *Id.*, ¶103.

Even if these defenses were overcome, Lead Plaintiffs would have to establish loss causation, *i.e.*, that Defendants' alleged fraud caused economic loss. *Dura Pharm.*, 544 U.S. at 338 (noting a plaintiff "must prove that the . . . fraud caused an economic loss"). The issue of loss causation would have been hotly contested at summary judgment and trial. Defendants no doubt would have taken the position, supported by expert testimony, that none of the declines in the trading prices of the ADRs was attributable to the alleged revelation of previously-concealed facts about safety at Samarco (a non-operated JV) and, therefore, that Class Members had suffered no cognizable damages. As a result, there was a substantial risk of recovering limited or no damages if the jury sided with the defense.

By the time the parties agreed on the proposed Settlement, Lead Counsel understood that certain of these defenses might resonate with the Court or jurors. While Lead Plaintiffs remained confident in their ability to prove their claims and counter any defense, the risk of losing at summary judgment, trial, or on appeal, when weighed against the immediate and substantial benefits of the $50,000,000 Settlement, supports a finding that the Settlement is fair, reasonable, and adequate.

**e. The Risks of Establishing Damages**

Plaintiffs also faced substantial risk in proving damages. *See Hi-Crush*, 2014 WL 7323417, at *9 (discussing difficulty of proving damages in securities cases and the "real risk of no recovery"). To prevail on their §10(b) claims, Plaintiffs were required to prove that the alleged misleading statements inflated the price of the ADRs. Lead Counsel, with the assistance of its economics and damages expert, calculated the inflation attributable to the alleged wrongdoing – assuming every element of the Class' damages theory was accepted as correct and recoverable. If this case were to proceed, the defense would no doubt contest each and every aspect of those assumptions and calculations.

Proof of damages is a complex matter requiring expert testimony. At trial, Defendants would have challenged Lead Plaintiffs' expert's methodology for calculating damages, just as they did at the class certification stage. Accordingly, Lead Plaintiffs would have faced a "battle of the experts" – a battle in which no party is ever assured to prevail.[6] While Lead Counsel believes its expert was convincing and would have prevailed on this issue, the outcome at later stages or trial

[6] *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

was uncertain. A jury could award nothing or far less in damages than Plaintiffs recovered in the Settlement – a risk that also favors final approval.

**f. The Risks of Maintaining the Class through Trial**

Although Lead Plaintiffs were confident they would have obtained class certification here, it was not guaranteed and the Court could have reevaluated it at any time. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."). The Settlement eliminates any uncertainty regarding this issue.

**g. Defendants' Ability to Withstand a Greater Judgment**

The ability of a defendant to pay a judgment greater than the amount offered in a settlement may be relevant to a settlement's fairness. *Grinnell*, 495 F.2d at 463. But "the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate." *PaineWebber*, 171 F.R.D. at 129; *see also IMAX*, 283 F.R.D. at 191 ("'[A] defendant is not required to "empty its coffers" before a settlement can be found adequate.'"). Here, BHP undoubtedly could endure a large judgment, but a possible source of recovery (liability insurance) was diminishing during the Litigation, and all other factors favor final approval.

**h. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Risks of Litigation**

The last two *Grinnell* factors are also satisfied here. The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Settlement need only fall within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130; *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[I]n any case there is a range of reasonableness with respect to a settlement."); *In re Michael Milken & Assocs. Sec. Litig.*, 150

F.R.D. 57, 66 (S.D.N.Y. 1993) (observing that reasonableness of a settlement "is not susceptible of a mathematical equation yielding a particularized sum") (citing *Newman*, 464 F.2d at 693). In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years later. *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (where settlement fund is in escrow, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

The Settlement represents an excellent recovery of approximately 20% of the reasonably recoverable damages. Moreover, the Settlement eliminates the numerous risks involved in litigation – especially those inherent in securities class action cases. In light of the legal and factual issues typically present in these cases, the unpredictable outcome of a lengthy and complex trial, and the appellate process that would most likely follow, the fairness of this substantial settlement is readily apparent.

In sum, the *Grinnell* factors, individually and collectively, weigh strongly in favor of the Court's approval of the Settlement.

### 2. The Settlement Meets the Additional Requirements of Amended Rule 23(e)(2)

#### a. The Class Representatives and Class Counsel have Adequately Represented the Class[7]

As explained above and in the Russello Declaration, during the course of this Litigation, Lead Plaintiffs and Lead Counsel have assiduously represented the Class' interests. In addition, Plaintiffs provided substantial assistance to Lead Counsel throughout the Litigation, keeping themselves informed of developments over the course of the Litigation, as well as litigation strategy,

7 This factor overlaps with the third *Grinnell* factor.

discovery, class certification, and any potential resolution. *See* COBRRS Decl., ¶¶4-5; COBFPS Decl., ¶¶4-5. Specifically, Plaintiffs:

> (a) engaged in numerous meetings, phone conferences, and correspondence with Robbins Geller; (b) reviewed pleadings and briefs; (c) reviewed detailed correspondence concerning the status of the litigation; (d) identified and provided relevant information during the discovery process; (e) consulted with Robbins Geller regarding litigation and settlement strategy; and (f) participated in and w[ere] kept informed about all aspects of the mediation and settlement negotiations.

COBRRS Decl., ¶5; COBFPS Decl., ¶5. Plaintiffs also searched for and produced responsive documents and worked closely with Lead Counsel to prepare and provide deposition testimony. COBRRS Decl., ¶7; COBFPS Decl., ¶7. And they reviewed submissions to the mediator and sent one representative on behalf of both entities to the mediation. COBRRS Decl., ¶8; COBFPS Decl., ¶8. This factor favors final approval.

#### b. The Settlement Was Negotiated at Arm's Length

As explained in detail above, and in the Russello Declaration, the Settlement was negotiated at arm's length with the assistance of a mediator known for resolving complex securities litigation. This factor is thus satisfied.

#### c. The Relief Provided for the Class Is Adequate, Taking into Account the Costs, Risks and Delays of Litigation

This factor, which overlaps with the first *Grinnell* factor, views the benefit of the Settlement in the context of the costs, risks, and delays associated with continued litigation. As shown above, the Settlement provides for an immediate cash recovery of $50,000,000 to the Class, representing a substantial percentage of reasonably recoverable damages – a benefit that provides very real value to the Class, especially when viewed against the costs, risks, and delays of continued litigation.

#### d. The Proposed Method of Distributing the Settlement to Class Members Is Fair and Reasonable

The proposed method of distributing the Settlement to Class Members is set forth in the Plan of Allocation, which is addressed below. For the reasons stated therein, the Plan of Allocation is fair and reasonable, and treats Class Members equitably.

#### e. The Settlement Is Adequate, Taking into Account Lead Counsel's Request for Attorneys' Fees and Expenses

As explained below, Lead Counsel's request for an award of attorneys' fees and expenses meets all the factors set forth in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), and is in line with the Court's award in *In re Intercept Pharm., Inc. Sec. Litig.*, No. 1:14-cv-01123-NRB, slip op. (S.D.N.Y. Sept. 8, 2016),[8] other decisions in this District, and other decisions throughout the country.

#### f. The Parties' Supplemental Agreement

Amended Rule 23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the [settlement] proposal," while Amended Rule 23(e)(2)(C)(iv) provides for the disclosure of any such agreement. The parties have entered into a Supplemental Agreement, which as explained in ¶8.3 of the Stipulation, allows BHP to terminate the Settlement if Class Members who purchased a certain percentage of ADRs during the Class Period exclude themselves from the Class. This type of agreement is customary in securities class actions.

## VI. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

If the Court approves the proposed Settlement, upon completion of the claims administration process, the Net Settlement Fund will be distributed to Authorized Claimants according to the Plan

---

8 All unreported authorities are attached to the Compendium of Unreported Authorities, submitted herewith.

of Allocation set forth in the Notice. "[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *PaineWebber*, 171 F.R.D. at 133. The opinion of experienced and informed counsel carries considerable weight. *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001). Thus, an allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *Id*. at 429-30. Courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among . . . class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978).

Here, the Plan of Allocation was formulated by Lead Counsel, Lead Plaintiffs' economics and damages expert, Dr. Feinstein, and the Claims Administrator, and calculates individual Class Member's claims as they would have been calculated had Plaintiffs prevailed at trial. The plan is based on the out-of-pocket measure of damages and is designed to measure the difference in what Class Members paid for their ADRs during the Class Period and what they would have paid had the allegedly omitted information been disclosed or alleged misstatements not been made. Russello Decl., ¶121. Under the Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund, with that share determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants. Accordingly, the Plan of Allocation is fair, reasonable, and adequate to the Class as a whole, treats Class Members equitably, warranting approval.

## VII. AWARD OF ATTORNEYS' FEES

### A. Lead Counsel Is Entitled to an Award of Attorneys' Fees from the $50,000,000 Common Fund Created in the Settlement

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co.*

*v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Goldberger*, 209 F.3d at 47. Courts recognize that awards of attorneys' fees from a common fund "encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes,"[9] and discourage misconduct of a similar nature. Indeed, the Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks*, 2005 WL 2757792, at *9.

### B. The Court Should Award a Reasonable Percentage of the Common Fund, as Requested

Most courts find that the percentage-of-the-fund method, under which counsel is awarded a percentage of the fund they created, is the preferred means to determine a fee because it "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart*, 396 F.3d at 122; *see also Hayes v. Harmony Gold Mining Co*., 509 F. App'x 21, 24 (2d Cir. 2013) ("[T]he prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class."). The percentage approach also recognizes that the quality of counsel's work is measured best by the results achieved and is most consistent with the system typically used in the marketplace to compensate attorneys in non-class contingency cases.[10]

---

9 *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *accord Veeco*, 2007 WL 4115808, at *2.

10 *See, e.g.*, *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (the "advantages of the percentage method . . . are that it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be

The Supreme Court has indicated that attorneys' fees in common-fund cases generally should be based on a percentage of the fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (noting "a reasonable fee is based on a percentage of the fund bestowed on the class"). The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-50 (holding that the percentage-of-the-fund or lodestar method may be used); *see also Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) ("percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used"). The Second Circuit also has acknowledged that the "trend in this Circuit is toward the percentage method." *Wal-Mart*, 396 F.3d at 122; *accord Davis*, 827 F. Supp. 2d at 183-85; *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354, at *2 (E.D.N.Y. June 24, 2010). All Courts of Appeal to consider the matter have approved of the percentage method, with two circuits ***requiring*** its use in common-fund cases.[11]

The PSLRA also supports use of the percentage-of-the-fund method, as it provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6).

---

made, and that it is consistent with the system typically used by individual clients to compensate their attorneys").

[11] *See In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305-07 (1st Cir. 1995); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-17 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993). The Eleventh and District of Columbia Circuits have required the use of the percentage method in common fund cases. *See Camden*, 946 F.2d at 774; *Swedish Hosp.*, 1 F.3d at 1271.

Several courts have concluded that Congress, in using this language, expressed a preference for the percentage method when determining attorneys' fees in securities class actions. *See, e.g.*, *Telik*, 576 F. Supp. 2d at 586; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005); *Maley*, 186 F. Supp. 2d at 370.

### C. The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were offering their services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *See Blum*, 465 U.S. at 904 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).

The requested 30% fee is consistent with the Court's fee award in a similar securities class action, *Intercept Pharmaceuticals*, and is well within the range of percentage fees awarded by other courts within the Second Circuit in comparable securities and antitrust cases. *See, e.g.*, *In re Genworth Fin., Inc. Sec. Litig.*, No. 1:14-cv-02392-AKH, slip op. (S.D.N.Y. Nov. 16, 2017) (awarding 30% of $20 million recovery, plus expenses); *see also, e.g.*, *Landmen Partners, Inc. v. Blackstone Grp., L.P.*, No. 08-cv-03601-HB-FM, slip op. (S.D.N.Y. Dec. 18, 2013) (awarding 33.33% of $85 million recovery, plus expenses); *Citiline Holdings, Inc. v. iStar Fin. Inc.*, No. 1:08-cv-03612-RJS, slip op. (S.D.N.Y. Apr. 5, 2013) (awarding 30% of $29 million recovery, plus expenses); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.33% of $586 million recovery); *In re Buspirone Antitrust Litig.*, MDL No. 1413 (JGK), 2003 U.S. Dist. LEXIS 26538, at *11 (S.D.N.Y. Apr. 17, 2003) (awarding 33.33% of

$220 million recovery); *Kurzweil v. Philip Morris Cos., Inc.*, No. 94 Civ. 2373 (MBM), 1999 WL 1076105, at *1 (S.D.N.Y. Nov. 30, 1999) (awarding 30% of $123.8 million recovery).

A review of fee awards in securities cases and other complex class actions from other jurisdictions further confirms the reasonableness of the requested award. *See, e.g.*, *In re Syngenta AG MIR 162 Corn Litig.*, MDL No. 2591, slip op. (D. Kan. Dec. 7, 2018) (awarding one-third of $1.51 billion recovery); *Dahl v. Bain Capital Partners, LLC*, No. 1:07-cv-12388-WGY (D. Mass. Feb. 2, 2015) (awarding 33% of $590.5 million recovery, plus expenses); *see also, e.g.*, *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, No. 2:12-cv-05275-MCA-LDW, slip op. (D.N.J. Sept. 29, 2016) (awarding 30% of $33 million recovery, plus expenses); *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033, slip op. (M.D. Tenn. Apr. 14, 2016) (awarding 30% of $215 million recovery, plus expenses); *Medoff v. CVS Caremark Corp.*, No. 09-cv-554-JNL, slip op. (D.R.I. Feb. 17, 2016) (awarding 30% of $48 million recovery, plus expenses); *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, No. 2:10-cv-02847-KOB, slip op. (N.D. Ala. Sept. 14, 2015) (awarding 30% of $90 million recovery, plus expenses); *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *5, *19 (E.D. Pa. June 2, 2004) (awarding 30% of $202.5 million recovery); *In re Vitamins Antitrust Litig.*, No. 99-197 (TFH), 2001 WL 34312839, at *9-*10 (D.D.C. July 16, 2001) (awarding 33.7% of $365 million recovery).

### D. The *Goldberger* Factors Confirm that the 30% Requested Fee Is Fair and Reasonable

The Second Circuit has repeatedly held that the appropriate criteria to consider when reviewing a request for attorneys' fees in a common-fund case include the *Goldberger* factors:

> "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."

*Goldberger*, 209 F.3d at 50. These factors, addressed below, support approval of the requested fee.

### 1. The Time and Labor Expended by Plaintiffs' Counsel Support the Requested Fee

In the over two years since this case was filed, Lead Counsel dedicated a substantial amount of time and resources to prosecuting these claims. Its efforts included an extensive and thorough investigation necessary to prepare the initial and amended complaints. Russello Decl., ¶¶21-26. Lead Counsel also successfully opposed Defendants' motion to dismiss, which required extensive briefing and argument. *Id.*, ¶¶27-33.

Lead Counsel further devoted considerable resources to developing a compelling evidentiary record to support class certification and Plaintiffs' claims. This includes serving comprehensive discovery requests, including document requests and requests for admission. *Id.*, ¶¶38-48. To obtain key documents over Defendants' and third parties' many objections without involving the Court, Lead Counsel conferred on many occasions with counsel for these parties. *Id.*, ¶¶49-55. Indeed, Lead Counsel spent a considerable amount of time obtaining electronically-stored information, which proved to be an invaluable source of critical evidence. *Id.*, ¶64.

Lead Counsel's discovery efforts ultimately resulted in the receipt of over 700,000 pages of documents, which Lead Counsel reviewed and analyzed for use at class certification and further stages, such as depositions. *Id.*, ¶¶64-67. Lead Counsel assembled a team of English and Portuguese-language reviewing attorneys and utilized its sophisticated e-discovery system for identifying the documents most likely to be used in depositions and at trial and relevant witnesses for deposition and additional discovery requests. *Id.*, ¶¶65-66. This effort was massive but efficient, and resulted in Lead Counsel's compilation of a substantial amount of useful evidence.

In addition, on June 29, 2018, Lead Plaintiffs moved for class certification. *Id.*, ¶76. In support, Lead Plaintiffs submitted briefing, deposition testimony, documentary evidence, and the expert declaration of Dr. Feinstein, in which he opined that the ADRs traded in an efficient market

during the Class Period (Russello Decl., ¶¶77-78), thus supporting the presumption of reliance and hence, predominance. The Settlement was reached only after Lead Plaintiffs' class certification motion was filed and Lead Counsel deposed Defendants' expert, Dr. René M. Stulz, who opined that the ADRs did ***not*** trade in an efficient market during the Class Period, thus opposing the presumption of reliance and predominance.

In sum, Plaintiffs' Counsel devoted a significant amount of time and resources to this Litigation. Specifically, Plaintiffs' Counsel spent 10,365 hours prosecuting this case. *See* Declaration of Joseph Russello Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."), Ex. A; Declaration of Brenda Szydlo Filed on Behalf of Pomerantz LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Pomerantz Decl."), Ex. A. This time and effort confirm that the fee requested here is reasonable.

### 2. The Magnitude and Complexity of the Litigation Support the Requested Fee

As mentioned above, courts have long recognized that securities class actions are "'notably difficult and notoriously uncertain.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)). This Litigation was no exception. It raised many complex issues with respect to both discovery and the merits, including, for example, obtaining responsive documents and testimony from percipient witnesses in foreign jurisdictions, especially Australia and Brazil. Indeed, the key events underlying Plaintiffs' claims, *e.g.*, the failure of the Fundão dam, occurred in Brazil.

In addition, Defendants raised compelling arguments in connection with the elements of falsity, scienter, loss causation, and damages. Defendants consistently argued that their alleged

misstatements were accurate and truthful and that even if false, those statements were too vague or inconsequential to be disclosed and not made with the requisite scienter. Russello Decl., ¶¶97-98, 101-103. With respect to loss causation and damages, at summary judgment and trial Defendants would have challenged the impact their alleged misstatements and omissions had on BHP's ADRs, including by using their expert's report to argue that Lead Plaintiffs' damages methodology was unreliable and failed to connect the decline in ADR prices to the exposure of news regarding the alleged fraud. These and other issues required substantial efforts by Lead Counsel, often through analysis of the factual record and consultation with experts.

Accordingly, the magnitude and complexity of this Litigation support the conclusion that the requested fee is fair and reasonable.

**3. The Risks of the Litigation Support the Requested Fee**

The risk undertaken in the Litigation is often considered the most important *Goldberger* factor. *See, e.g.*, *Comverse*, 2010 WL 2653354, at *5; *Telik*, 576 F. Supp. 2d at 592. The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award:

> "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended."

*Grinnell*, 495 F.2d at 470. When considering the reasonableness of attorneys' fees in a contingency action, the Court should consider the risks of the litigation at the time the suit was brought. *See Goldberger*, 209 F.3d at 54-55; *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 276 (E.D.N.Y. 2009) (the court should consider "'the contingent nature of the expected compensation'" and the "'risk of non-payment viewed as of the time of the filing of the suit'").

Lead Counsel undertook this case on a wholly contingent basis, knowing that the Litigation could last for years and would require them to devote substantial attorney time and significant expenses with no guarantee of compensation. Russello Decl., ¶132. Although the case was brought to a successful conclusion, this was far from guaranteed at the outset – or indeed, through much of the Litigation. "There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise." *Veeco*, 2007 WL 4115808, at *6. Lead Counsel's assumption of this contingency-fee risk strongly supports the reasonableness of the requested fee. *See Flag Telecom*, 2010 WL 4537550, at *27 ("the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

As discussed in the Russello Declaration (¶¶91-111) and above (at 12-15), there were substantial risks here with respect to the ability to prove at trial that Defendants had made material misstatements or omissions with scienter that caused Lead Plaintiffs' losses. Indeed, Lead Plaintiffs had the burden of proving that Defendants made false and misleading statements about BHP's safety practices as they pertained to the Fundão dam at Samarco in Brazil, a JV that BHP did not operate. Defendants argued, among other things, that their alleged misstatements about safety were general statements about the entirety of BHP's mining operations throughout the world, meaning that disclosure of specific safety conditions at Samarco was unnecessary. Russello Decl., ¶¶97-99. Defendants also asserted a "truth-on-the-market" defense, arguing that the market was aware that the Fundão dam had experienced safety challenges before the Class Period. *Id.* As a result, Defendants

contended that the challenged statements were not actionable. Lead Plaintiffs faced the risk that the jury would side with Defendants on these issues.

Establishing scienter is always challenging, but here it was particularly so. Defendants argued that scienter was lacking because Defendants maintained that they accurately disclosed all material information about their commitment to safety and risk management and monitoring protocols. Defendants also argued that BHP's senior executives did not receive undisclosed information contradictory to the alleged misstatements and had no obligations to disclose any information concerning Samarco's operations if they had. *Id.*, ¶101. Defendants further argued that there was no insider trading or other financial incentive to support motive. *Id.*, ¶103.

Lead Counsel firmly believes that Lead Plaintiffs' claims were meritorious. However, Defendants were represented by highly capable attorneys and the risk of a defense verdict was significant. Lead Counsel's willingness to assume that risk with a significant commitment of time and money demonstrates that this *Goldberger* factor weighs heavily in favor of the requested fee.

**4. The Quality of Representation Supports the Requested Fee**

The quality of the representation is another important factor that supports the reasonableness of the requested fee. The quality of the representation here is best evidenced by the quality of the result achieved. *See Goldberger*, 209 F.3d at 55. As a result of its skill and substantial experience in the specialized field of shareholder securities litigation (*see* Lead Counsel's firm resume, attached to the Robbins Geller Decl. as Ex. G) and its substantial litigation efforts (*see* Russello Decl., ¶¶21-79, 112-116), Lead Counsel developed a strong factual record over the course of over two years of litigation. That record was critical to briefing in favor of class certification and negotiating the Settlement. The quality of Lead Counsel's efforts in the Litigation to date, its ability to marshal the necessary resources, and its commitment to the Litigation, enabled Lead Counsel to recover the $50,000,000 for

BHP's ADR investors, a recovery of approximately 20% of the reasonably recoverable class-wide damages.

Finally, courts repeatedly recognize that the quality of opposing counsel should be taken into account in assessing the quality of plaintiffs' counsel's performance. *See, e.g.*, *Marsh*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."). Here, Defendants are represented by Sullivan & Cromwell LLP, a highly respected law firm, and the defense attorneys brought to bear substantial experience in securities litigation and tenacity in representing their clients. Despite this formidable opposition, Lead Counsel presented a strong case and demonstrated a commitment to vigorously prosecuting this Litigation, which enabled Lead Counsel to achieve the Settlement.

**5. Second Circuit Precedent Supports the 30% Fee as a Reasonable Percentage of the Total Recovery**

In considering the requested fee in relation to the settlement, a court will consider the fee as a percentage of the total recovery and compare it "'to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3. As discussed herein, the requested fee award is well within the range of fees that this and other courts in the Second Circuit and around the country have awarded in comparable complex cases. *See supra* at 22-23. Accordingly, the fee award requested is reasonable in relation to the size of the Settlement.

**6. Public Policy Considerations Support the Requested Fee**

Public policy strongly favors rewarding firms for bringing successful securities actions like this one. *See Flag Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public

policy of vigorously enforcing the federal securities laws must be considered."). Accordingly, public policy favors granting the fee and expense application here.

#### 7. Plaintiffs' Approval and the Class' Reaction Support the Requested Fee

Lead Plaintiffs City of Birmingham Retirement and Relief System and City of Birmingham Firemen's and Policemen's Supplemental Pension System were actively involved in the prosecution and settlement of this Litigation and have considered and approved the requested fee and expense award. *See* COBRRS Decl., ¶¶4-10; COBFPS Decl., ¶¶4-10. The reaction of the Class also supports the requested fee. As of December 17, 2018, the Claims Administrator has sent over 169,700 copies of the Notice to potential Class Members and their nominees (Ferguson Decl., ¶10), informing them that, among other things, Lead Counsel intended to apply for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount and expenses in an amount not to exceed $500,000 (plus interest thereon for both). Ferguson Decl., Ex. A. While the time to object does not expire until January 15, 2019, to date, not a single objection has been received. Any objection received will be addressed in Plaintiffs' reply brief, which is due on January 29, 2019.

### E. A Lodestar Cross-Check Strongly Confirms the Reasonableness of the Fee Request

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit permits courts to "cross-check" the proposed award against counsel's lodestar. *See Goldberger*, 209 F.3d at 50. In cases like this, fees representing multiples of lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors. *See, e.g.*, *Flag Telecom*, 2010 WL 4537550, at *26 ("'Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.'"); *Converse*, 2010 WL 2653354, at

*5 ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

Accordingly, in complex contingent litigation, lodestar multipliers of between 2 and 5 are commonly awarded. *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, No. 14-CV-8925 (KMW), 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (3.14 multiplier was "within the range of reasonable multipliers approved in this Circuit"); *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, No. 1:08-cv-10783-LAP, 2016 WL 3369534, at *1 (S.D.N.Y. May 2, 2016) (3.9 multiplier on $272 million settlement); *Intercept Pharm.*, slip op. at 3 (2.72 multiplier); *Davis*, 827 F. Supp. 2d at 185 (multiplier of 5.3 was "not atypical" in similar cases); *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758 (VM), slip op. at 4 (S.D.N.Y. July 20, 2011) (4.7 multiplier); *Comverse*, 2010 WL 2653354, at *5 (2.78 multiplier); *Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *In re Bisys Sec. Litig.*, No. 04-3840 (JSR), 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (awarding 30% fee representing 2.99 multiplier, which "f[ell] well within the parameters set in this district and elsewhere"); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (4.3 multiplier appropriate in light of contingency risk and quality of result); *Maley*, 186 F. Supp. 2d at 369 (4.65 multiplier was "well within the range awarded by courts in this Circuit" and elsewhere).

Here, if the Court decides to consider it, a lodestar cross-check would fully support the requested fee. This contingent action was litigated for over two years and the recovery is roughly 20% of reasonably recoverable class-wide damages. Plaintiffs' Counsel devoted 10,365 hours of attorney and staff time in prosecuting this Litigation, and their lodestar – derived by multiplying the

hours each person worked by their current hourly rates – is $5,516,276.25.[12] *See* Robbins Geller Decl., Ex. A; Pomerantz Decl., Ex. A. The requested fee of 30% of the Settlement Amount represents a multiplier of 2.72 of lodestar. Thus, the multiplier and 30% fee are well within the range awarded in cases of this type.

## VIII. PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT

Lead Counsel's application includes a request for charges and expenses reasonably incurred in pursuing the claims on behalf of the Class. Lead Counsel's expenses and certain in-house charges are properly recoverable. *See, e.g.*, *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "'for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the representation"'"); *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.").

As detailed in counsel's fee and expense declarations, Lead Counsel requests $435,998.92 in expenses for prosecuting this Litigation for the benefit of the Class. These expenses are of a type necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses and other charges include consultant and expert fees, document-management/litigation support (*i.e.*, managing a database of more than 900,000 pages), online factual and legal research, mediation costs, and travel expenses, among others.

---

[12] The Supreme Court and courts in this Circuit have long approved the use of current hourly rates to calculate lodestar as a means of compensating for the delay in receiving payment that is inherent in class actions, inflationary losses, and the loss of access to legal and monetary capital that could otherwise have been employed had class counsel been paid on a current basis during the pendency of the litigation. *See In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Veeco*, 2007 WL 4115808, at *9; *Jenkins*, 491 U.S. at 284.

The Notice informed Class Members that Lead Counsel would apply for expenses in an amount not to exceed $500,000 to be paid from the Settlement Fund. Ferguson Decl., Ex. A. The expenses requested, $435,998.92, are well below that amount. To date, no Class Member has objected to Lead Counsel's request for expenses.

## IX. LEAD PLAINTIFFS ARE ENTITLED TO A REASONABLE AWARD UNDER 15 U.S.C. §78u-4(a)(4)

Lead Plaintiffs City of Birmingham Retirement and Relief System and City of Birmingham Firemen's and Policemen's Supplemental Pension System also seek approval for an award of $3,148.20 and $3,257.80, respectively, in recognition of the time and resources they spent representing the Class. The PSLRA allows an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). Many courts have approved such awards under the PSLRA to compensate class representatives for the time and effort they spent on behalf of the class. *See, e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 Civ. 8141 (DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (granting PSLRA award of $30,000 to institutional lead plaintiffs "to compensate them for the time and effort they devoted on behalf of a class"); *Flag Telecom*, 2010 WL 4537550, at *31 (approving award of $100,000 to lead plaintiff for time spent on the litigation).

As set forth in the COBRRS and COBFPS Declarations (filed herewith), Lead Plaintiffs took an active role in prosecuting the Litigation, including: (1) communicating with Lead Counsel on issues and developments in the Litigation; (2) reviewing documents filed in the case, including the operative complaint; (3) searching for and providing documents and information to Lead Counsel responsive to Defendants' document requests; (4) consulting with Lead Counsel on litigation and settlement strategy; and (5) attending the full-day mediation before Judge Phillips on August 1, 2018. COBRRS Decl., ¶¶5-9; COBFPS Decl., ¶¶5-9.

These are precisely the types of activities courts have found support PSLRA awards to class representatives. *See, e.g.*, *Veeco*, 2007 WL 4115808, at *12 (characterizing such awards as "'routine[]'" in this Circuit); *Hicks*, 2005 WL 2757792, at *10 ("Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place."). Pursuant to the PSLRA, Lead Plaintiffs collectively request $6,406 based on the value of their time in participating in this Litigation. COBRRS Decl., ¶11 (64 hours); COBFPS Decl., ¶11 (64 hours).

The Notice informed potential Class Members that Lead Plaintiffs may each seek approval for up to $25,000 in time and expenses incurred in representing the Class. Ferguson Decl., Ex. A. The time and expenses requested, $6,406, are well below that amount. To date, no Class Member has objected to such awards to Lead Plaintiffs. Accordingly, Lead Plaintiffs' requests are reasonable and fully justified under the PSLRA and should be granted.

## X. CONCLUSION

Based on the foregoing and the entire record, Lead Plaintiffs and Lead Counsel respectfully request that the Court approve: the Settlement and the Plan of Allocation; Lead Counsel's request for an award of attorneys' fees of 30% of the Settlement Amount and payment of $435,998.92 in expenses; and awards of $3,148.20 and $3,257.80 sought by Lead Plaintiffs City of Birmingham Retirement and Relief System and City of Birmingham Firemen's and Policemen's Supplemental Pension System, respectively, as allowed by the PSLRA.

DATED: December 18, 2018

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
SAMUEL H. RUDMAN
JOSEPH RUSSELLO
MICHAEL G. CAPECI

s/ Joseph Russello
JOSEPH RUSSELLO

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
jrussello@rgrdlaw.com
mcapeci@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

Lead Counsel for Plaintiffs

POMERANTZ LLP
JEREMY A. LIEBERMAN
BRENDA SZYDLO
600 Third Avenue
New York, NY 10016
Telephone: 212/661-1100
212/661-8665 (fax)

Additional Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I, Joseph Russello, hereby certify that on December 18, 2018, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*s/ Joseph Russello*
JOSEPH RUSSELLO